THE HON. RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

**CHINOOK INDIAN NATION**, an Indian Tribe
and as successor-in-interest to The Lower
Band of Chinook Indians; **ANTHONY A.
JOHNSON**, individually and in his capacity as
Chairman of the Chinook Indian Nation; and
**CONFEDERATED LOWER CHINOOK TRIBES
AND BANDS**, a Washington nonprofit
corporation,

Plaintiffs,

v.

**RYAN K. ZINKE**, in his capacity as Secretary
of the U.S. Department of Interior; **U.S.
DEPARTMENT OF INTERIOR; BUREAU OF
INDIAN AFFAIRS, OFFICE OF FEDERAL
ACKNOWLEDGMENT; UNITED STATES OF
AMERICA;** and **JOHN TAHSUDA**, in his
capacity as Acting Assistant Secretary –
Indian Affairs,

Defendants.

Case No. 3:17-05668-RBL

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

**(NOTED ON MOTION CALENDAR FOR
FEBRUARY 9, 2018)**

<u>**ORAL ARGUMENT REQUESTED**</u>

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

# TABLE OF CONTENTS

Page

I. INTRODUCTION.................................................................................................1

II. RECOGNITION BY COURSE OF DEALING – THE UNITED STATES AND THE CHINOOK, GOVERNMENT-TO-GOVERNMENT............................................3

III. JURISDICTION ON PLAINTIFFS' FIRST CLAIM FOR RELIEF - RECOGNITION.................6

   A. Statutory Construction in Favor of Indian Tribes ..............................................7
   B. Sovereign Immunity .......................................................................................7
   C. "Political Question".......................................................................................8
      1. Cases quoting the List Act provision ...........................................................9
      2. Cases applying the "political question" doctrine to Indian tribe recognition have not considered the List Act provision...........................10
      3. The only case that discusses and rejects the List Act provision relies on inapposite authority........................................................................12

IV. THE RE-PETITIONING BAR..........................................................................12

   A. Standard of Review .......................................................................................13
   B. Proof of Jurisdictional Facts...........................................................................14
   C. How the Rules Changed in 2015 .....................................................................14
      1. New rule concerning consistency with prior decisions..............................15
      2. Prior acknowledgment ............................................................................15
      3. Indian identity........................................................................................17
      4. Community ..............................................................................................17
      5. Political influence....................................................................................18

V. JURISDICTION ON PLAINTIFFS' SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF – FUNDS HELD IN TRUST ...........................................................19

   A. The Indian Claims Commission (ICC) Decisions ..............................................20
   B. The Federal Recognition Process ....................................................................21
   C. Defendants' Position......................................................................................22
   D. Violation of Due Process Law..........................................................................22
   E. The APA Claim – Exhaustion of Remedies is Not Required Because It Would be Futile...........................................................................................23

VI. CONCLUSION ..............................................................................................24

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Allison v. Spring Mt. Las Vegas, LLC,*
    2016 U.S. Dist. LEXIS 1122992 (D. Nev. 2012).................................................. 13

*Bates, ex rel. v. Bates v. Mortgage Elec. Registration Sys.,*
    694 F.3d 1076 (9th Cir. 2012) ........................................................................3

*Carpenter v. Shaw,*
    280 U.S. 363 (1930)......................................................................................7

*Chandler v. State Farm,*
    598 F.3d 1115 (9th Cir. 2010) ....................................................................... 13

*Cherokee Nation of Okla. v. Norton,*
    389 F.3d 1074 (10th Cir. 2004).......................................................................9

*Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,*
    333 U.S. 103 (1948)................................................................................22, 23

*Graham v. Fed. Emergency Mgmt. Agency,*
    149 F.3d 997 (9th Cir. 1998) ........................................................................ 14

*Green v. U.S.,*
    630 F.3d 1245 (9th Cir. 2011) ...................................................................... 14

*Greene v. Babbitt,*
    64 F.3d 1266 (9th Cir. 1995) ........................................................................ 20

*Gristede's Foods, Inc. v. Unkechauge Nation,*
    2006 U.S. Dist. LEXIS 98321 (E.D.N.Y. 2006) ............................................... 10

*Halbert v. U.S.,*
    283 U.S. 753 (1931).......................................................................................4

*Heckman v. U.S.,*
    224 U.S. 413 (1912).......................................................................................1

*Hodges v. Snyder,*
    261 U.S. 600 (1923)..................................................................................... 23

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

| | Page |
|---|---|
| *IHP Indus. v. C.J. Mahan Constr. Co., LLC,* | |
| 2016 U.S. Dist. LEXIS 170743 (2016) .................................................................. 4 | |
| *J.L. v. Social Security Administration,* | |
| 971 F.3d 260 (9th Cir. 1992) .......................................................................... 23 | |
| *J.P. v. County Sch. Bd. of Hanover County, VA,* | |
| 447 F. Supp. 2d 553 (E.D. Va. 2006) ............................................................. 12 | |
| *Kahawaiolaa v. Norton,* | |
| 386 F.3d 1271 (9th Cir. 2004) ............................................................3, 10, 11, 20 | |
| *Lujan v. Defenders of Wildlife,* | |
| 504 U.S. 555 (1992) ...................................................................................13, 14 | |
| *McClanahan v. Arizona State Tax Comm'n,* | |
| 411 U.S. 164 (1973) ......................................................................................... 7 | |
| *McCulloch v. Virginia,* | |
| 172 U.S. 102 (1898) ....................................................................................... 22 | |
| *Miami Nation v. U.S. DOI,* | |
| 255 F.3d 342 (7th Cir. 2001) .......................................................................... 11 | |
| *Montana v. Blackfeet Tribe of Indians* | |
| 471 U.S. 759 (1985) ......................................................................................... 7 | |
| *Ordonez v. U.S.,* | |
| 680 F.3d 1135 (9th Cir. 2012) .......................................................................... 8 | |
| *Pennhurst v. Halderman,* | |
| 451 U.S. 1 (1981) ........................................................................................... 12 | |
| *Price v. State of Hawaii,* | |
| 764 F.2d 623 (9th Cir. 1985) .......................................................................... 11 | |
| *Samish Indian Nation v. U.S.,* | |
| 419 F.3d 1355 (2005) ..................................................................................... 21 | |
| *Seminole Nation v. U.S.,* | |
| 316 U.S. 286 (1942) ......................................................................................... 1 | |

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

|  |  | Page |
|---|---|---|
| *Shinnecock Indian Nation v. Kempthorne,* | | |
| 2008 U.S. Dist. LEXIS 75826 (E.D.N.Y. 2008) | ......................................... | 12 |
| *Stand Up for California! v. U.S. DOI,* | | |
| 204 F. Supp. 3d 212 (D.C. Cir. 2016) | ................................................ | 9 |
| *Stephens v. Cherokee Nation,* | | |
| 174 U.S. 445 (1899) | ........................................................................ | 23 |
| *U.S. v. Holliday,* | | |
| 70 U.S. 407 (1865) | ......................................................................... | 11 |
| *U.S. v. Jicarilla Apache Nation,* | | |
| 564 U.S. 162 (2011) | ........................................................................ | 1 |
| *U.S. v. Livingston,* | | |
| 2010 U.S. Dist. LEXIS 97598 (E.D. Cal. 2010) | ................................... | 10 |
| *U.S. v. Rickert,* | | |
| 188 U.S. 432 (1903) | ........................................................................ | 11 |
| *U.S. v. Sandoval,* | | |
| 231 U.S. 28 (1913) | ......................................................................... | 11 |
| *U.S. v. Zepeda,* | | |
| 792 F.3d 1103 (9th Cir. 2015) | ......................................................... | 11 |
| *Williamson County Regional Planning Comm'n v. Hamilton Bank,* | | |
| 473 U.S. 172 (1985) | ........................................................................ | 23 |
| *Wyandot Nation of Kansas v. U.S.,* | | |
| 858 F.3d 1392 (2017) | ...................................................................... | 11 |

**Statutes, Rules, and Codes**

| | | |
|---|---|---|
| 6 Ind. Cl. Com. 177 | ........................................................................... | 21 |
| 6 Ind. Cl. Com. 229a | ................................................................. | 5, 16, 21 |
| 25 C.F.R. § 83.2 | ............................................................................ | 21, 24 |
| 25 C.F.R. § 83.4(d) | ......................................................................... | 22 |

Page v - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

|  | Page |
|---|---|
| 25 C.F.R. § 83.7(a)(1)-(6) | 17 |
| 25 C.F.R. § 83.7(b)(1) | 17 |
| 25 C.F.R. § 83.7(c)(1) (1994) | 18 |
| 25 C.F.R. § 83.8(d)(3) (1994) | 18 |
| 25 C.F.R. § 83.10(a)(4) (2015) | 13, 15 |
| 25 C.F.R. § 83.11(a)(7) (2015) | 17 |
| 25 C.F.R. § 83.11(b)(1)(x) (2015) | 17 |
| 25 C.F.R. § 83.11(c)(1) (2015) | 18 |
| 25 C.F.R. § 83.12 (2015) | 15 |
| 25 C.F.R. § 83.12(a)(3) (2015) | 16 |
| 25 C.F.R. § 83.12(b) (2015) | 17, 18 |
| 25 C.F.R. § 83.12(b)(1) (2015) | 18 |
| 25 C.F.R. § 83.12(b)(2) (2015) | 17 |
| 25 C.F.R. § 292.10 | 7 |
| 36 C.F.R. § 230.2 | 6 |
| 36 C.F.R. § 800.2 | 6 |
| 25 U.S.C. § 2 | 9 |
| 25 U.S.C. § 70a | 20 |
| 25 U.S.C. § 70i | 20 |
| 25 U.S.C. § 286 (1894) | 2 |
| 25 U.S.C. § 331(1887) | 2 |

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

|  | Page |
|---|---|
| 25 U.S.C. § 372 ........................................................................................................ | 5 |
| 25 U.S.C. § 373 ........................................................................................................ | 5 |
| 25 U.S.C. § 479a (1994) .......................................................................................... | 6 |
| 25 U.S.C. § 1452 ...................................................................................................... | 5 |
| 25 U.S.C. § 1903(8) ................................................................................................. | 5 |
| 25 U.S.C. § 3001 ...................................................................................................... | 5 |
| 25 U.S.C. §§ 5101-44 (1934) .................................................................................. | 2 |
| 37 Stat. 518 (1912) .................................................................................................. | 4 |
| 80 Fed. Reg. 37862 (2015) .............................................................................. | 2, 15, 19 |
| Fed.R.Civ.P. 12(b)(1) ........................................................................................ | 13, 14 |
| Fed.R.Civ.P. 12(b)(6) ............................................................................................. | 13 |
| Fed.R.Crim.P. 41(g) ................................................................................................ | 8 |
| H.R. Res. 108, 83rd Cong. (1953) ......................................................................... | 4 |
| Indian Removal Act, 21st Cong. Sess. I, ch. 148 (1830) ...................................... | 2 |

**Other Sources**

| | |
|---|---|
| *An Ordinance for the Government of the Territory of the United States North-west of the River Ohio, Article III,* 1 Stat. 50, 51 n. (a) (1789) ......................................... | 1 |
| William C. Canby, Jr., *American Indian Law in a Nutshell 4* (6th ed. 2015) .................. | 3 |

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

# I.  INTRODUCTION

The First Congress provided, in the Northwest Ordinance of 1789:

> The utmost good faith shall always be observed towards the Indians; their land and property shall never be taken from them without their consent; and in their property, rights and liberty, they never shall be invaded or disturbed unless in just and lawful wars authorized by Congress; but laws founded in justice and humanity shall from time to time be made, for preventing wrongs being done to them, and for preserving peace and friendship with them.

*An Ordinance for the Government of the Territory of the United States North-west of the River Ohio, Article III;* 1 Stat. 50, 51 n. (a) (1789). The Supreme Court recognizes that defendant "has charged itself with moral obligations of the highest responsibility and trust. Its conduct, as disclosed in the acts of those who represent it in dealing with the Indians, should therefore be judged by the most exacting fiduciary standards." *Seminole Nation v. U.S.,* 316 U.S. 286, 296-97 (1942). These are "obligations to the fulfillment of which the national honor has been committed." *Heckman v. U.S.,* 224 U.S. 413, 437 (1912); *U.S. v. Jicarilla Apache Nation,* 564 U.S. 162 (2011). The most casual student of history would recognize that these founding principles have been transgressed repeatedly. Good faith has rarely been observed; land and property have been taken with paltry compensation and, in the case of the Plaintiffs herein, with compensation promised and adjudicated, but never paid; and the laws made with respect to them have been applied inconsistently, unpredictably, to their detriment and the disappointment of their legitimate expectations.

The administrative process for "acknowledgment" or "recognition" of Indian tribes, created by statute in 1978 and amended in 1994 and 2015, stands against a background of changing federal policies that have discouraged tribal sovereignty and integrity such that a present-day showing of continuous tribal identification, community cohesion, and political structure would be remarkable even in a system administered fairly, efficiently, transparently and consistently. Federal policy has worked against tribal continuity, cohesion and sovereignty by requiring removal of tribes from their ancestral lands to

Page 1 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
4221730 / 15744-001

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

reservations, to facilitate European settlement,[1] fostering the breakup of tribal reservation lands by providing for their allotment to and sale by individuals,[2] and imposing assimilation into white society by, among other things, removing Indian children from their families and forcibly requiring European education in boarding schools far removed from their homes.[3] Finally, during the last 70 years, the federal government has enacted laws providing, in theory, the kind of respect for tribal culture and sovereignty that had been promised by the First Congress in 1789 -- terminating land allotment and compulsory European education and recognizing Indian tribes as sovereign entities with a "government to government" relationship with the United States.[4]

However, after 37 years, in 2015, the Bureau of Indian Affairs (BIA) amended the Department of Interior's (DOI) acknowledgment rules, agreeing that the system was widely considered to be "broken:"

> [f]or decades, the current process has been criticized as too slow (a petition can take decades to be decided), expensive, burdensome, inefficient, intrusive, less than transparent and unpredictable.

80 Fed. Reg. 37862 (2015) (attached as **Ex. A** to the Declaration of Thane W. Tienson in Support of Plaintiffs' Response to Defendants' Motion to Dismiss (Tienson Dec.) filed herewith). Plaintiffs first gave notice of their intent to petition for administrative

---

[1] *E.g.*, the Indian Removal Act, 21st Cong. Sess. I, ch. 148 at 411 ff. (1830). It was under this statute that the United States negotiated treaties with native tribes for their ancestral lands. The 1851 Tansey Point treaty with the Chinook was never ratified by Congress, and no compensation was paid, but the land was taken from the Chinook anyway. Plaintiffs' First Amended Complaint (FAC), ¶ 24.

[2] The General Allotment Act (Dawes Act), 24 Stat. 388, ch. 116, 25 U.S.C. § 331 (1887) ("to allot the lands in said reservation in severalty to any Indian located thereon").

[3] By 1894, Congress prohibited the compulsory education of an Indian child in a government school *outside the State or Territory in which the child's home reservation was found,* without the consent of the child's parents. 25 U.S.C. § 286 (1894).

[4] The Indian Reorganization Act, 48 Stat. 984, 25 U.S.C. §§ 5101-44 (1934).

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

acknowledgment in 1979. After 22 years, their petition was finally decided favorably in 2001, only to have that result reversed on reconsideration by the agency in 2002 after a change of presidential administration. A further petition would be futile because the BIA regulations now provide that a tribe, once denied acknowledgment, may not apply further. Plaintiffs come to this court as a last resort, seeking acknowledgment of their existence and sovereignty as a people long-recognized in fact through more than 175 years of dealings with the United States.

## II. RECOGNITION BY COURSE OF DEALING – THE UNITED STATES AND THE CHINOOK, GOVERNMENT-TO-GOVERNMENT.[5]

> Federal recognition may arise from treaty, statute, executive or administrative order, *or from a course of dealing with the tribe as a political entity.*

William C. Canby, Jr., *American Indian Law in a Nutshell 4* (6th ed. 2015) (emphasis added), *quoted in Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004). Against the historical background of changing and conflicting government policies, the United States have dealt with the Chinook as representatives of their people consistently, repeatedly, and in a number of ways. Defendants concede here that the Chinook were a recognized Indian tribe, representing their people as of the mid-nineteenth century treaty era. Defendants' Motion to Dismiss (MTD) at 5, l. 21; 11, l. 8; and 23, l. 21. This concession is presumably based on the Chinook's participation in the 1855 Chehalis treaty negotiations, though no treaty was signed by them at that time. Defendants recognized, almost a century later, in 1954:

> *We are fully aware that the Chinooks are an Indian Tribe*, and it is unfortunate that no treaties were ever executed with them. However, you are familiar with the circumstances, undoubtedly, surrounding the [1855 Chehalis River] treaty negotiations, and it was not at that time assumed that any serious consequences could arise in the future years because of the failure to enter into this treaty.

---

[5] Many of the facts in this section are taken from the FAC, whose specific and plausible allegations are to be taken as true on this motion to dismiss. *Bates ex rel. Bates v. Mortgage Elec. Registration Sys.*, 694 F.3d 1076, 1080 (9th Cir. 2012).

Page 3 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

FAC, ¶ 71 (emphasis added). Indeed, in 1931, the U.S. Supreme Court had recognized the Chinook Tribe, holding that, under the General Allotment Act of 1887, "the Chehalis, Chinook and Cowlitz tribes are among those whose members are entitled to take allotments within the Quinaielt Reservation, if without allotments elsewhere." *Halbert v. U.S.,* 283 U.S. 753, 760 (1931).

The General Allotment Act of 1887 provided for allotments of Indian reservation land to Indians living on those lands, and 1890-era allotments to Chinook tribal members have been taken into trust by BIA, which has also taken in trust for Chinook members other historically Chinook lands. FAC, ¶ 72. Congress appropriated funds in 1912, 25 years after the Allotment Act, to be "paid to" Chinook Tribes in Oregon and Washington for tribal lands taken by unratified treaties in 1851, and, though those amounts would later be found to have been unconscionably insufficient, they were paid two years later in 1914. FAC, ¶ 75. Those payments were made to the tribes, as representatives of their people, in settlement for their ancestral lands. 37 Stat. 518, 535 (1912). The payment of those sums ratified the 1851 treaty under which Plaintiffs' land had been taken. *E.g., IHP Indus. v. C.J. Mahan Constr. Co., LLC,* 2016 U.S. Dist. LEXIS 170743, *14-*15 (2016) (where a party's conduct is consistent with either an unsigned or unwritten agreement, courts may enforce the agreement as constructively ratified).

With the new Eisenhower Administration in 1953, the government undertook to terminate its trust relationship with Indian tribes in an effort to end federal benefits and services to tribes "as soon as possible." H.R. Res. 108, 83rd Cong. (1953). As part of assessing termination possibilities, Defendants met with the Chinook and other tribes in Washington in 1953 and 1954, twice in the ancestral Chinook village that is now Bay Center, Washington. FAC, ¶ 82. Defendants contracted with the Chinook, as a tribe, for a loan from a federal revolving fund that provided financial assistance to tribes making claims before Defendants' Indian Claims Commission (ICC). FAC, ¶ 83. The Commission recognized the Chinook Tribe

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

as representative of its people claiming compensation for lands ceded in the 1851 treaty. 6 Ind. Cl. Com. 229a. (Chinook "have the capacity and the right to assert claims for their respective lands" described in the Commission's findings.) The funds recovered, which now amount to more than $500,000, are held by BIA in trust for Plaintiffs – the Chinook Indian Nation. FAC, ¶ 144.

The Chinook have received federal services and benefits designated by statute for Tribes that are "recognized" as eligible for such services and benefits "because of their status as Indians." 25 U.S.C. § 1903(8). These include healthcare for Chinook tribal members admitted to BIA medical facilities because of their membership in the Chinook Tribe. FAC, ¶ 87. Defendants also consult with the Chinook in matters relevant to Defendants' original probate jurisdiction under 25 U.S.C. §§ 372 and 373. *Id.*, ¶ 88. Defendants have kept and reported accounts pursuant to their accounting responsibility for Indian trust funds and corresponded concerning them directly with the Chinook. FAC, ¶ 89.

The Chinook have also received economic development support made available to recognized Indian tribes under 25 U.S.C. § 1452. FAC, ¶ 90. BIA has funded a feasibility study for a tribal charter boat business. *Id.* The Chinook also received a 1979 grant for clerical and planning services and a 1982 grant for tribal office maintenance. *Id.*

Other federal agencies, such as the National Park Service, have consulted with the Chinook on a government-to-government basis concerning the establishment of national parks and monuments such as Fort Clatsop (where the Chinook helped the Lewis & Clark Corps of Discovery survive the winter of 1805), environmental and salmon recovery projects and the repatriation of ancestral remains. FAC, ¶¶ 91, 92. Federal agencies also consult with the Chinook and formally-recognized tribes under the Native American Graves Protection and Repatriation Act, 25 U.S.C. § 3001 *et seq.* The Chinook are the only tribe among those regularly consulted who have not been formally recognized by Defendants.

///

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

The U.S. Fish and Wildlife Service and U.S. Navy have, in 2017, initiated required consultation with the Chinook Indian Nation under 36 C.F.R. § 800.2, implementing the National Historic Preservation Act, with respect to tribal lands and historic properties of significance to the Tribe. FAC, ¶¶ 99, 100. These agencies consult with Plaintiffs under these requirements as representatives of the Chinook people pursuant to regulations defining "Indian Tribe" as "federally recognized Indian tribes and Alaska Native Corporations." 36 C.F.R. § 230.2.

In sum, and as alleged in the FAC, for well over 100 years, and in a broad array of the circumstances in which the United States can deal with an Indian tribe on a government-to-government basis, Defendants have, in fact and in practice, recognized and engaged in a course of dealing with the Chinook Tribe as the authorized representative of the Chinook people. They have constructively ratified the 1851 Tansey Point treaty – in 1912, 1925, and 1970 – by their repeated actions acknowledging their obligation to pay Plaintiffs for Chinook lands taken from Plaintiffs under that treaty.

## III.    JURISDICTION ON PLAINTIFFS' FIRST CLAIM FOR RELIEF – RECOGNITION

Defendants argue that this court has no jurisdiction to decide Plaintiffs' first claim for relief because (1) Defendants have not waived their sovereign immunity; and (2) the question of the Chinook's status as a recognized tribe is a "political question," which it says a court may not decide. Both arguments should be rejected for the same reason: Congress itself has provided in findings in the List Act explicitly that

> Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;" *or by a decision of a United States court.*

PL 103-454 § 103(3), 25 U.S.C. § 479a note (1994) (emphasis added). That statement unambiguously acknowledges the power of this court to recognize an Indian tribe. Indeed, Defendant agency itself has recognized by regulation that tribes whose acknowledgment has

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1  been previously terminated can be acknowledged by a federal court determination in which

2  the United States is a party or court-approved settlement agreement entered by the United

3  States. 25 C.F.R. § 292.10.

4  ### A.  Statutory Construction in Favor of Indian Tribes

5  Statutes concerning Indian tribes are to be construed so as to resolve any doubts in

6  favor of the tribes:

7  > [T]he standard principles of statutory construction do not have their usual
> force in cases involving Indian law. As we said earlier this Term, "[the] canons
> of construction applicable in Indian law are rooted in the unique trust
> relationship between the United States and the Indians." *Oneida County v.*
> *Oneida Indian Nation,* 470 U.S. 226, 247 (1985). * * * statutes are to be
> construed liberally in favor of the Indians, with ambiguous provisions
> interpreted to their benefit, *e. g., McClanahan v. Arizona State Tax Comm'n,* 411
> U.S. 164, 174 (1973); *Choate v. Trapp,* 224 U.S. 665, 675 (1912).

12  *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766 (1985).

13  > In determining [congressional] intent, we are cautioned to follow "the general
> rule that '[d]oubtful expressions are to be resolved in favor of the weak and
> defenseless people who are the wards of the nation, dependent upon its
> protection and good faith.'"

16  *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 174 (1973), *quoting Carpenter v.*

17  *Shaw,* 280 U.S. 363, 367 (1930).  Defendants' arguments that this court lacks jurisdiction

18  because Defendants have not waived sovereign immunity or because the question before the

19  court is "political" should be viewed through this lens.  The List Act unambiguously states

20  that a tribe may be recognized "by a decision of a United States court."  Construed fairly, let

21  alone in favor of Indian tribes, the statue should be held to mean what it says.

22  ### B.  Sovereign Immunity

23  Defendants argue, as is true, that the government cannot be sued without having

24  clearly waived sovereign immunity. MTD at 14. Defendants further claim, as is **not** true, that

25  "plaintiffs have failed to identify any applicable statutory waiver of sovereign immunity." *Id.*

26  In fact, Plaintiffs allege that "Indian tribes may presently be recognized ... by a decision of a

Page 7 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

United States court." FAC, ¶ 154. That is a plain and unambiguous statement that this court has the power to recognize an Indian tribe.

Waiver of sovereign immunity need not include the phrase "sovereign immunity," it need only give a court power to grant relief of a particular kind. Defendant relies on *Ordonez v. U.S.,* 680 F.3d 1135, 1138 (9th Cir. 2012). *Ordonez* holds that Fed.R.Crim.P. 41(g), which provides for the victim of an unlawful search and seizure to file a motion for *return of property* seized by federal agents, does not waive the government's sovereign immunity to the extent of *allowing damages to be assessed* if the property cannot be returned intact. The rule mentions only the return of property; it does not mention damages.[6] 680 F.3d at 1140. Fed.R.Crim.P. 41(g) waived sovereign immunity in *Ordonez* by providing a remedy by motion, but only as to the remedy provided. The List Act specifically says that Indian tribes "may be recognized ... by a decision of a United States court." The remedy Plaintiffs seek here is exactly the remedy for which the List Act provides -- tribal recognition. Plaintiffs here have the relief-specific sovereign immunity waiver that was lacking in *Ordonez. Ordonez* supports Plaintiffs' position here.

The List Act provides an explicit waiver of sovereign immunity for recognition of an Indian tribe because it provides in terms that an Indian tribe may be recognized "by a decision of a United States court."

### C.    "Political Question"

It is beyond dispute that Congress has the power to delegate its constitutional authority over relations with the Indian tribes. It has delegated that authority to the DOI

---

[6] (g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Page 8 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

under 25 U.S.C. § 2 and to the "United States court[s]" as above. The "political question" doctrine is a judicial construct designed to accord due respect, as a matter of separation of powers, to the authority of the political branches over matters assigned to them by the constitution. Under the List Act, according that respect means following the explicit terms of Congress's delegation of authority to recognize Indian tribes "by a decision of a United States court." The court properly defers to Congress by honoring the language of that delegation.

Defendants have cited reported decisions that apply the political question doctrine to cases involving some aspects of relations between the United States and Indian tribes. MTD at 15. However, none of the opinions on which Defendants rely reckons with the "by a decision of a United States court" language quoted above from the List Act.

### 1. Cases quoting the List Act provision.

The Tenth Circuit Court of Appeals noted the List Act provision with approval in its introductory statement of the law in *Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1076 (10th Cir. 2004):

> The law governing Federal recognition of an Indian tribe is, today, clear. The Federally Recognized Indian Tribe List Act of 1994 provides Indian Tribes may be recognized by: (1) an "Act of Congress;" (2) "the administrative procedures set forth in part 83 of the Code of Federal Regulations[;]" or (3) "a decision of a United States court." Pub. L. No. 103-454, § 103(3), 108 Stat. 4791.

Similarly, in the District for the District of Columbia,

> [I]n the List Act, Congress expressed a number of important findings, including that " Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated "Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;" *or by a decision of a United States court*" and that "a tribe which has been recognized in one of these manners may not be terminated except by an Act of Congress."

*Stand Up for California! v. U.S. DOI*, 204 F. Supp. 3d 212, 301 (D.C. Cir. 2016) (emphasis added).

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

The District Court for the Eastern District of California relied on the same language in a recognition termination case as follows:

> According to this provision, and contrary to [defendant's] arguments, Congress "expressly repudiated" the termination policy, and expressly allows a tribe to become federally-recognized after termination "by a decision of a United States Court."

*U.S. v. Livingston*, 2010 U.S. Dist. LEXIS 97598 at *33-34 (E.D. Cal. 2010).

The District Court for the Eastern District of New York said of this language:

> Although not incorporated into the text of the statute, the background findings of the statute indicate that "Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in Part 83 of the Code of Federal Regulations . . .; or by a decision of a United States court." Pub. L. No. 103-454, § 103(3) (1994). *Nothing in the language of the statute indicates that it is removing from Congress and the courts their ability to recognize tribes;* instead, the statute merely gives the Secretary the power to publish a list of such recognized tribes. As such, several courts have indicated that a *decision of a United States court can result in federal recognition of a tribe, see Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1076 (10th Cir. 2004); *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547-48 (10th Cir. 2001), and hence [tribal] sovereign immunity, *see Wolfchild v. United States*, 72 Fed. Cl. 511, 536 (Fed. Cl. 2006); *but see W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1056 (10th Cir. 1993) (predating the Tribe List Act and stating that "the limited circumstances under which *ad hoc* judicial determinations of recognition were appropriate have been eclipsed by federal regulation").

*Gristede's Foods, Inc. v. Unkechauge Nation*, 2006 U.S. Dist. LEXIS 98321, *17-*18 (E.D.N.Y. 2006) (emphasis added).

**2. Cases applying the "political question" doctrine to Indian tribe recognition have not considered the List Act provision.**

The cases cited by Defendants for the application of the "political question" doctrine to some Indian tribe recognition questions do not address the "or by a United States court" List Act provision. Defendant relies on *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1276 (9th Cir.

///

///

Page 10 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

1  2004),[7] in which the court held that the political question doctrine *did not bar jurisdiction*
2  over a claim by native Hawaiians that their exclusion from the Department of Interior's
3  recognition regulations violated Equal Protection.  The court, in its general *dicta* about the
4  political question, did not mention the List Act provision that United States courts can decide
5  recognition questions.

6        Defendants rely heavily on a non-binding case in which the Seventh Circuit held forth
7  at length on the political question doctrine but ultimately rejected an APA challenge to
8  Interior's decision that the Indiana Miami Tribe no longer existed.  The court did not mention
9  the List Act. *Miami Nation v. U.S. DOI*, 255 F.3d 342 (7th Cir. 2001).

10       Defendant cites *U.S. v. Zepeda*, 792 F.3d 1103 (9th Cir. 2015), a criminal prosecution
11  in which the recognition status of the defendant's tribe was held to be a question of law for
12  the trial court. The decision mentions the List Act as showing the names of recognized tribes,
13  but it does not quote or discuss the language that provides for recognition of tribes "by a
14  decision of a United States court."   Defendants cite several cases that include general
15  statements about the political question doctrine but were decided before the 1994
16  enactment of the List Act.  MTD at 15, *citing U.S. v. Holliday*, 70 U.S. 407, 409 (1865); *U.S. v.
17  Sandoval*, 231 U.S. 28, 46-47 (1913); *U.S. v. Rickert*, 188 U.S. 432, 445 (1903); *Price v. State of
18  Hawaii*, 764 F.2d 623, 628 (9th Cir. 1985).  The "long history"[8] of decisions applying the
19  political question doctrine and reserving to Congress questions surrounding recognition of
20  Indian tribes is subject to change and has been changed by Congress.  The enactment of the
21  APA and creation of an administrative structure for recognition in the late 1970's made
22  recognition decisions subject to judicial review, which the government does not dispute. The
23  enactment of the List Act in 1994 added Congress's clear statement that Indian tribes may

24

25  ─────────────
    [7] MTD at 15.

26  [8] *Wyandot Nation of Kansas v. U.S*, 858 F.3d 1392, 1401-02 (2017). MTD at 15.


Page 11 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

be "recognized ... by a decision of a United States court."    That is Congress's view, and it controls.

### 3. The only case that discusses and rejects the List Act provision relies on inapposite authority.

Plaintiffs have found only one case that squarely confronts and declines to follow the List Act's "by a decision of a United States court" provision.  In the unofficially reported *Shinnecock Indian Nation v. Kempthorne*, 2008 U.S. Dist. LEXIS 75826 (E.D.N.Y. 2008) at *54-56, the court noted that "normally Congressional findings are entitled to much deference" but argued that "a Congressional finding does '"not create a substantive right,"' citing *J.P. v. County Sch. Bd. of Hanover County, VA*, 447 F. Supp. 2d 553, 573 (E.D. Va. 2006) and *Pennhurst v. Halderman*, 451 U.S. 1, 19 (1981).   However, the cases on which the *Shinnecock* court relies do not concern congressional statements as to what the law is. Rather, they discuss findings as to the general background or purpose of a statute. *Pennhurst,* 451 U.S. at 19 (findings expressing congressional preference for certain kinds of mental health treatment); *Hanover County,* 447 F. Supp. 2d at 573 (finding that education of disabled children is more effective with parental involvement).  The List Act findings at issue in this case do not express general policy preferences or principles.  They state clearly what the law is.

Congress has provided that Indian tribes may be recognized by federal courts.  This court should not refuse to enforce that Congressional provision under the "political question" doctrine, the point of which is for the court to defer to the intent of Congress. Congress's clearly expressed intention should control, and Defendants' motion to dismiss based on the "political question" doctrine should be denied.

## IV.    THE RE-PETITIONING BAR

Plaintiffs allege that Defendants' rules prohibiting them from ever again petitioning for federal acknowledgment violate the *ultra vires* doctrine, the APA, the First Amendment

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

Petition Clause, the Due Process Clause and Equal Protection of the Law.  FAC, ¶¶ 161-191.
Defendants do not address the merits of any of these allegations, but move to dismiss all of
these claims solely for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), arguing
that Plaintiffs lack standing to sue.[9]  Defendants contend that Plaintiffs have not sufficiently
alleged "redressability" – that an opportunity to re-petition under Defendants' new 2015
regulations would be likely to make a difference.[10]  However, the 2015 regulations address
admitted past inconsistency in acknowledgment decisions by requiring that evidence
previously considered to justify favorable decisions be considered in the same way in any
new decision.  25 C.F.R. § 83.10(a)(4) (2015).   Defendants ignore this new rule in their
motion.  The Chinook stand to benefit clearly and directly from this rule change and others.
A favorable decision on any of claims two through five would redress their grievance, and
they have standing to sue.

## A.    Standard of Review

Article III standing requires a showing of (1) injury in fact; (2) causal connection to
defendant's conduct; and (3) that plaintiff's injury will likely be redressed by a favorable
decision. *Chandler v. State Farm*, 598 F.3d 1115, 1122 (9th Cir. 2010), *citing Lujan v. Defenders
of Wildlife*, 504 U.S. 555, 561 (1992).  Defendants' motion challenges the third of these
elements – redressability.  MTD at 18-19.  Plaintiffs must show that it is "likely, as opposed

---

[9] Standing to sue is a question of subject matter jurisdiction. *Chandler v. State Farm*, 598
F.3d 1115, 1122 (9th Cir. 2010).  Though Defendants' motions to dismiss purport to rely on
both Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state
a claim for relief), their only argument as to Plaintiffs' second through fifth claims is that the
court lacks subject matter jurisdiction because Plaintiffs lack Article III standing.

[10] Defendants present no argument concerning the merits of any of Plaintiffs' four claims for
relief.  Plaintiffs therefore limit their response to showing that they indeed have standing to
sue because a decision requiring Defendants to consider a new application under the 2015
regulations would likely lead to acknowledgment of the Chinook. *See Allison v. Spring Mt. Las
Vegas, LLC*, 2016 U.S. Dist. LEXIS 1122992 at *3, n. 2 (D. Nev. 2012) (where defendant moves
to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), but presents argument only on the
former, the latter will not be considered).

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1  to merely speculative" that their injury will be redressed by the relief they seek. *Lujan* at

2  561.

> Plaintiffs need not demonstrate that there is a "guarantee" that their injuries
> will be redressed by a favorable decision…. Plaintiffs lack standing primarily
> when the [relevant] agency is not before the court, or when redressability
> "depends on the unfettered choices made by independent actors not before
> the courts and whose exercise of broad and legitimate discretion the courts
> cannot presume either to control or predict.

7  *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998) (citations

8  omitted). On the contrary, in the present case, the responsible agency is a defendant, not an

9  "independent actor," and its decisions are not "unfettered choices," but federal agency

10 actions reviewable in federal court. Plaintiffs will show redressability here because evidence

11 made newly relevant by the 2015 rules addresses directly the grounds on which Plaintiffs

12 were previously denied acknowledgment.

13   **B.    Proof of Jurisdictional Facts**

14     On a motion to dismiss for lack of subject matter jurisdiction under

15 Fed.R.Civ.P. 12(b)(1), proof of jurisdictional facts may be by "affidavit, declaration, or any

16 other evidence properly before the court, in addition to the pleadings challenged by the

17 motion." *Green v. U.S.*, 630 F.3d 1245, 1248 n. 3 (9th Cir. 2011). Defendants' argument,

18 limited to the allegations of the complaint, fails to address facts central to the jurisdictional

19 question raised by their motion.

20   **C.    How the Rules Changed in 2015**

21     The rules governing acknowledgment decisions changed in many ways in 2015,[11]

22 several of which have a significant impact on Plaintiffs' acknowledgment:

23 ///

24

---

25 [11] Defendants argue that only two "substantive" changes were made in the 2015 regulations.
MTD at 19. Defendants fail to mention or discuss important ways in which the rules were
26 changed, both substantively and concerning how evidence is to be evaluated.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

### 1. New rule concerning consistency with prior decisions.

In an effort to improve what BIA had recognized as egregious inconsistency among prior acknowledgment decisions, the 2015 amendments included the following new provision:

> (4) Evidence or methodology that the Department found sufficient to satisfy any particular criterion in a previous decision will be sufficient to satisfy the criterion for a present petitioner.

25 C.F.R. § 83.10(a)(4) (2015). As explained in Defendants' Federal Register response to Comments on the 2015 rules,

> if there is a prior decision finding evidence or methodology to be sufficient to satisfy any particular criterion previously, the Department *will find that evidence or methodology sufficient* to satisfy the criterion for a present petitioner.

80 Fed. Reg. 37862, 37865 (2015) (emphasis added). Defendants altogether ignore this new provision in their motion, but it has broad significance in this case. If evidence or methodology was used to reach a positive decision on any of the relevant criteria, in any previous acknowledgment decision, that same kind of evidence or methodology will satisfy that criterion for a present petitioner. That new rule applies, of course, to each of the three criteria that Defendants claim the Chinook cannot satisfy: Indian Identity, Distinct Community and Political Influence. It also affects Prior Acknowledgment.

### 2. Prior acknowledgment.

Prior acknowledgment as an Indian tribe is undeniably an important factor in a recognition decision. It controls both the overall application of the acknowledgment criteria and the time from which those criteria must be satisfied. 25 C.F.R. § 83.12 (2015). This new rule requiring consistency with prior use of evidence and methodology means that evidence of prior acknowledgment that was rejected in the 2002 decision denying the Chinook recognition will now be accepted as evidence of prior acknowledgment and in years much later than 1855, the only prior acknowledgment the Defendants concede. For example, while

Page 15 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**LANDYE BENNETT BLUMSTEIN LLP**
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

the 2002 Chinook denial rejected 1912 and 1925 claims legislation as evidence of prior acknowledgment of the Chinook,[12] the 1980 Jamestown Clallam[13] Proposed Findings resulting in recognition for that tribe relied, in part, on a solicitor's opinion that the tribe was previously recognized because of its inclusion in "1925 claims litigation." FAC, ¶ 103. If the Chinook were treated similarly, as they must be under the new 2015 regulations, the ICC land compensation claims in which they were finally adjudicated to be entitled to compensation on behalf of the tribe because of their "capacity and the right to assert claims for their respective lands"[14] would establish federal recognition as of 1971. That finding of recent acknowledgment would, of course, be consistent with 25 C.F.R. § 83.12(a)(3), under which evidence that a tribe has "been treated by the Federal government as having collective rights in tribal lands or funds" is evidence of its prior federal recognition. The Chinook were awarded compensation for the taking of their lands in 1970. Those funds were then held on their behalf by the Defendants, with periodic statements sent to them until at least 2012,[15] and it was not until August 2015 that Defendants first informed the Chinook that the funds were no longer for their benefit. FAC, Ex. D.

Plaintiffs submit the recency of their prior recognition, as compared with the 1855 treaty recognition the government concedes, make it likely, not speculative, that Plaintiffs could establish Indian Identity (and Political Influence) by pointing to more recent evidence

///

---

[12] MTD, Ex. 7 at 8/161("Issue No. 2, 3, 4).

[13] The "Jamestown S'Klallam Tribe" are specifically mentioned in Defendants' response to comments on the 2015 rules as an example of a prior favorable recognition decision whose "evidence was sufficient" and should be applied prospectively. 80 Fed. Reg. at 37865.

[14] 6 Ind. Cl. Com. 229a. (1958), FAC, ¶ 143.

[15] *See* Declaration of Anthony A. Johnson in Support of Plaintiffs' Response to Defendants' Motion to Dismiss (A. Johnson Dec.), ¶ 4; Declaration of Gary Johnson in Support of Plaintiffs' Response to Defendant's Motion to Dismiss (G. Johnson Dec.), ¶¶ 3 and 4.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1 of their recognition by the Defendants, evidence which the Defendants' 2002 denial of
2 recognition found lacking. 25 C.F.R. § 83.12(b)(2).

### 3. Indian identity.

4 The 2015 regulations add a significant new kind of evidence that will be considered
5 on the issue of Indian Identity: "Identification as an Indian entity by the petitioner itself." 25
6 C.F.R. § 83.11(a)(7) (2015).[16] This is another change that Defendants ignore in their motion.
7 In fact, the Chinook have continuously identified themselves as a tribe in at least the
8 following ways: asserting claims for federal compensation between 1899 and 1970;
9 enrolling at Indian schools; communications with federal officials since 1851; asserting
10 rights to fish in their usual and accustomed places; securing allotments; registering to vote
11 and voting on the Quinault reservation following adoption of the Indian Reorganization Act;
12 and seeking health care through Indian hospitals and clinics. A. Johnson Dec., ¶ 2; G. Johnson
13 Dec., ¶¶ 2, 4, and 7.

14 Consideration of this new self-identification factor, makes it likely, not speculative,
15 that the Chinook will be recognized in any Petition applying the 2015 rules.

### 4. Community.

17 The 2015 regulations add a new kind of evidence that will now be recognized to
18 support a finding of distinct Indian community, that "Children of members from a geographic
19 area were placed in Indian boarding schools or other Indian educational institutions to the
20 extent that supporting evidence documents the community claimed." 25 C.F.R.
21 § 83.11(b)(1)(x) (2015).[17] Because the Chinook were concededly previously recognized,[18]
22 the community factor need be met only at present. 25 C.F.R. § 83.12(b). Plaintiffs allege in
23 the FAC that several Chinook children have been sent to the Indian boarding school at

24 _____

[16] *Compare* 25 C.F.R. § 83.7(a)(1)-(6) (no self-identification factor).

[17] *Compare* 25 C.F.R. § 83.7(b)(1) (no boarding school factor).

[18] MTD at 23.

Page 17 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 ▪ 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 ▪ 503.273.9175 (facsimile)

Chemawa. FAC, ¶¶ 84-85; *see also G. Johnson Dec.*, ¶ 2. Because they satisfy this new 2015 factor, it is likely, not speculative, that the Chinook would be able to show they currently meet the Community criterion as required under 25 C.F.R. § 83.12(b)(1).

**5. Political influence.**

The 2015 regulations added several important provisions to the Political Influence criterion. Defendants ignore them all in their motion to dismiss. First, as a matter of process, the new 2015 rules provide that a petitioner can meet the Political Influence criterion "by some combination of two or more of the following forms of evidence or by other evidence." 25 C.F.R. § 83.11(c)(1) (2015). The new rule focuses on specific evidence, allowing a tribe to satisfy the criterion by fulfilling just two factors, as compared with the vague "some combination of the evidence" standard that applied in 1994.[19] The 2015 rules also add three new kinds of evidence from which a petitioner can choose two to satisfy:

> (vi) The government of a federally recognized Indian tribe has a significant relationship with the leaders or the governing body of the petitioner.
>
> (vii) Land set aside by a State for petitioner, or collective ancestors of the petitioner, that is actively used for that time period.
>
> (viii) there is a continuous line of entity leaders and a means of selection or acquiescence by a significant number of the entity's members.

The Quinault and Grande Ronde Tribes, among others, both continue to have important relationships with Chinook leaders, and there has been a continuous line of Chinook leaders and a means of selection or acquiescence by a significant number of Chinook dating back to at least 1899. A. Johnson Dec., ¶ 3.

---

[19] *Compare* 25 C.F.R. § 83.7(c)(1) (1994)("some combination of the evidence listed below and/or by other evidence"). Note that the 1994 provision requiring evidence from "authoritative, knowledgeable external sources of leaders and/or a governing body" does not appear in the 2015 version of ch. 83. 25 C.F.R. § 83.8(d)(3) (1994). *Compare* 25 C.F.R. § 83.12(b). That requirement was relied on heavily in the 2002 denial of recognition. MTD, Ex. 7 at 109/161.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

In addition, although not explicitly provided in the new 2015 rules, Defendants' Responses to Comments on those new rules explicitly state that "[a]ctions by a petitioner's leaders with regard to attorney contracts, claims filing, and other court cases may provide evidence of political influence/authority." 80 Fed. Reg. at 37872. Plaintiffs have alleged both, dating back to 1899. FAC, ¶ 33, 34, 38, 39, 40, and 43.

The many important differences described above between the 1994 and 2015 versions of the acknowledgment regulations, and the allegations in the FAC and additional facts adduced herein demonstrate that consideration of the Chinook petition under the current regulations would likely yield a positive result. The likelihood of their prevailing is not speculative. Plaintiffs' injury is therefore redressable by a favorable decision in this court, and they have standing to assert their second through fifth claims.

## V.     JURISDICTION ON PLAINTIFFS' SIXTH THROUGH EIGHTH CLAIMS FOR RELIEF – FUNDS HELD IN TRUST

The ICC entered Final Orders in 1970 and 1971 adjudicating Plaintiffs to be the proper representatives of the Chinook people and to be entitled to compensation for Chinook ancestral lands taken from them with "unconscionable consideration" under nineteenth century treaties. The adjudicated amount is now worth over $500,000. FAC, ¶ 144. Those funds have been held in trust for Plaintiffs by Defendants ever since. Defendants enacted an administrative procedure in 1978 to systematize federal tribal recognition and now take the position that, because Plaintiffs were not formally recognized under that later-enacted scheme, they are no longer entitled to their previously adjudicated compensation.

Plaintiffs' sixth claim challenges Defendants' attempt to deny them this compensation as a violation under the APA. Their seventh and eighth claims challenge the taking of their vested judgment interests as a violation of procedural and substantive due process of law. FAC, ¶¶ 192-202. Defendants move to dismiss, arguing that all three of these claims "appear to rest squarely upon 5 U.S.C. § 704 of the APA." MTD at 25. Defendants' entire argument is

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

that there has been no "final agency action" within the meaning of the APA. They offer no

argument as to Plaintiffs' due process claims. Defendants' motion should be considered only

as to Plaintiffs' sixth claim under the APA. Their motions to dismiss Plaintiffs' seventh and

eighth claims for violation of Due Process should be denied because Defendants have

presented no argument in support.[20]

## A.    The Indian Claims Commission (ICC) Decisions

The ICC was set up by statute in 1946 to address Indian claims that they had received

"unconscionable consideration" for the taking of their ancestral lands.[21] Federal recognition

of a tribe was not required for an Indian group to pursue its claims before the Commission.

The statute provided that

> Any claim within the provisions of this chapter may be presented to the
> Commission by any member of an Indian tribe, band, or other identifiable
> group of Indians as the representative of all its members; but wherever any
> tribal organization exists, recognized by the Secretary of the Interior as having
> authority to represent such tribe, band, or group, such organization shall be
> accorded the exclusive privilege of representing such Indians, unless fraud,
> collusion, or laches on the part of such organization be shown to the
> satisfaction of the Commission.

25 U.S.C. § 70i (repealed). The statute specifically allowed for claims by "any member" of any

"identifiable group of Indians as the representative of all its members," though, if there was

a tribe recognized by the Secretary of the Interior, that tribe would be the exclusive

---

[20] Constitutional claims are not subsumed within the APA. *Kahawaiolaa v. Norton*, 386 F.3d at 1276, *citing Greene v. Babbitt*, 64 F.3d 1266, 1274-75 (9th Cir. 1995) (Department of Interior's administrative tribal acknowledgment process is subject to the Due Process Clause). Defendants' argument that there has been no "final agency action" under the APA does not address Plaintiffs' Due Process claims.

[21] The statute, 60 Stat. 1050, 25 U.S.C. § 70a *et seq.*, was enacted because of the contributions of Indians to the war effort. It was repealed, and the Commission abolished and remaining unresolved claims transferred to the Court of Claims, effective September 30, 1978. 90 Stat. 1990 (1976).

Page 20 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1 representative. Plainly, a claimant need not have been a recognized tribe to be entitled to
2 present a claim.

3       The Chinook duly presented a claim for compensation for the taking of their ancestral
4 lands, which the Commission considered as "Docket 234." 6 Ind. Cl. Com. 177 ff. The
5 Commission entered an Interlocutory Order April 16, 1958 finding that the Chinook and
6 Clatsop Tribes "had Indian title" to ancestral lands, that the United States "assumed definite
7 control" over those lands in 1851, and "that said Indian tribal groups have the capacity and
8 the right to assert claims for their respective lands" described in the Commission's findings.
9 6 Inc. Cl. Com. 229a.[22] A final order on appeal was entered by the Court of Claims in 1971 for
10 compensation that is now worth more than $500,000. FAC, ¶¶ 142-43.

11     **B.**    **The Federal Recognition Process**

12       When the Chinook made and pursued their claims before the ICC in the 1950's to the
13 1970's, there was no administrative process for the recognition of Indian tribes. Accordingly,
14 federal recognition was not required to assert a claim. Tribes were, or were not, recognized
15 by the BIA, *ad hoc. Samish Indian Nation v. U.S.,* 419 F.3d 1355, 1359 (2005) (operative list
16 of recognized tribes drawn by BIA employee without authority). The precursor to the
17 current administrative system of recognition was first implemented in 1978, seven years
18 after the ICC adjudicated award to the Chinook became final on appeal in 1971. The
19 administrative rule on which Defendants rely for taking Plaintiffs' funds is 25 C.F.R. § 83.2,[23]
20 which was promulgated under the authority of the 1978 statute. For decades, Defendants

21

22

---

23 [22]  The quoted decision is found in the Oklahoma State University online library,
24 http://digital.library.okstate.edu/icc/v06/iccv06p229a.pdf, at 6 Ind Cl Com 229a, though
the page number that appears on the document itself is "6 176a."

25 [23] "Federal recognition: (a) Is a prerequisite to the protection, services, and benefits of the
26 Federal Government available to those that qualify as Indian tribes and possess a
government-to-government relationship with the United States;"

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1 sent statements for the ICC funds it holds on behalf of the Chinook to the tribe at its tribal

2 offices. FAC, ¶ 143.

3    **C.    Defendants' Position**

4    Defendants now take the position that the Chinook are not entitled to their

5 adjudicated funds after all because they have been administratively denied recognition

6 under Defendants' later-enacted administrative scheme, and "because you are not

7 recognized, the funds with our office cannot benefit your tribe." FAC, ¶ 144 (letter of

8 Catherine Rugen, August 25, 2015). Further, Defendants argue that, having been denied

9 recognition, the Chinook can never again seek recognition. MTD at 18 ff; 25 C.F.R. § 83.4(d).

10 Thus, Defendants take the position that, because of later legislation, the funds finally

11 adjudicated by Defendants' own ICC and the Court of Claims to be due as compensation for

12 the wrongful appropriation of Chinook lands can never be paid to the Chinook.

13    **D.    Violation of Due Process of Law**

14    Plaintiffs allege in their seventh and eighth Claims that Defendants have violated their

15 rights to Due Process of Law by abrogating their trust responsibility, keeping the Chinook

16 funds adjudicated in 1971, and taking the position that they have no obligation to the Tribe

17 because it has not been formally recognized under the 1978 administrative scheme.

18    Once the judicial process has adjudicated a final result, neither Congress, nor any

19 administrative agency, can reach back and nullify that result. The Chinook have had a vested

20 property right in their final judgment for fair compensation since that judgment became final

21 in 1971.

22    It is not within the power of a legislature to take away rights which have been
       once vested by a judgment. Legislation may act on subsequent proceedings,
23     may abate actions pending, but when these actions have passed into judgment
       the power of the legislature to disturb the rights created thereby ceases.
24

25 *McCulloch v. Virginia*, 172 U.S. 102, 123-24 (1898). Similarly here, the Chinook Tribe's 1971

26 judgment cannot be taken away by later legislative or administrative action. *See also Chicago*

Page 22 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

1 | *& Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113 (1948); *Hodges v.*
2 | *Snyder,* 261 U.S. 600, 603 (1923) ("the private rights of parties which have been vested by
3 | the judgment of a court cannot be taken away by subsequent legislation, but must be
4 | thereafter enforced by the court regardless of such legislation"); *Stephens v. Cherokee Nation,*
5 | 174 U.S. 445, 478 (1899).

6 | The Chinook obtained a final, unreviewable judgment from Defendants' ICC and the
7 | Court of Claims in 1971 based on a statute that allowed them to represent their people
8 | whether or not they were a federally recognized Tribe. It is a violation of due process of law
9 | for Congress or the Secretary to change the law after the vesting of the Chinook's property
10 | right in that final judgment so as to take it from them by adding a new requirement seven
11 | years later that they be federally recognized in order to receive its benefit.

12 | **E.    The APA Claim – Exhaustion of Remedies is Not Required Because It
13 |         Would Be Futile.**

14 | Exhaustion of administrative remedies[24] is not required where resort to an agency
15 | process would be futile. *J.L. v. Social Security Administration,* 971 F.3d 260, 271 (9th Cir.
16 | 1992). Exhaustion is futile "where the agency's position on an issue 'appears already set,'
17 | and it is 'very likely' what its results would have been." *Id.* Resort to administrative process
18 | in an effort to recover the funds to which the Chinook has been found entitled would be futile
19 | because Defendants already take the position that, because they have been denied federal
20 | recognition, the Chinook cannot receive the benefit of their adjudicated funds. Further,
21 |
22 |
23 | ──────────────
   | [24] One can find authority for the proposition that the requirement for "final agency action"
24 | and the requirement for "exhaustion of administrative remedies" are conceptually distinct
   | in some circumstances. *E.g., Williamson County Regional Planning Comm'n v. Hamilton Bank,*
25 | 473 U.S. 172, 192-93 (1985). However, in this case, they are the same, as the agency's
   | positions that lack of recognition is dispositive, and the Chinook are not, and can never be,
26 | recognized, are clear, and further pursuit of a remedy would be futile.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

according to Defendants, the Chinook can never be recognized in the future, so the loss of their adjudicated rights is irreversible.

In Ms. Rugen's August 25, 2015 letter, she told Chinook Nation Chairman Johnson "because you are not recognized, the funds held with our office cannot benefit your tribe." FAC, Ex. D. Indeed, as quoted by Ms. Rugen, 25 C.F.R. § 83.2 provides:

> Federal recognition * * * is a prerequisite to the protection, services, and benefits of the Federal Government available to those that qualify as Indian tribes and possess a government-to-government relationship with the United States.

Ms. Rugen's correspondence makes clear the position of Defendants that the Chinook are not entitled to their funds because they are not a recognized tribe. Defendants' position on this issue "appears already set," and it is "very likely" that any attempt by Plaintiffs to obtain their funds would be futile. Defendants' argument that Plaintiffs have failed to obtain "final agency action" with respect to their adjudicated funds should be rejected, and their motion to dismiss denied as to Plaintiffs' sixth claim.

## VI. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss should be **DENIED**.

DATED: January 22, 2018.

LANDYE BENNETT BLUMSTEIN LLP

By: _____
Thane W. Tienson, WSBA #13310
ttienson@lbblawyers.com

James S. Coon, *Pro Hac Vice*
jcoon@tcnf.com

Attorneys for Plaintiffs

Page 24 - PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018, I served the foregoing **PLAINTIFFS'**

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS** on the following individual(s):

Brian C. Kipnis
*brian.kipnis@usdoj.gov*
Asst. U.S. Attorney
Office of the U.S. Attorney
5220 United States Courthouse
700 Stewart St.
Seattle, WA 98101-1271
(206-553-4073 (fax))

*Of Attorneys for Defendants*

☒ by the Court's CM/ECF system to the email address listed above
☐ by facsimile pursuant to the fax number listed above
☐ by email to the email address listed above
☐ by overnight delivery to the address listed above
☐ by first class mail to the address listed above

LANDYE BENNETT BLUMSTEIN LLP

_____

Jeri G. Zwick, Legal Asst. to Thane W. Tienson
*Of Attorneys for Plaintiffs*

Page 1 - CERTIFICATE OF SERVICE

41V5150