1

2

Judge Leighton

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| CHINOOK INDIAN NATION, an Indian Tribe and a Washington nonprofit corporation, and as successor-in-interest to The Lower Band of Chinook Indians; and ANTHONY A. JOHNSON, individually and in his capacity as Chairman of the Chinook Indian Nation; and CONFEDERATED LOWER CHINOOK TRIBES AND BANDS, a Washington nonprofit corporation,<br><br>                        Plaintiffs,<br><br>     v.<br><br>DAVID BERNHARDT, in his capacity as Secretary of the U.S. Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF INDIAN AFFAIRS, OFFICE OF FEDERAL ACKNOWLEDGMENT; UNITED STATES OFAMERICA; and TARA KATUK MAC LEAN SWEENEY, in her capacity as Assistant Secretary – Indian Affairs,<br><br>                        Defendants. | CASE NO.  C17-5668-RBL<br><br>**NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Note on Motion Calendar for: October 4, 2019) |

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - i
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Defendants David Bernhardt[1], the U.S. Department of the Interior, and Tara Katuk Mac Lean Sweeney[2], through their attorneys, Brian T. Moran, United States Attorney, and Brian C. Kipnis, Assistant United States Attorney, for the Western District of Washington, hereby move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on claims II, III, IV and V of the amended complaint (dkt. # 24) on the ground that there are no genuine issues of material fact and defendants are entitled to summary judgment on those claims as a matter of law.

This motion is made and based on the pleadings and paper filed herein, and such oral argument as the Court may entertain.

DATED this 12th day of September 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney


*s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: brian.kipnis@usdoj.gov

Attorneys for Defendants

---

1  David Bernhardt was confirmed by the Senate of the United States and assumed office as Secretary of the Interior on April 11, 2019.  He is hereby substituted for former Secretary Ryan K. Zinke pursuant to Rule 25(d), F.R.Civ.P.

2 Tara Katuk Mac Lean Sweeney was confirmed by the Senate of the United States on June 28, 2018, and assumed office on July 30, 2018.  She is hereby substituted for former Acting Assistant Secretary – Indian Affairs John Tahsuda pursuant to Rule 25(d), F.R.Civ.P.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - ii
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The eight separate claims for relief in the amended complaint may readily be grouped into three discrete categories.

The amended complaint's first claim for relief (Claim I) seeks a judicial determination that the Chinook Indian Nation, Inc. (CIN) is a "federally recognized tribe," and an order directing the Department to place CIN on the "Federally Recognized Indian Tribe List." Dkt. # 24, ¶ 2, *ll*. 9-18. On June 20, 2018, this Court dismissed Claim I for lack of subject matter jurisdiction. Dkt. # 45, p. 27, *ll*. 2-4.

Plaintiffs' second through fifth claims for relief (Claims II-V), the subject of this motion for partial summary judgment, ask the Court, under various legal theories, to invalidate an administrative regulation, 25 C.F.R. § 83.4(d) (2015), which provides that the Department will not acknowledge an entity under the federal Indian tribal acknowledgment regulations (25 C.F.R. Part 83) that has previously petitioned for federal acknowledgment under those regulations and been denied acknowledgment. *Id.* at *ll*. 18-22.[3]

Lastly, plaintiffs' sixth through eighth claims for relief (Claims VI-VIII) ask the Court to set aside as "arbitrary and capricious" a purported final agency action denying plaintiffs access to the proceeds of a 1970 Indian Claims Commission judgment awarded to the Clatsop Indians and the Lower Band of the Chinook Indians. *Id.* at *ll*. 22-24.

The present motion asks the Court to order that defendants shall have summary judgment on Claims II-V. In 1981, CIN petitioned for recognition as an Indian tribe through the administrative process established by the Department's regulations for that purpose. In 2002, CIN's petition was denied in a final agency action. CIN did not seek further administrative or judicial review of that denial, and the deadlines for seeking such review have long since expired. CIN would like to

---

[3] Claim II asserts, in essence, that the regulation is *ultra vires*. Dkt. 24, ¶¶ 161-172. Claim III asserts that the regulation violates plaintiffs' constitutional right to procedural due process under the Fifth Amendment. *Id.* at ¶¶ 173-180. Claim IV asserts that the regulation violates plaintiffs' constitutional right to equal protection of the law under the Fifth Amendment. *Id.* at ¶¶ 181-188. Claim V asserts that the regulation violates plaintiffs' constitutional right to petition the Government under the First Amendment. *Id.* at ¶¶ 189-191.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 1
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

petition for acknowledgment again but, as plaintiffs' amended complaint alleges, 25 C.F.R. § 83.4(d) (2015) forecloses any possibility that CIN can obtain acknowledgment through a second petition under the Part 83 regulations.  Accordingly, plaintiffs seek to have the regulation set aside.

Contrary to the claims alleged in the amended complaint, the Department's promulgation of 25 C.F.R. § 83.4(d) was wholly lawful, and the regulation does not violate plaintiffs' constitutional rights.

## STATUTORY AND REGULATORY BACKGROUND

1. The Federal Acknowledgment Process

   *a. The Acknowledgment Process Generally*

Federal acknowledgment of an Indian group as a federally recognized Indian tribe establishes a government-to-government relationship with the United States and is a prerequisite to eligibility for nearly all of the federal protections, services, and benefits available to Indian tribes.  25 C.F.R. § 83.2 (2015).  The power to recognize Indian tribes rests with Congress and the Executive.  See *United States v. Holliday*, 70 U.S. 407, 419 (1865), *and see Price v. State of Hawaii*, 764 F.2d 623, 628 (9th Cir. 1985); *Chinook Indian Nation v. Zinke*, 326 F. Supp. 3d 1128, 1139 (W.D. Wash. 2018).

Historically, Indian tribes were granted federal recognition through treaties approved by Congress or case-by-case decisions of the Executive branch.  In 1978, The Department established a comprehensive regulatory process for the review and approval of petitions for acknowledgment of Indian tribes.  *See* 25 C.F.R. Part 83; *see also* 43 Fed. Reg. 39361 (Aug. 24, 1978).  The Office of Federal Acknowledgment ("OFA") processes petitions for acknowledgment and is composed of experts in anthropology, genealogy, and history.  OFA reports to the Assistant Secretary – Indian Affairs ("AS-IA").

Part 83 has seven mandatory criteria that a petitioner must meet to be acknowledged as a federally recognized Indian tribe.[4]  These criteria are designed to demonstrate continuous existence

---

[4] These seven criteria, presently delineated in 25 C.F.R. § 83.11 (2015), require the petitioner to demonstrate that sources identify the petitioner as an American Indian entity on a substantially continuous basis since 1900; the petitioner is a distinct community from 1900 until the present; the petitioner maintains political influence or authority over its members as an autonomous entity from 1900 until the present; the petitioner has a governing document with membership

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 2
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

as a social and political community from the historical Indian tribe.  Failure to meet any one of the criteria results in a determination that the entity is not entitled to federal recognition and is ineligible to establish a government-to-government relationship with the United States.  *See* 25 C.F.R. § 83.5(a) (2015).

### b. The 1994 Revisions to the Federal Acknowledgment Regulations

The federal acknowledgment regulations were first revised effective March 28, 1994. 59 Fed. Reg. 9280 (February 25, 1994).  Among the purposes of the revisions was to "make clearer the meaning of the criteria for acknowledgment and make more explicit the kinds of evidence which may be used to meet the criteria" but without changing the general standards for interpreting evidence used to evaluate petitions.  *Id.*  The revised rules also reduced the evidentiary requirements for petitioners, such as CIN, who could demonstrate previous federal acknowledgment.  *Id.*  Under the 1994 revisions, petitioners who were able to demonstrate previous federal acknowledgment were required to demonstrate that they met the community criterion at the present time (25 C.F.R. § 83.7(b) (1994)) and the Indian entity (25 C.F.R. § 83.7(a) (1994)) and political influence (25 C.F.R. § 83.7(c) (1994)) criteria from the time of previous federal acknowledgment.  *Id.* at 9282-9283.  That said, under both the original regulations and the revised regulations, "the standards of continuity of tribal existence that a petitioner [was required to] meet remain[ed] unchanged."  *Id*. at 9280.

Among the specific revisions made in 1994 to the Part 83 regulations was the addition of the following provision, codified as 25 C.F.R. § 83.3(f) (1994):

> (f) Finally, groups that previously petitioned and were denied Federal acknowledgment under these regulations or under previous regulations in part 83 of this title, may not be acknowledged under these regulations.  This includes reorganized or reconstituted petitioners previously denied, or splinter groups, spin-offs, or component groups of any type that were once part of petitioners previously denied.

59 Fed. Reg. at 9294.

---

criteria; the petitioner has a membership that descends from a historical Indian tribe; the petitioner is composed principally of persons who are not members of any federally recognized tribe; and, the petitioner is not subject to congressional legislation that terminated or forbids a Federal relationship.  25 C.F.R. § 83.11 (2015).

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 3
(Case No. C17-5668-RBL)

*c. The 2015 Revisions to the Federal Acknowledgment Regulations*

In 2015, the Department issued a final rule revising the Part 83 federal acknowledgment regulations once again. *Federal Acknowledgment of American Indian Tribes*, 80 Fed. Reg. 37862 (July 1, 2015). The revisions sought to "make the process and criteria more transparent, promote consistent implementation, and increase timeliness and efficiency, while maintaining the integrity and substantive rigor of the process." *Id.* The 2015 revisions continued the two-pronged system ushered in with the 1994 revisions based on whether a petitioner was able to demonstrate previous federal acknowledgment.[5] Thus, under the revised regulations, petitioners establishing previous federal acknowledgment need to demonstrate that they meet the "Community" (25 C.F.R. § 83.11(b) (2015)) criterion only at the present time (instead of from 1900 to present) and must demonstrate the "Indian Entity Identification" (25 C.F.R. § 83.11(a) (2015)), and "Political Authority" (25 C.F.R. § 83.11(c) (2015)) criteria since 1900 or from the time of previous federal acknowledgment, whichever is later. 25 C.F.R. § 83.12 (2015). These petitioners must also demonstrate that they meet the remaining 1994 criteria concerning "Governing Document" (25 C.F.R. § 83.11(d) (2015)), "Descent" (25 C.F.R. § 83.11(e) (2015)), "Unique Membership" (25 C.F.R. § 83.11(f) (2015)), and "Congressional Termination" (25 C.F.R. § 83.11(g) (2015)). 25 C.F.R. § 83.43 (2015).

The 2015 revisions were mostly intended to be clarifying. Except in two instances, they did not substantively change the Part 83 criteria. 80 Fed. Reg. at 37863.[6]

In the Notice of Proposed Rulemaking for the 2015 revisions to Part 83, the Department originally proposed to alter the regulations concerning re-petitioning promulgated in 1994 in order to allow re-petitioning by previously denied entities meeting limited, enumerated, criteria.

---

[5] Plaintiffs' amended complaint refers to this as the "reaffirmation" process, and they appear to be suggesting in their allegations that this is a new feature of the 2015 regulations. See Dkt. # 24. ¶ 129. The allegations of the amended complaint also appear to be suggesting that CIN would be denied the benefit of having these "new" provisions applied to CIN's circumstances if it is not allowed to re-petition for acknowledgment anew. *Id.* at ¶ 135. In fact, as noted above, these provisions were part of the 1994 revisions to the Part 83 regulations, and the CIN petition, denied in 2002, was evaluated under these provisions. Dkt. # 33-7 at pp. 13-19.

[6] The first substantive change is that the criterion codified at 25 C.F.R. § 83.11(a) (2015), which previously required evidence of external identification of the petitioner as an Indian entity, now could be satisfied by contemporaneous self-identification. *Id.* The second substantive change relates to how marriages are counted as evidence of "a distinct community" under criterion 25 C.F.R. § 83.11(b)(2) (2015). *Id.*

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 4
(Case No. C17-5668-RBL)

*See* AR0000037 (79 F.R. at 35140).  After reviewing the many comments received on this proposal, the Department determined that allowing re-petitioning would not be appropriate.  80 Fed. Reg. at 37874-37875.  As the Department explained in the final rule adopting the 2015 revisions, "[a]llowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular."  80 Fed. Reg. 37875.  Thus, although recodified, and slightly reworded, the regulation challenged here, 25 C.F.R. § 83.4(d) (2015), and its 1994 predecessor, are functionally identical.[7]

STATEMENT OF FACTS

*i. CIN Petition for Acknowledgment and 1997 Proposed Finding by AS-IA Ada Deer*

On June 12, 1981, CIN submitted a documented petition for federal acknowledgment to the Bureau of Indian Affairs (BIA).  Dkt. # 33-3 at p. 6.[8]  The petition was placed under active consideration on January 28, 1994, at CIN's request.  *Id.*

As noted above, the Part 83 regulations were revised, effective March 28, 1994.  Pursuant to 25 C.F.R. § 83.3(g) (promulgated with the 1994 revisions), CIN was afforded the option of continuing the acknowledgment process under the 1994 revised Part 83 regulations or under the 1978 Part 83 regulations.  Dkt. # 33-3 at pp. 6-8.  CIN notified the Department that it wished to continue the acknowledgment process under the 1978 regulations.  *Id.* at p. 7.  Thereafter, on

---

7  25 C.F.R. § 83.4(d) (2015) provides:

The Department will not acknowledge:

\* \* \*

(d)  An entity that previously petitioned and was denied Federal acknowledgment under these regulations or under previous regulations in part 83 of this title (including reconstituted, splinter, spin-off, or component groups who were once part of previously denied petitioners).

8  "FD" refers to the "Final Determination" issued by the AS-IA on CIN's documented petition for federal acknowledgement dated January 3, 2001.  Dkt. # 33-3.  Although entitled "final determination," a request for reconsideration filed with the Interior Board for Indian Appeals (IBIA) prevented it from becoming a final decision for the Department.  25 C.F.R. § 83.11(a)(2) (1994).  This FD was later reconsidered and ultimately reversed, as documented in a "Reconsidered Final Determination" ("RFD") issued by the AS-IA on July 5, 2002.  Dkt. # 33-7.  The RFD references the FD for the administrative history of the Department's consideration of the Chinook petition.  *Id.* at p. 10.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 5
(Case No. C17-5668-RBL)

1   August 22, 1997, the Department published notice in the Federal Register of the proposed finding

2   (PF) signed by former AS-IA Ada E. Deer against federal acknowledgment of CIN, applying the

3   1978 version of the Part 83 regulations.  62 Fed. Reg. 44714; Dkt. # 33-2.

4        *ii. 2001 Final Determination by AS-IA Kevin Gover and Reconsideration*

5        Following the publication of the AS-IA's PF against acknowledgment, a lengthy comment

6   period ensued during which the Department received comments on the PF from CIN and third

7   parties.  After the comment period closed and CIN was afforded time to consider the third party

8   comments, CIN submitted a response to those comments.  On January 3, 2001, former AS-IA Kevin

9   Gover issued a final determination concluding that CIN should be federally acknowledged, notice of

10  which was published in the Federal Register.  *See Final Determination to Acknowledge the Chinook*

11  *Indian Tribe/Chinook Nation (Formerly: Chinook Indian Tribe, Inc.)*, 66 Fed. Reg. 1690 (January 9,

12  2001).  Dkt. # 33-4.

13       Thereafter, requests for reconsideration were filed with the Interior Board of Indian Appeals

14  (IBIA) by interested third parties, and briefing followed.  25 C.F.R. § 83.11(a)(1); 36 IBIA 245

15  (August 1, 2001).  The IBIA determined that some of the issues raised were within its jurisdiction

16  under 25 C.F.R. § 83.11(d) (1994).  Others were not.  The IBIA concluded that the issues raised

17  within its jurisdiction did not merit reconsideration of the FD.  36 IBIA 250.[9]  However, the IBIA

18  also concluded that nine issues were not within its jurisdiction and should be referred to the

19  Secretary of the Interior pursuant to 25 C.F.R. § 83.11(f) (1994).[10]  36 IBIA at 250-252 (listing the

20  9  A copy of the IBIA decision has been filed in this action.  *See* Dkt. # 33-5.

21  10  Subsection 83.11(f) (1994) provided:

22      (1) The Board, in addition to making its determination to affirm or remand, shall describe in its decision any
        grounds for reconsideration other than those in paragraphs (d)(1)-(d)(4) of this section alleged by a
23      petitioner's or interested party's request for reconsideration.

24      (2)  If the Board affirms the Assistant Secretary's decision under § 83.11(e)(9) but finds that the petitioner or
        interested parties have alleged other grounds for reconsideration, the Board shall send the requests for
25      reconsideration to the Secretary.  The Secretary shall have the discretion to request that the Assistant
        Secretary reconsider the final determination on those grounds.

26  This process, allowing for limited reconsideration and a hearing before an administrative judge at the IBIA, was
27  eliminated by the 2015 revisions to the Part 83 regulations.  At the same time, an option for a petitioner to elect a hearing
    on a negative PF before an administrative law judge was added.  80 Fed. Reg. at 37880.

28

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 6
(Case No. C17-5668-RBL)

nine referred issues).

On November 6, 2001, after receiving comments from both CIN and interested third parties, former Secretary of the Interior Gale A. Norton, exercising her discretion in the matter, referred eight of the nine issues to the AS-IA as possible grounds for reconsideration of the FD.  Dkt. # 33-6.

*iii. 2002 Reconsidered Final Determination by AS-IA Neal A. McCaleb*

On July 5, 2002, former AS-IA Neal A. McCaleb issued a "Reconsidered Final Determination Against Federal Acknowledgment."  Dkt # 33-7.  Upon reconsideration, AS-IA McCaleb found error in the FD as to the weight and relevance it gave to (1) three statutes; (2) the activities of CIN's Bay City members; and (3) historical claims activities.  *Id.* at pp. 59-60. Accordingly, AS-IA McCaleb determined that a Reconsidered Final Determination (RFD) was required on the merits with respect to mandatory criteria (a), (b), and (c).  *Id.* at p. 60.[11]

Resolving an issue as to whether the Petition should be evaluated under the original Part 83 regulations or the 1994 revised Part 83 regulations, AS-IA McCaleb decided to evaluate the petition under both the 1978 and 1994 versions of the regulations.  *Id.* at p. 63.  AS-IA McCaleb determined that CIN had prior federal acknowledgment, but nonetheless failed to demonstrate, under either the 1978 or the 1994 regulations, that it was "identified as an Indian entity by external observers on a substantially continuous basis between 1873 and 1951."  *Id.* at pp. 77-78.

Additionally, AS-IA McCaleb determined that CIN did not present evidence of social interaction at a level sufficient to meet criterion 25 C.F.R. § 83.7(b) at any time after 1950, including at the time of the determination (*i.e.,* "at present," as required by the 1994 revision of the Part 83 acknowledgment regulations for those petitioners with unambiguous prior federal acknowledgment). *Id.* at pp. 100-101.

Finally, AS-IA McCaleb concluded that the evidence in the record was insufficient to show that CIN met criterion 25 C.F.R. § 83.7(c) under either the 1978 regulations or under the modified provisions of 25 C.F.R. § 83.8(d)(3) under the 1994 regulations.  Under the 1978 regulations, AS-IA McCaleb determined that the available evidence did not demonstrate that CIN had exercised political

---

11 Under the 1994 version of Part 83, 25 C.F.R. § 83.7(a), (b) & (c), respectively.

influence over its members from historical times until the present.  While under the 1994 regulations, a petitioner with previous federal acknowledgment may demonstrate that it meets the criterion from the date of the last federal acknowledgment to the present, in part with "evidence that authoritative, knowledgeable external sources have identified leaders or a governing body of the petitioning group on a substantially continuous basis," AS-IA McCaleb concluded that neither such evidence nor other evidence of political authority was found in the record.  *Id.* at pp. 109-110.

In summary, the Department's final decision on CIN's petition for federal acknowledgment was as follows:

> The available evidence demonstrates that the petitioner does not meet all seven criteria required for Federal acknowledgment. Specifically, the petitioner does not meet criteria 83.7 (a), (b), or (c) under the 1978 regulations, nor those three criteria under the 1994 regulations as modified by sections 83.8(d)(1), (d)(2), (d)(3), or (d)(5).  The petitioner was found to meet criteria 83.7 (d), (e), (f), and (g) in the original final determination.  Those criteria were not at issue in the referral by the Secretary.  In accordance with the regulations set forth in 25 CFR 83.7 [1978] and 25 CFR 83.10(m) [1994], failure to meet any one of the seven criteria requires a determination that the group does not exist as an Indian tribe within the meaning of Federal law.

67 Fed. Reg. 46204, 46206 (July 12, 2002).[12]  This decision was final and effective on that date.  25 C.F.R. § 83.11(h)(3) (1994).[13]

*iv. No Judicial Review Requested*

A legal remedy was available to CIN under the APA to seek judicial review of AS-IA McCaleb's 2002 decision for the Department denying CIN's petition for acknowledgment.  *See Miami Nation of Indians of Indiana, Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 348 (7th Cir. 2001).  However, at no time did CIN file a lawsuit seeking judicial review of this final agency action.  The six-year statute of limitations for such an action has long since expired.  28 U.S.C. § 2401(a); *and see Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) (holding that section 2401(a)'s statute of limitations began to run on date of publication in Federal

---

12  A true and correct copy of this Federal Register Notice has been filed in this lawsuit.  Dkt. # 33-8.

13  25 C.F.R. § 83.11(h)(3) (1994) provided, in pertinent part:

> (3) If a determination is reconsidered by the Assistant Secretary because of action by the Board remanding a decision or because the Secretary has requested reconsideration, the reconsidered determination shall be final and effective upon publication of the notice of this reconsidered determination in the Federal Register.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 8
(Case No. C17-5668-RBL)

Register); *and Historic Eastern Pequots v. Salazar*, 934 F. Supp. 2d 272, 279 (D.D.C. 2013) (APA claim filed more than six years after publication in Federal Register of reconsidered final determination barred by 28 U.S.C. § 2401(a)).

ARGUMENT

## I.    APA STANDARD OF REVIEW

Under the APA, a final agency action of a federal agency may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Under the applicable standard of review, the Department's decision, in this case, to promulgate the challenged regulation, is presumed valid and should be affirmed if a reasonable basis exists for the decision.  *See California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018).  The plaintiffs' burden is to demonstrate otherwise.  *George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1011 (9th Cir. 2009).

APA arbitrary and capricious review is ". . . highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.* 475 F.3d 1136, 1140 (9th Cir. 2007).  The role of a district court is to determine whether the agency "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Nat'l Ass'n of Home Builders v. Defs. Of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotations omitted).

While a summary judgment motion brought under Rule 56, F.R.Civ.P., is the appropriate procedural vehicle for deciding an APA arbitrary and capricious claim, *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*, 18 F.3d 1468, 1472 (9th Cir. 1994), because a court's task in adjudicating such a claim entails neither fact-finding nor the creation of a factual record, the rule functions differently than it does in the adjudication of civil claims that are amenable to judicial fact-finding.  In cases adjudicated under the arbitrary and capricious standard of review, the agency, not the court, is the fact-finder, *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985), and the body of

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 9
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

evidence for such fact-finding is the administrative record compiled by the agency for the final agency action under review. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973). Thus, in such cases, the ultimate question for the Court is whether the agency action is supported by the evidence in the administrative record and is otherwise consistent with applicable law. *Id.*

II.   THE DEPARTMENT OF THE INTERIOR DID NOT EXCEED ITS DELEGATED AUTHORITY IN PROMULGATING THE REGULATION

According to plaintiffs, defendants acted unlawfully in promulgating 25 C.F.R. § 83.4(d) (2015) because, as alleged in their amended complaint, defendants lacked the authority to do so and because the regulation is contrary to the federal acknowledgment process. Dkt. 24, ¶ 166. In assessing such claims, the Court applies the standard of review enunciated by the Supreme Court in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Baldwin v. United States*, 921 F.3d 836, 842 (9th Cir. 2019). Under *Chevron*, the Court must first determine "whether Congress has directly spoken to the precise question at issue." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013). If "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (citation omitted).

Congress has specifically granted the Department the authority to promulgate regulations concerning Indian affairs and relations. *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987) (citations omitted). Exercising that authority, the Department has promulgated the Part 83 regulations for the purpose of determining "which Indian groups exist as tribes." *Id.*; *and see Nooksack Indian Tribe v. Zinke*, No. C17-0219-JCC, 2017 WL 1957076, at *6 (W.D. Wash., May 11, 2017) (recognizing "the guiding principle that, although the [Department] must carefully consider tribal sovereignty, it ultimately has the power to manage "*all* Indian affairs" and "*all* matters *arising out of Indian relations*.") (quoting 25 U.S.C. § 2) (emphasis in original); *see also* 43 U.S.C. § 1457 (charging the Secretary of the Interior with the supervision of public business related to Indians); 25 U.S.C. § 2 (granting management of all Indian affairs to the Commissioner of Indian Affairs under the supervision of the Secretary of the Interior and regulations prescribed by the

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 10 (Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

President); 25 U.S.C. § 9 (authorizing the President and Secretary of the Interior to prescribe regulations to carry out statutory responsibilities relating to Indian affairs); Federally Recognized Indian Tribe List Act of 1994 § 104, 25 U.S.C. § 5131 (directing the Secretary to "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians"); 25 C.F.R. § 83.6(a) (implementing 25 U.S.C. § 5131).[14]

Courts have also held that the Department has special expertise in the determination of acknowledgment of Indian tribes and has authority to prescribe regulations for federal acknowledgment.  *See James*, 824 F.2d at 1138-1139; *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1274 (9th Cir. 2004) ("[T]hrough its broad delegation and acknowledgment regulations, the Department of Interior has assumed much of the responsibility for determining which tribes have met the requirements to be acknowledged as a tribe with a government-to-government relationship with the United States," and noting that "[t]he Department of Interior applies its expertise to this determination."); *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 551 (10th Cir. 2001) (noting that "[d]etermining whether a group of Indians exists as a tribe is a matter requiring [the Department's] specialized agency expertise"); *Allen v. United States*, 871 F. Supp. 2d 982, 990 (N.D. Cal. 2012); *Robinson v. Salazar,* 885 F. Supp. 2d 1002, 1025 (E.D. Cal. 2012)*, aff'd sub nom., Robinson v. Jewell*, 790 F.3d 910 (9th Cir. 2015).

The statutes that grant the Department authority over Indians generally, and the acknowledgment process specifically, are silent on any specific requirement related to acknowledgment, including whether re-petitioning should be allowed.[15]  The Court must therefore

---

14  The list published in the Federal Register is ordinarily dispositive evidence of whether an Indian tribe is federally recognized.  *See Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) (noting that inclusion of a group of Indians on the list ordinarily suffices to establish that group is a sovereign power and thus entitled to immunity from suit).

15  Indeed, there is no specific directive to the Department for any specific provision of the Part 83 regulations. *See Miami Nation of Indians of Indiana, Inc. v. Babbitt*, 887 F. Supp. 1158, 1163 (N.D. Ind. 1995) (noting that "[n]o statute explicitly authorizes the Secretary of the Interior to promulgate regulations concerning the acknowledgment of Indian Tribes; the Secretary relied upon his general statutory authority contained in 25 U.S.C. §§ 2 and 9 when promulgating the acknowledgment regulations," but rejecting unsuccessful petitioner's challenge to specific provisions of Part 83).

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 11
(Case No. C17-5668-RBL)

evaluate "whether the agency's answer is based upon a permissible construction of the statute."
*Baldwin v. United States*, 921 F.3d at 842 (quoting *Chevron*, 467 U.S. at 843).  At *Chevron* step two,
the Court must determine if the agency's interpretation is "reasonable."  *Oregon Rest. & Lodging
Ass'n v. Perez*, 816 F.3d 1080, 1089 (9th Cir. 2016).  "This is a generous standard, requiring
deference 'even if the agency's reading differs from what the court believes is the best statutory
interpretation.'"  *Id. (quoting Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*,
545 U.S. 967, 980 (2005)).

The regulation challenged by plaintiffs, and presently codified as 25 C.F.R. § 83.4(d) (2015),
provides:

> The Department will not acknowledge:
>
> * * *
>
> (d)  An entity that previously petitioned and was denied Federal acknowledgment
> under these regulations or under previous regulations in part 83 of this title (including
> reconstituted, splinter, spin-off, or component groups who were once part of
> previously denied petitioners).

In essence, this regulation serves many of the same purposes for Part 83 petitions as the common law
doctrines of finality and claim preclusion serve in the judicial realm.  Specifically, *solely as to efforts
to obtain recognition through the Part 83 administrative process*, this regulation makes final
determinations on petitions submitted under the Part 83 regulations binding in perpetuity.

In 1994, when the prior codification of this regulation was first adopted, the Department
determined that "there should be an eventual end to the present administrative process," particularly
because "petitioners who were denied went through several stages of review with multiple
opportunities to develop and submit evidence."  59 Fed. Reg. at 9291.  The Department found that
allowing such groups to re-petition with new evidence, and expect a different result, "would burden
the process for the numerous remaining petitioners."  *Id.*  Moreover, as the Department observed,
denied petitioners (like CIN) "still have the opportunity to seek legislative recognition if substantial
new evidence develops."  *Id.*

These same reasons fully support the re-codified 2015 version of this regulation.  *See* 80 Fed.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 12
(Case No. C17-5668-RBL)

Reg. at 37874-37875.[16]  The Department reasonably determined that the effect of re-petitioning would be to slow down the process for petitioners who have not yet had their petitions heard, which would be contrary to the goals of the 2015 Final Rule.  "Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular."  80 Fed. Reg. at 37875.  A major impetus for the 2015 Final Rule was reducing the length of time between filing a petition and reaching a decision.  *Id.* at 37862.  ("This rule updates Part 83 to improve the processing of petitions for Federal acknowledgment of Indian tribes, with an aim of making the process more transparent, promoting fairness and consistent implementation, and increasing timeliness and efficiency, while maintaining the integrity and substantive rigor of the process.").  Adding re-petitioners to the waiting list, the Department concluded, would increase the time for new petitions to be heard, defeating one of the aims of the 2015 Final Rule.  *Id.* at 37875.  The Department thus reasonably decided not to substantially alter its regulation regarding re-petitioning from the 1994 version, and this determination was both within, and consistent with, its broad delegated authority to manage "all Indian affairs" and "all matters arising out of Indian relations."  *Id.; and see* 25 U.S.C. § 2.

The Department's decision to promulgate a regulation that models the concepts of finality and claim preclusion is reasonable and should be upheld.  These are recognized to be jurisprudential doctrines of universal applicability.  *See St. Louis Typographical Union No. 8, AFL-CIO v. Herald Co.*, 402 F.2d 553, 555 (8th Cir. 1968).  Their underlying purpose is to preclude parties from contesting matters that they have had a full and fair opportunity to litigate.  *See Montana v. United States*, 440 U.S. 147, 153-154 (1979).  Among the interests these doctrines promote is the conservation of resources and the fostering of reliance on rulings by minimizing the possibility of inconsistent decisions.  *Id.*; *and see, generally*, 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4403 (3d ed.).

---

16  The Department proposed, as part of its 2015 revision to the Part 83 regulations, to modify the re-petitioning rule that was promulgated as part of the 1994 revision.  The proposed rule change would have allowed re-petitioning in limited circumstances.  80 Fed. Reg. at 37875.  Following a review of comments received on the proposed rule, the Department decided to leave the re-petitioning rule basically unchanged.  *Id.*

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 13
(Case No. C17-5668-RBL)

1    In summary, the Department has broad authority over Indian matters, including determining

2    which groups should be federally recognized.  The Department is entitled to deference in its

3    determination that permitting re-petitioning is contrary to the goals of the Part 83 process.  Thus, the

4    Court should find that the Department's decision to promulgate 25 C.F.R. § 83.4(d) (2015) was

5    within and consistent with its delegated authority, because the interests of conserving resources and

6    minimizing the possibility of inconsistent decisions are consistent with the purposes of the Part 83

7    process.

8    III.    THE REGULATION DOES NOT VIOLATE PLAINTIFFS' FIFTH AMENDMENT
9            RIGHT TO PROCEDURAL DUE PROCESS

10   Plaintiffs' amended complaint asserts that 25 C.F.R. § 83.4(d) violates their Fifth

11   Amendment right to procedural due process.  Dkt. 24, ¶ 174.  This claim is meritless.  The Fifth

12   Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due

13   process of law."  The amendment guarantees that meaningful process at a meaningful time must

14   accompany the deprivation of any of these interests.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

15   (internal citations omitted).

16   Thus, the threshold question under the Due Process clause is whether a person was deprived

17   of any cognizable interest, because, "*no* process is due if one is not deprived of 'life, liberty, or

18   property.'"  *Kerry v. Din*, ___ U.S. ___, 135 S.Ct. 2128, 2132, 192 L.Ed.2d 183 (2015) (Scalia, J.,

19   plurality opinion) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)) (emphasis in original); *and*

20   *see Wright v. Riveland,* 219 F.3d 905, 913 (9th Cir. 2000).  Moreover, even if a plaintiff has a life,

21   liberty, or property interest that is protected by the Due Process Clause, he or she must prove a

22   *deprivation* of that interest for a due process violation to occur.  *Association New Jersey Rifle &*

23   *Pistol Clubs v. Governor of New Jersey*, 707 F.3d 238, 241 (3rd Cir. 2013).

24   *i. The regulation does not affect plaintiffs' life, liberty or property interests.*

25   Plaintiffs' amended complaint fails to identify any deprivation of life, liberty or property as a

26   consequence of 25 C.F.R. § 83.4(d) (2015).  Rather, plaintiffs apparently assume that their desire to

27   be recognized as an Indian Tribe amounts to a property interest that is protected by the Fifth

28

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 14
(Case No. C17-5668-RBL)

Amendment.  From that flawed premise, plaintiffs' claim appears to rest on the further assumption that a regulation foreclosing the possibility of acknowledgment on a second try amounts to a deprivation of that interest under the Fifth Amendment.  Neither assumption is correct.

### (a)  There is no property interest in Tribal Acknowledgment

First, an interest in being acknowledged as an Indian Tribe does not constitute a deprivation of property that can support a due process claim.  Due process "is a safeguard of the security of interests that a person has already acquired in specific benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (emphasis added).  Thus, "applicants for benefits, as distinct from those already receiving them, [do not] have a legitimate claim of entitlement protected by the Due Process Clause."  *Lyng v. Payne*, 476 U.S. 926, 942 (1986); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 219 (D.C. Cir. 2013); *cf. Greene v. Babbitt*, 64 F.3d 1266, 1273 (9th Cir. 1995) ("There is a difference 'between losing what one has and not getting what one wants.'") (quoting Henry J. Friendly, "*Some Kind of Hearing*," 123 U.Pa.L.Rev. 1267, 1296 (1965)).  Plaintiffs' interest in petitioning, or re-petitioning, for acknowledgment cannot support a due process claim, because they seek to acquire something they do not have rather than to retain something they already possess.

### (b)  CIN has conclusively been determined to have no entitlement to acknowledgment

More to the point, CIN was conclusively determined by the Department in 2002 not to exist as an Indian tribe within the meaning of federal law and not to be entitled to acknowledgment.  67 Fed. Reg. 46204 (July 12, 2002).  That determination is entitled to a legal presumption of regularity, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), and any contention that CIN did not receive all the process it was due at that time was forfeited when CIN failed to seek judicial review of its legality, *see Thibodeaux by Thibodeaux v. Bowen*, 819 F.2d 76, 81 (5th Cir. 1987), *and see, Elgin, J. & E. Ry. Co. v. Benj. Harris & Co.*, 245 F. Supp. 467, 474 (N.D. Ill. 1965).  Thus, even if a legitimate claim to acknowledgment could somehow be characterized as a cognizable property interest for purposes of the Due Process Clause, CIN has already been finally and conclusively determined to lack any legitimate claim to acknowledgment.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 15
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*(c)  Plaintiffs do not have a property interest under 25 U.S.C. § 5302(b).*

Finally, the due process allegations in plaintiffs' amended complaint allude to Section 3 of the "Indian Self-Determination and Education Assistance Act" as amended, 25 U.S.C. § 5302(b), as supporting their due process claim.[17]  Dkt. 24, ¶¶ 174-176.  That section declares, as a statement of Congressional policy, a commitment to "supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities."[18]  However, even if this general statement of Congressional policy could somehow be construed to create a cognizable due process interest in anyone, that interest does not inure to the benefit of plaintiffs.  By virtue of the Department's denial of CIN's petition in 2002, CIN is not an "Indian Tribe" within the contemplation of the statute. 25 U.S.C. § 5304(e).[19]  Moreover, it is evident that this statutory subsection merely constitutes a recital of Congressional policy that does not confer on plaintiffs any right the deprivation of which is enforceable under the due process clause.

*ii. Plaintiffs' abstract need or desire for acknowledgement is not sufficient.*

Plaintiffs cannot base a due process claim on an alleged deprivation of an interest, *i.e.,* a right to acknowledgment that they neither own nor possess.  Plaintiffs' abstract need or desire for acknowledgment, no matter how fervent, is not sufficient for purposes of the Due Process Clause.

---

17  "Indian Self–Determination and Education Assistance Act Amendments of 1988," Section 102, PL 100–472 (HR 1223), PL 100–472, October 5, 1988, 102 Stat 2285.

18  25 U.S.C. § 5302(b) provides:

> The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services.  *In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities. (*Emphasis added.)

19  25 U.S.C. § 5304(e) defines the term "Indian tribe" to mean:

> any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688), *which is recognized* as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.  (Emphasis added.)

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 16 (Case No. C17-5668-RBL)

*See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.");

*Merritt v. Mackey*, 827 F.2d 1368, 1370-1371 (9th Cir. 1987).  Following the Department's final and binding determination in 2002 that CIN is not entitled to acknowledgment as an Indian Tribe, it simply cannot be said that CIN has "a legitimate claim of entitlement" to acknowledgment.

   *iii. The promulgation of the regulation in 2015 deprived plaintiffs of nothing.*

   Plaintiffs also cannot claim that 25 C.F.R. § 83.4(d) (2015), insofar as it predetermines the outcome of a second petition for acknowledgment, deprives them of a cognizable "right to petition" under the Due Process Clause.[20]  At the time of the 2002 denial of CIN's petition for acknowledgment, the predecessor of the regulation they are challenging had already been in place for approximately eight years.  In other words, at the time CIN's first petition was denied, no right to re-petition existed under the Part 83 regulations.  Thus, the simple recodification of the re-petition rule in 2015 did not deprive plaintiffs of anything that they had before.

   *iv. Plaintiffs already received all the process that was due.*

   As noted before, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Matthews*, 424 U.S. at 333 (internal quotation omitted).  The proceedings that resulted in a determination on CIN's original petition for acknowledgment satisfied any obligation the Government had to plaintiffs under the Due Process Clause.  As noted above, CIN forfeited its opportunity to claim otherwise by failing to obtain judicial review of the Department's decision when that option was still available.

---

20  Plaintiffs' right to petition the government (or, in this case, re-petition the government) is defined by the right itself, as set forth in the First Amendment.  The specific protection conferred upon plaintiffs by the First Amendment may not be enlarged or improved upon simply by recharacterizing their right to petition claim as a Fifth Amendment due process violation.  *See Graham v. Connor*, 490 U.S. 386, 394-395 (1989) (claims of excessive use of force should be analyzed under the Fourth Amendment's reasonableness standard, rather than the Fourteenth Amendment's substantive due process test because the Fourth Amendment was the more "explicit textual source of constitutional protection" as compared to the "more generalized notion of 'substantive due process.'"); *Welch v. Paicos*, 66 F. Supp. 2d 138, 165 (D. Mass. 1999) (right to petition claim must be analyzed as such, and not under the Due Process Clause); *compare Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.").  Plaintiffs' allegation that 25 C.F.R. § 83.4(d) (2015) infringes upon their First Amendment right to petition is addressed in Section V of this argument, *infra*.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 17
(Case No. C17-5668-RBL)

Plaintiffs' rights under the Due Process Clause do *not* include a guarantee that they be afforded the proverbial "second bite of the apple" after having been given one full and fair hearing, including the right to judicial review of that hearing, as was the case here. *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1174 (9th Cir. 2001); *see also Akshar Glob. Investments Corp. v. City of Los Angeles*, 2019 WL 1581391, at *5 (C.D. Cal. 2019) ("Due process requires only notice and a single opportunity to be heard."); *and see Goldberg v. Kelly,* 397 U.S. 254, 267 n.14 (1970) ("Due process does not, of course, require two hearings.").  "So long as one hearing will provide the affected individual with a meaningful opportunity to be heard, due process does not require two hearings on the same issue." *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007).  Thus, having already afforded CIN all the process that it was due, the Due Process Clause does not include a constitutional requirement that the Department afford plaintiffs an opportunity to start the Part 83 process all over again.

For all of the reasons set forth above, 25 C.F.R. § 83.4(d) (2015) does not violate plaintiffs' Fifth Amendment right to procedural due process.

## IV.   THE REGULATION DOES NOT VIOLATE PLAINTIFFS' FIFTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAW

Plaintiffs' amended complaint alleges that 25 C.F.R. § 83.4(d) (2015) violates their Fifth Amendment right to equal protection of the law.[21]  In essence, their complaint alleges that the regulation creates two categories: (1) petitioners, such as plaintiffs, who unsuccessfully sought recognition before the 2015 amendments and who are now precluded by 25 C.F.R. § 83.4(d) from being acknowledged under the supposedly less stringent acknowledgment standards ushered in by the 2015 amendments; and (2) petitioners who sought recognition after the 2015 amendments and who will have their petitions evaluated under the 2015 acknowledgment standards.  Dkt. # 24, ¶¶ 182-183.  Thus, according to plaintiffs' amended complaint, 25 C.F.R. § 83.4(d) unlawfully

---

[21]  The Fourteenth Amendment's Equal Protection Clause applies to the federal government through the Fifth Amendment's Due Process Clause.  *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999), *citing, Bolling v. Sharpe*, 347 U.S. 497 (1954).

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 18
(Case No. C17-5668-RBL)

discriminates against those petitioners who unsuccessfully sought acknowledgment prior to the 2015 amendments.  *Id.* at ¶ 185.

Plaintiffs' claim relies on two demonstrably false premises.  First, contrary to the allegations of their complaint, the limitation presently codified in 25 C.F.R. § 83.4(d) (2015) is not new, but was first promulgated as part of the 1994 amendments to the Part 83 regulations, and was formerly codified as 25 C.F.R. § 83.3(f) (1994).  *See* 59 Fed. Reg. 9280, 9294 (February 25, 1994).[22]  Thus, the promulgation of 25 C.F.R. § 83.4(d) (2015) resulted in no different treatment for parties whose petitions were evaluated under the acknowledgment regulations as they existed after the 1994 amendments, such as plaintiffs, as compared to parties who sought recognition under the acknowledgment regulations as amended in 2015.  Because 25 C.F.R. § 83.4(d) (2015) is materially identical to 25 C.F.R. § 83.3(f) (1994), the promulgation of 25 C.F.R. § 83.4(d) in 2015 created no new and different classification that is amenable to analysis under the Equal Protection Clause.  As applied here, plaintiffs' petition was denied under both the original acknowledgment regulations and the acknowledgment regulations as amended in 1994.  Dkt # 33-7 at p. 63.  Thus, 25 C.F.R. § 83.4(d) ushered in no new classification in 2015 that can serve as the basis for plaintiffs' equal protection challenge.

The second false premise asserted by plaintiffs is that it is substantively easier to obtain recognition under the Part 83 regulations as amended in 2015 than under the Part 83 regulations as amended in 1994.  As noted, not only is that not true, *see supra*, p. 3, *l.* 24 - p. 4, *l.* 14, but plaintiffs' petition would fail under either version of Part 83 because the criteria under which plaintiffs' petition failed in 2002 were not changed by the 2015 amendments.[23]

---

22  25 C.F.R. § 83.3(f) (1994), provided as follows:

(f) Finally, groups that previously petitioned and were denied Federal acknowledgment under these regulations or under previous regulations in part 83 of this title, may not be acknowledged under these regulations.  This includes reorganized or reconstituted petitioners previously denied, or splinter groups, spin-offs, or component groups of any type that were once part of petitioners previously denied.

23  Plaintiffs' contention that the Department has ever officially "acknowledged" or in any way conceded the truth of criticisms leveled against the Part 83 process by third parties prior to the promulgation of the 2015 amendments, *see* dkt. # 24, ¶ 182, is false.  Moreover, such criticisms are significant only if they concern flaws that have constitutional or legal dimensions.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 19
(Case No. C17-5668-RBL)

In any event, even if plaintiffs *could* demonstrate that the 2015 amendments created a classification whereby petitioners seeking acknowledgment under the Part 83 regulations after 2015 would have an easier road then petitioners applying for acknowledgment under the Part 83 regulations before 2015, their claim still would not survive equal protection analysis.  The Supreme Court has held that the Equal Protection Clause does not "forbid statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time." *Califano v. Webster*, 430 U.S. 313, 321 (1977) (*quoting Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911)).  This rule applies with no less force in regards to an administrative regulation.  *See  Cont'l Coal, Inc. v. Cunningham*, 553 F. Supp. 2d 1273, 1282 (D. Kan. 2008) (The Equal Protection Clause was not violated by a regulation that required plaintiff to obtain a conditional use permit but that did not require defendant to obtain such a permit where the defendant's use preexisted the promulgation of zoning regulations).

Thus, as to any new classification created by the 2015 amendments to the Part 83 regulations, analysis proceeds along traditional lines.  Notably, plaintiffs do not allege any classification involving fundamental rights or suspect categories.  "[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (second alteration in original) (internal quotation marks omitted).  A law that is subject to rational basis review is:

> constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.  And it falls within the scope of our precedents holding that there is such a plausible reason if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Id*. (citation and internal quotation marks omitted).

To prevail on their equal protection claim, plaintiffs must "negative every conceivable basis which might support" the Part 83 regulatory scheme they challenge. *See id*.  To avoid summary judgment on their claim, plaintiffs are required to "produce evidence sufficient to permit a

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 20
(Case No. C17-5668-RBL)

reasonable trier of fact to find by a preponderance of the evidence that the challenged action" lacks a rational basis. *Cf. Jones v. Williams*, 791 F.3d 1023, 1037 (9th Cir. 2015) (equal protection claim based on alleged racial discrimination (brackets and internal quotation marks omitted)).  Thus, the inquiry is not whether the challenged action "actually further[ed] a legitimate interest; it is enough that the governing body 'could have rationally decided that' the action would further that interest." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010) (*quoting Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981)).

The final rule notice itself evidences that the decision to retain the rule formerly codified in 1994, and recodified in 2015, was rationally based and rests upon a legitimate purpose.  After summarizing the comments for and against a change in the rule to allow limited re-petitioning, the Department, in deciding to retain the rule unchanged, stated:

> The final rule promotes consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner.  The Department has petitions pending that have never been reviewed.  Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular.

80 FR at 37875.  Assuming for purposes of argument that petitioners seeking recognition under the 2015 Part 83 amendments would have an easier time of obtaining acknowledgment than did CIN, that fact would be of no moment for purposes of analysis under the Equal Protection Clause given this obviously legitimate purpose.  As noted above, the Equal Protection Clause "does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." *Sonnier v. Quarterman*, 476 F.3d 349, 369 (5ᵗʰ Cir. 2007) (internal quotation omitted).

V.   THE REGULATION DOES NOT VIOLATE PLAINTIFFS' FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCES

Finally, plaintiffs' amended complaint alleges that 25 C.F.R. § 83.4(d) violates their constitutional right to petition the Government for a redress of grievances.[24]  In essence, plaintiffs'

---

24  U.S. Const. amend. I provides, in pertinent part:

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 21
(Case No. C17-5668-RBL)

claim is that the Government may not constitutionally preclude them from petitioning for recognition as many times as they choose.  Be that as it may, plaintiffs' constitutional right to petition the Government is not violated by 25 C.F.R. § 83.4(d).

The constitutional right to petition extends to all departments of the Government, including not only administrative agencies of the Executive Branch, but also the Courts.  *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  Thus, the Constitution protects one's right to petition the Government in whatever form, whether that be the act of filing a civil complaint, writing a complaining letter to elected representatives, or requesting that some action be taken by an administrative agency.  *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.").  On the other hand, the right to petition does not constitutionally guarantee a response from the Government.  *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."); *We the People Found., Inc. v. United States*, 485  F.3d 140, 143 (D.C. Cir. 2007).

In the judicial context, the First Amendment guarantees an individual the right to file a civil complaint.  *See Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts[.]").  That right, however, is not absolute.  *See U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F.Supp. 867, 872 (D.D.C. 1986) ("While the right to petition Government is among the most precious of the liberties safeguarded by the Bill of Rights, we recognize that this right, like many rights, is not absolute but can be subject to reasonable limitations.").  Thus, while the constitutional right to petition may guarantee a putative litigant the right to file a lawsuit, "it does not displace claim preclusion or other procedural bars" once the case is filed.  *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 768 (6th Cir. 2015); *and see United States v.*

---

Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 22
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*Vital Health Prod., Ltd.*, 786 F. Supp. 761, 779 (E.D. Wis. 1992), *aff'd sub nom.*, *United States v. LeBeau*, 985 F.2d 563 (7th Cir. 1993) ("Mr. LeBeau may petition the government for any redress of grievances to his heart's content.  However, this does not preclude the government from moving to dismiss any groundless causes of action he may present.").

The regulation challenged by plaintiffs passes constitutional muster under these authorities.  CIN has unsuccessfully petitioned the Department for acknowledgment once, and nothing on the face of the regulation prevents plaintiffs from petitioning again.  The regulation provides only that "[t]he Department will not acknowledge" a petitioner that was previously unsuccessful in a prior petition for acknowledgment.  25 C.F.R. § 83.4(d).  Thus, the question raised by plaintiffs' claim is whether, notwithstanding 25 C.F.R. § 83.4(d), the Constitution entitles plaintiffs to repeated *de novo* determinations on the merits, and the possibility of a different outcome on every new attempt.  The answer is in the negative.

First, a party who has been afforded the opportunity to present his or her case at an administrative hearing and then appeal the decision of the administrative agency to a court, as was true of plaintiffs in this case, has not been deprived of the right to petition the government and of access to the courts.  *See Ruiz Rivera v. Holder*, 666 F.Supp.2d 82, 95 n.11 (D.D.C.2009), *aff'd sub nom.*, *Rivera v. Holder*, No. 10-5054, 2010 WL 2899009 (D.C. Cir. July 22, 2010)).  Second, as in the judicial context, the right to petition the Government is not offended by the doctrine of claim preclusion or other procedural bars.  *Wheeler*, 807 F.3d at 768; *and see City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397-398 (2d Cir. 2008) (the right to petition is not violated by a statute that provides a complete defense to a cause of action or curtails a category of cause of action).

CIN was afforded a full and fair opportunity to demonstrate under applicable standards that it was entitled to acknowledgment by the Department.  CIN was unsuccessful in that effort following a lengthy administrative process.  Although CIN was entitled to seek judicial review of the Department's decision, it chose not to do so, for whatever reason.  Like the doctrine of claim preclusion, 25 C.F.R. § 83.4(d) forecloses the possibility that successive efforts by a petitioner will yield a different outcome.  Such a provision does not violate the plaintiffs' constitutional right to

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 23
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

petition the Government for a redress of grievances.  Neither the Constitution, nor the Part 83 regulations, require the Department to respond to a second time.  Having already unsuccessfully petitioned the Department, plaintiffs' path forward for obtaining acknowledgment as a federally recognized Indian tribe is through a petition addressed to Congress rather than by a second petition addressed to the Department.

CONCLUSION

For the foregoing reasons, defendants David Bernhardt, the U.S. Department of the Interior, and Tara Katuk Mac Lean Sweeney, respectfully request that their motion be granted and the Court enter an order granting them partial summary judgment on the second through fifth claims for relief of plaintiffs Amended Complaint herein.

DATED this 12th day of September 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: brian.kipnis@usdoj.gov

Attorneys for Defendants

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 24
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States

Attorney for the Western District of Washington and is a person of such age and discretion as to be

competent to serve papers;

It is further certified that on September 12, 2019, I electronically filed the foregoing

documents with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following CM/ECF participant(s):

James S. Coon      jcoon@tcnf.legal

Thane Walker Tienson      ttienson@landye-bennett.com

Confederated Lower Chinook Tribes and Bands      ttienson@landye-bennett.com

Craig J. Dorsay      craig@dorsayindianlaw.com

I further certify that on September 12, 2019, I mailed by United States Postal Service the

Notice of Appearance to the following non-CM/ECF participant(s)/CM/ECF participant(s),

addressed as follows:

-0-

DATED this 12th day of September, 2019.

 s/ Crissy Leininger
CRISSY LEININGER
Paralegal Specialist
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Email:  christine.leininger@usdoj.gov

NOTICE OF MOTION AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIMS II-V OF THE AMENDED COMPLAINT, etc. - 25
(Case No. C17-5668-RBL)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970