THE HON. RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

**CHINOOK INDIAN NATION**, an Indian Tribe and as successor-in-interest to The Lower Band of Chinook Indians; **ANTHONY A. JOHNSON**, individually and in his capacity as Chairman of the Chinook Indian Nation; and **CONFEDERATED LOWER CHINOOK TRIBES AND BANDS**, a Washington nonprofit corporation,

Plaintiffs,

v.

**DAVID BERNHARDT**, in his capacity as Secretary of the U.S. Department of Interior; **U.S. DEPARTMENT OF INTERIOR**; **BUREAU OF INDIAN AFFAIRS, OFFICE OF FEDERAL ACKNOWLEDGMENT**; **UNITED STATES OF AMERICA**; and **TARA KATUK MAC LEAN SWEENEY**, in her capacity as Acting Assistant Secretary – Indian Affairs,

Defendants.

Case No. 3:17-05668-RBL

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

***(Note on Motion Calendar for: December 13, 2019)***

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 1
Case No. 3:17-05668-RBL

43L9836/ 15744-001

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Ave., Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

## INTRODUCTION

Plaintiffs Chinook Indian Nation, et al ("CIN" or "Chinook") brought claims against the Defendants seeking judicial recognition as a federally acknowledged tribe (Claim I), challenging regulations promulgated by the Defendant Department of Interior (DOI) in 2015 that forever prohibit the CIN and other un-recognized tribes that were once denied recognition from re-petitioning the federal government for official tribal acknowledgment (Claims II-V) and challenging the Defendants revocation of Trust Funds previously awarded to the Chinook (Claims VI-VIII).  Defendants thereafter filed a Motion to Dismiss All Claims. The Court dismissed Claim I, but denied Defendants' request to dismiss all other claims (see Order on Motion to Dismiss Dkt. 45).

Pursuant to Fed.R.Civ.P. 56, Plaintiffs move the Court for summary judgment to be entered in their favor on Claims II through V of their First Amended Complaint; i.e. the so-called "Re-Petitioning Claims."  Defendants recently moved for summary judgment regarding the re-petitioning claims.   Plaintiffs' response and opposition memorandum to the Defendants' motion was characterized in part as a "cross-motion for summary judgment."  In their Reply memo, Defendants objected to the cross-motion contending that it did not comply with applicable procedural rules.  Accordingly, to avoid any procedural objections, Plaintiffs now formally file a cross-motion for summary judgment on their re-petitioning claims, Claims II-V.  To avoid needless repetition, this motion incorporates and relies upon the arguments Plaintiffs made earlier in conjunction with the response memorandum they filed on October 21, 2019. (Dkt. 97).

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V

#### Additional Relevant Background Facts:

Plaintiffs' re-petitioning claims pertain to the Defendants 2015 "overhaul" of its federal acknowledgment regulations (25 CFR 83).  DOI's Draft Rule which was also published

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1   in the Federal Register is found at AR0005676-5688.  *See also* 79 Fed. Reg. 35129 et. seq.

2   (June 19, 2014).  The Draft Rule included the re-petitioning provision and an explanation as

3   to how the re-petitioning provision would work procedurally can be found in § 4.1060-1063,

4   AR0005688.

5   Plaintiffs' first re-petitioning claim (Claim II) alleges violation of the Administrative

6   Procedures Act (APA) and is based upon the Administrative Record (AR) surrounding the

7   2015 regulatory changes to the tribal federal acknowledgment process, both as initially

8   proposed and as finally adopted.  The Defendants supplemented the AR with numerous

9   additional documents subsequent to the filing of their own Motion for Summary Judgment.

10  Plaintiffs' Memorandum in Opposition to Defendants' Motion included a Declaration from

11  Plaintiffs' counsel, Thane Tienson, that attached several of the additional documents that

12  were provided by Defendants' counsel to become part of the AR, but that had not yet been

13  formally enumerated as part of the revised AR.  Subsequent to the filing of Defendants' Reply

14  (Dkt. 99), Defendants formally supplemented the AR (Dkt. 100) and this motion relies in part

15  upon those supplemental documents.  Plaintiffs submit, however, that the incomplete status

16  of the AR during briefing militates in favor of Plaintiffs' request for oral argument concerning

17  the motions.

18  Within the AR are numerous transcripts of tribal consultations that were performed

19  in conjunction with the draft federal acknowledgment regulations in various parts of the

20  country.  *See e.g.* AR000147-162, 243-253, 324-333, 349-361, 406-422, 5146-5162.  The

21  transcripts reflect that Deputy Assistant Secretary for Indian Affairs Larry Roberts or

22  Assistant Secretary Elizabeth Appel presided over the consultations and routinely began

23  them by saying the following or something very similar: [1]

24

25

26  [1] Their preliminary remarks were always similar and included informing attendees that there would be a
    PowerPoint presentation of about 20 minutes and that everyone should also have handout materials.  *See,e.g.,*

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1   "We're here to talk about the Part 83 process that was the Federal
2   Acknowledgment process that was [first] promulgated in 1978.

3   So very briefly there are three ways in which a tribe can be federally
    recognized.  One is through judicial court order, one is through federal
4   legislation, and the last is administratively by the Department of the Interior.

5   And of the 566 federally-recognized tribes today, 17 have been recognized
    through the federal acknowledgment Part 83 process.  The other 549 tribes
6   have been acknowledged in a different form . . . "essentially . . . have not gone
7   through the Part 83 process."

8   How did we get to this point?  We have heard as an Administration from a
9   number of folks and the public and elsewhere that the process is broken, that
    it takes too long, that it costs too much, that it is too subjective, that the results
    are unpredictable, and that it is not transparent.  And in issuing this Discussion
10  Draft and looking at issuing a rulemaking here we are trying to address some
    of those concerns, that we have heard from the public about the process being
11  broken."  AR000242-244.

12      The Re-petitioning provision of the Proposed Rule was a central feature of it.  Indeed,

13  the Draft Rule was captioned "Hearing and Re-Petition Authorization Processes concerning

14  Acknowledgment of American Indian Tribes."  AR0005677.  There was also an express

15  recognition by DOI in its Power Point presentation made in conjunction with its tribal

16  consultations regarding the proposed new Rules that the reason for including a re-

17  petitioning provision was to meet the Goals of "transparency" and 'integrity'. AR 0005524,

18  6395, 6455 and 7924.  The goal of "integrity" was served because the re-petitioning

19  provision gave those tribes that had been denied acknowledgment under the previous

20  "broken" "inconsistent" and "unpredictable" processes the opportunity to take advantage of

21  the newer, less stringent rules governing acknowledgment.  *See e.g.* AR0005618-19.

22      Consequently, the agency's preliminary oral remarks at these tribal consultations also

23  always included a reference to the re-petitioning provision.  *See e.g.* AR000251-252;

24  0000359:

25
26  ───────────────────────────

AR0005004.  The PowerPoint slides can be found at AR 0005507-5527, 6378-98, 6438-58, and 7968-77. all
included remarks about the re-petitioning provision.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 4
Case No. 3:17-05668-RBL

"And then what we've provided is an opportunity for those, you know we have heard that the process is broken.  That's a viewpoint that a lot of people have expressed.

**And so** as part of the Discussion Draft we have included a narrow opportunity for a petitioner who has been denied federal acknowledgment under the previous regulations, that they could re-petition if they prove by a preponderance of evidence to either the Assistant Secretary or the Office Hearings Appeals, whoever would be the decisionmaker there, that they could re-petition if a change in the new version of the regulations warrants reversal of their final determination.  And then if that was provided by a preponderance of the evidence, then they could re-petition." (emphasis supplied).

The words "And so" make express what is implicit: the reason for including the re-petitioning provision in the Draft Rule was simple fairness - - to give those tribes disadvantaged by the previous "inconsistent," "unpredictable," "broken" processes an opportunity to obtain recognition if they could show that the changes in the acknowledgment rules would lead to a positive decision and to thereby at least attempt to inject some amount of justice, integrity and equity into the tribal recognition process.  In that regard, the text of the re-petitioning provision in the rule required a preliminary evidentiary showing by the previously unsuccessful petitioner to prove either:

(1) A change from the previous version of the regulations to the current version of the regulations warrants reconsideration of the final determination; or

(2) The 'reasonable likelihood' standard was misapplied in the [earlier] final denial." §4-1063, AR0005688.[2]

There is thus a clear linkage between the proposed changes in the acknowledgment criteria and the inclusion of a re-petitioning provision.

In July 2002, following the issuance of a January 2001 Final Determination

---

[2] The proposed rule, however, would not require petitioners to resubmit evidence, but would allow the petitioner to submit supplemental evidence.  *See* § 4.106(b)(b) of the Draft Rule.  AR0005688.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 5
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1   acknowledging the Chinook[3], the Defendant Bureau of Indian Affairs (BIA) Office of Federal

2   Acknowledgment (OFA) issued its "Reconsideration on Referral by the Secretary and

3   "Summary Under Criteria and Evidence for the Reconsidered Final Determination Against,

4   Federal Acknowledgment of the Chinook Indian Tribe/Chinook Nation (formerly: Chinook

5   Indian Tribe Inc.)[4]."  *See also* Defendants' Answer ¶ 14, 15.  Accordingly, the Chinook would

6   have been categorized as an "unsuccessful petitioner" as that term was used in the proposed

7   rule and have been subject to the re-petitioning provision.  (*See* "Repetition Authorization

8   Process" §4.1060 *et. seq.*; AR0005688.)  They should have succeeded according to former

9   Assistant Secretary for Indian Affairs Kevin Gover, *see* AR0007962.

10          Unsurprisingly, the re-petitioning provision proved to be controversial during the

11   notice and comment period.  This was also true of the so-called "third party veto" provision

12   included within it, whereby any previously denied tribe would have to obtain consent from

13   any tribe that had previously participated as a party in an administrative reconsideration or

14   Federal court appeal to be eligible for formal acknowledgment.  Legal scholars, members of

15   the Chinook and many others objected to that third party provision.  *See e.g.* AR0001206,

16   1207, 3910-3912, 5163-5168, 5169, 5173, 5176, 1893-1896.  Predictably many tribes that

17   were already recognized objected to any re-petitioning, fearing competition from a newly

18   recognized nearby tribe for casino revenue or, in the case of the Quinault Indian Nation,

19   concerned about maintaining control of valuable land allotments (AR000550-558, 1206,

20   1207, 5163-5175).

21          Similarly, states like Connecticut that were concerned about upsetting their

22   established revenue-sharing agreements with existing acknowledged tribes regarding

23   casino revenue also objected to re-petitioning and supported the third party veto provision.

24

25   _____

[3] 66 Fed. Reg. 1690 (Jan. 9, 2001).

26   [4] 67 Fed. Reg. 46204 (July 12, 2002).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 6
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1    AR0005691.  The clear majority of comments, however, were very supportive of the re-

2    petitioning provision because of the obvious fairness and equity of including such a provision

3    in the face of a comprehensive change to the acknowledgment process.  This was especially

4    true of Indian law scholars, but they objected to the inclusion of the third party veto

5    provision, also for reasons of fairness, and pointed out that due process concerns could easily

6    be satisfied by simply giving interested third parties, like the Quinault in the case of the

7    Chinook, notice of any re-petitioning application and an opportunity to be heard without

8    conferring party status, let alone veto power on such entities.  *See* the collection of comments

9    regarding the Re-petition set forth at AR000600-647, *e.g.* AR0006640, p. 62 comment [A112]

10   *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

11       Plaintiffs urge the Court to pay special attention to the September 20, 2014 comments

12   of the Indian professors and scholars of American Indian law and policy.  They appear at

13   AR1878-1899.  The first signator is Robert Anderson, the Director of the Native American

14   Law Center at the University of Washington School of Law and a recognized authority on

15   Indian law.  As that letter notes, "[t]he current process is broken and has proven to be

16   inconsistent, time-consuming and inefficient.  Revising the recognition process is an

17   important step to ensure that the rights of all tribes indigenous to the Unites States are

18   respected.  The process must be reformed to promote equity and integrity."  AR0001878.

19       Continuing, the professors and scholars also remarked upon the importance of the

20   inclusion of the newly clarified "reasonable likelihood" evidentiary standard to apply to the

21   acknowledgment criteria, emphasizing that it is a lesser standard than a preponderance of

22   the evidence, but that the standard had hardened over the years leading to inconsistent

23   results in the acknowledgment process:[5]

24       "Inconsistent application of the reasonable likelihood standard puts an

25   _____

26   [5] *See also Boyde v. California*, 494 U.S. 370, 380 (1990); Lorinda Riley, *Shifting Foundation: The Problem With Inconsistent Implementation of Federal Recognition Regulations*, 37 N.Y.U. Rev. L. & Soc. Change 629, 639 (2013).

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

incredible burden on tribes. Over time, the Department's interpretation of the reasonable likelihood standard has resulted in the need for increased certainty and voluminous evidence and more conclusive analysis by the Department. An illustration of this is comparing the experiences of two Louisiana tribes who submitted petitions. In 1978, the Tunica-Biloxi Tribe filed a petition 78 pages long. The Tribe received federal recognition three years later in 1981. The United Houma Nation applied for federal recognition in 1979. By the time the United Houma Nation's petition was evaluated, it had submitted more than 19,100 pages of evidence. The BIA issued a proposed finding against the Nation in 1994. AR0001880.

The professors and scholars fully supported the provision for re-petitioning for previously denied tribes, but urged eliminating its third party veto provision: "This requirement unfairly burdens a small number of tribes and could potentially be used as a sword by third parties against future petitioners. Furthermore, the third party veto unfairly deprives tribes of the benefits of the more rational revised criteria, and this is improper." AR0001893-94.

They (as did Plaintiffs in their Opposition Memorandum, *see* p. 20) also questioned the applicability of collateral estoppel and *res judicata* to those past acknowledgment decisions after revised and less stringent regulatory standards have been adopted. They cited several reported decisions refusing to grant preclusion under similar circumstances, pointing out that whether acknowledgment decisions are indeed "adjudicative" is also unsettled. *See also, Northwest Sea Farms v. U.S. Army Corp of Engineers*, 931 F. Supp. 1515, 1522-23 (D. Wa., 1996); Concerns similar to those of the professors and scholars about the need for clarification of the reasonable likelihood standard were voiced by the Arizona State University College of Law Indian Legal Clinic. *See* AR0009144-9145.

In his testimony before the subcommittee on Indian and Alaska Native Affairs in the House of Representatives in the hearing on the federal acknowledgment process on April 22, 2015, then Assistant Secretary for Indian Affairs Kevin Washburn repeated comments of other Congressional Representatives and officials criticizing those processes. He began his testimony by quoting Chairman Donald Young (R. AK), "I think we can all agree that reforms

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 8
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1    to expedite the process and to upgrade fairness, consistency and transparency are

2    warranted." "The process is broken" (Congressman Dale Kildee); "the process is broken"

3    (Senator John Tester); "it is quite clear the process for acknowledgment is broken" (Senator

4    Byron Dorgan).   https://www.doi.gov/ocl/hearings/114/tribalrecognition_042215.

5          Tellingly, this characterization of the former acknowledgment process as "broken"

6    was made a headline of an official U.S. Department of Interior Indian Affairs press release

7    regarding the proposed 2015 overhaul of federal acknowledgment regulations.  "Proposed

8    rule would address 'broken' process AR0005528.  *See also* AR0009508 ("the new regulation

9    updates a 37-year old process that has been roundly criticized as broken.").   The

10   characterization of the 1978 and 1994 acknowledgment process as "broken" was repeated

11   routinely by Deputy Assistant Secretary Roberts and Assistant Secretary Appel in all of the

12   tribal consultations they held regarding the draft revisions to the federal acknowledgment

13   regulations.  *See e.g.* AR0000243-251, 324, 351, 407, 5148.   In short, contrary to the

14   Defendants' contention that there was never an admission on the part of the Defendants that

15   the process was "broken" (*see* Defendants' Reply, p. 2), Plaintiffs submit that is demonstrably

16   untrue.

17         To remedy that broken process, as the DOI acknowledged it was doing, DOI proposed

18   a new rule that would attempt to address the multiple defects by adopting a ". . . proposed

19   rule that would comprehensibly revise 25 CFR Part 83 to improve the processing of petitions

20   for Federal Acknowledgment of Indian tribes. . . ." AR0005677.  In sum, all of the changes in

21   2015 proposed rule, including re-petitioning, were intentionally designed to remedy the

22   "inconsistent," "unpredictable," "expensive," "slow," and "cumbersome" process that had

23   been in place since a regulatory tribal acknowledgment process was first adopted in 1978.

24   *See, e.g.* AR0005528-29.

25   ///

26   ///

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 9
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**LEGAL ARGUMENT**

<u>Summary Judgment Standard</u>

Summary judgment is usually only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. But when a court is reviewing an administrative agency's decision, the standard set out in Rule 56 does not apply. *See Richards v. I.N.S.*, 554 F.2d 1173, 1177 (D.C. Cir. 1977). Courts review an agency's decision under the APA. *See Ramaprakash v. Fed. Aviation Admin.*, 346 F.3d 1121, 1124 (D.C. Cir. 2003).

When a party challenges agency action under the APA, "the district judge sits as an appellate tribunal" and the "entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001). A court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 705.  Agency action is arbitrary and capricious 'if the agency (1) relied on a factor that Congress did not intend it to consider; (2) entirely failed to consider an important factor or aspect of the problem; (3) failed to articulate a rational connection between the facts found and the conclusions made;  (4) offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise; or (5) made a clear error in judgment.'" *Cal. Energy Comm'n v. Dept. of* Energy, 585 F.3d 443, 1150-51 (9th Cir. 2009); Motor *Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In the context of claims arising under the APA, the scope of judicial review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  The administrative record is "not necessarily those documents that the agency has compiled and submitted as the administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citation omitted).  Rather, "'[t]he whole record' includes everything that was before

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1    the agency pertaining to the merits of the decision." *Portland Audubon Soc'y v. Endangered*

2    *Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (internal citation omitted).  "The 'whole'

3    administrative record, therefore, consists of all documents and materials directly or

4    indirectly considered by agency decision-makers and includes evidence contrary to the

5    agency's position."  *Thompson*, 885 F.3d at 555 (emphasis added).

6    <u>The DOI's Decision to Withdraw Its Proposed Rule Allowing Limited Re-Petitioning</u>

7    <u>was Arbitrary and Capricious</u>.

8    Plaintiffs incorporate all arguments they previously made in their Opposition Brief

9    *see* pp. 7-21.

10   The Defendants argue that several of the cases relied upon by Plaintiffs in their

11   Opposition Brief concern withdrawal of an informal policy, not rulemaking and are therefore

12   inapposite (Defendants' Reply Brief n. 14 pp. 6-7).  That is incorrect. The re-petitioning

13   provision was a draft legislative (as opposed to interpretive) rule.  A draft legislative rule is

14   a draft policy and both are "final agency actions" subject to APA review.  Perhaps the best

15   explanation of legislative rules, interpretive rules and policy statements and APA review is

16   to be found in a case earlier cited by Plaintiffs, *Animal Legal Defense Fund v. Veneman*, 469

17   F.3d 826 (9th Cir. 2006) at 838-44, *vacated on other grounds*, 490 F.3d 729 (9th Cir. (*en banc*)).

18   The court in *Animal Legal Defense Fund* was dealing with the withdrawal of what it said was

19   "best considered as a proposed interpretative rule", but what the agency had labeled as a

20   draft policy.  496 F.3d at 840.  The court then engaged in a lengthy analysis of agency actions

21   explaining that when a federal agency proposes to adopt a rule that, if adopted, would have

22   legal consequences attached to it, publishes the draft rule in the Federal Register and then

23   receives and reviews extensive public comments and thereafter decides to abandon the

24   proposed rule, it is a "final agency action" and it must provide a reasoned explanation for its

25   decision to not adopt that draft legislative rule.  496 F.3d at 843-44.  The proposed re-

26   petitioning rule at issue in the present case was a draft legislative rule with legal

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 11
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1  consequences.  The decision to abandon it after extensive notice and comment is absolutely

2  subject to APA review.

3      In support of its decision, the *Animal Legal Defense Fund* court cited several other

4  cases in which an agency changed a draft rule:  *NRDC v. SEC*, 606 F.2d 1031 (D.C. Cir. 1979);

5  *International Union, United Mine Workers of America v. United States Department of Labor*,

6  358 F.3d 40, 41-44 (D.C. Cir. 2004); *Professional Drivers Counsel v. Bureau of Motor Carrier*

7  *Safety*, 706 F.2d 1216 (D.C. Cir. 1983); *Center for Auto Safety v. National Highway Traffic*

8  *Safety Administration*, 710 F.2d 842 (D.C. Cir. 1983); *Defenders of Wildlife v. Norton*, 258 F.3d

9  1136 (9th Cir. 2001).  All support the contention that the decision not to adopt the draft rule

10  allowing limited re-petitioning was required to be accompanied by a reasoned explanation

11  as to why it was no longer necessary.  Otherwise, DOI's action is arbitrary and capricious in

12  violation of § 706(2) of the APA.  *Animal Defense Fund*, 496 F.3d at 843-44.

13      Of particular significance, as the *Animal Legal Defense Fund* court pointed out, was the

14  fact, that, as here, the draft rule was published in the Federal Register and was followed by a

15  period of public notice and comment.  That fact further enables judicial review by providing

16  courts with materials necessary to evaluate the rule and the agency's rationale for its

17  subsequent decision to withdraw it.  In sum, the Defendants' position that it need not justify

18  its decision to abandon its draft rule providing for re-petitioning is wholly without merit.

19      Defendants also assert that documents in the record suggest that "the media has

20  reported 70 or 80 additional groups in California alone that are seeking recognition or - -

21  "potentially hundreds of Indian groups which may desire acknowledgment from the federal

22  government as an Indian tribe. . . ." (Defs.' Reply Brief at p. 9).  However, at the present time,

23  as Plaintiffs stated in their Opposition Brief at p. 14, there are only three groups whose

24  pending petitions have not yet been resolved and, an additional 6 groups who "will become"

25  petitioners if and when they supplement their petitions.  *Id*. n. 4.  Further, as the

26  Departments' own officials and staff acknowledged in the AR, there is a difference between

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 12
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1   "potential petitioners" and "viable petitioners."  "Questionable how many viable petitioners

2   are out there."  AR000688 Comment [A76] p. 41 and AS-IA Washburn's comment "I'm

3   doubtful that many groups would deserve reconsideration under the proposed rule. . ."

4   (AR0006617 at 6622-23).

5         These comments by experienced BIA staff are telling.  Defendants knew well that very

6   few previously unsuccessful tribes would be deemed eligible for re-petitioning because of

7   the proposed re-petitioning rules' requirement that any previously denied tribe first make a

8   *prima facie* showing of eligibility for acknowledgment under the new rules before an

9   administrative law judge.  Then and only then would re-petitioning be allowed.  Coupled with

10  the third party veto provision, the additional administrative burden that the OFA would

11  experience as a consequence of allowing limited re-petitioning would have been slight.

12  Indeed, if limited re-petitioning would have placed such an enormous administrative burden

13  on the Department, then why did it propose it in the first place?  Plaintiffs submit that there

14  is no significant administrative burden that the Department would have experienced as a

15  result of allowing limited re-petitioning and, regardless, the Department made no showing

16  that there would be any such burden and it ignored altogether the consequence of not

17  allowing limited re-petitioning  on those tribes that had been previously denied because of

18  misapplication of the reasonable likelihood standard or because they were unable to take

19  advantage of the new less stringent rules under the 2015 overhaul.

20        The decision to eliminate the proposed rule allowing re-petitioning required DOI to

21  provide an accurate, reasoned, rational, and legally sound explanation for doing so.  It utterly

22  failed to do so.  The DOI's action is therefore arbitrary and capricious and violative of the

23  APA.

24        The Defendants' Decision to Prohibit Re-Petitioning is *Ultra Vires*

25        Plaintiffs incorporate by reference their prior argument concerning this issue at

26  pp. 9-12 of Plaintiff's Opposition Memorandum.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 13
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

The 2015 Final Rule includes a one-paragraph section titled "Legislative Authority" which listed the enabling statutes DOI was relying upon in promulgating the regulatory overhaul as 25 U.S.C. §§ 2, 9 and 43 U.S.C. § 1457.[6]  DOI asserts that these statutes provide the necessary authority to adopt a ban on re-petitioning by once-denied tribes even after the adoption of less stringent criteria to achieve acknowledgment.  DOI is wrong.  All three statutes confer broad general authority over supervision and management of Indian affairs. In 25 U.S.C. §2, Congress granted the Assistant Secretary - Indian Affairs the authority to 'have management of all Indian affairs and of all matters arising out of Indian relations.' §9 grants the President the authority to prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs or for the settlement of the accounts of Indian affairs.  43 U. S. C. § 1457 grants the Secretary of the Interior, broad authority, *inter alia,* over Indians.  However, all three laws long pre-date the initial adoption in 1978 of regulations regarding federal recognition of Indian tribes.

Congressional findings that supported the Federal Recognized Indian Tribe List Act of 1994 , 25 U.S.C. § 5131, for the first time ,  expressly acknowledged that "Indian tribes presently may be recognized by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated 'Procedures for Establishing that an American Indian Group Exists as an Indian Tribe' or by a decision of a United States Court." *See*, Public Law 103-454 §103(3) (November 2, 1994); While the agency clearly has authority to determine which Indian tribes should be acknowledged under federal law (*Kahawaiolaa v. Norton, 386 F.3d 1271, 1273 (9th Cir. 2004*), those laws provide no authority to DOI to forever exclude any Indian tribes from participating in the acknowledgment process by petitioning for re-reconsideration, especially following the adoption of new relaxed regulatory standards that, if applied, could result in acknowledgment and when the new regulations

---

[6] 80 Fed. Reg. 126 At 37,855 (July 1, 2015) (AR0000865, 869) (hereinafter "Final Part 83 Rule").

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST AMENDED COMPLAINT - 14
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

were designed to remedy past defects that resulted in inconsistent and unpredictable acknowledgment determinations.  "Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law."  *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000); (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517 (1988).

Further, statutes concerning Indian tribes are to be construed so as to resolve any doubts in favor of the tribes:

> [T]he standard principles of statutory construction do not have their usual force in cases involving Indian law.  As we said earlier this Term, "[the] canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians."  *Oneida County v. Oneida Indian Nation*, 470 U.S 226, 247 (1985).  * * * * statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit, *e.g., McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 174 (1973); *Choate v. Trapp*, 224 U.S. 665, 675 (1912).

*Monatana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

> In determining [congressional] intent, we are cautioned to follow "the general rule that '[d]oubtful expressions are to be resolved in favor of the weak and defense people who are the wards of the nation, dependent upon its protection and good faith.'"

*McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 174 (1973); *quoting Carpenter v. Shaw*, 280 U.S. 363, 367 (1930).

Plaintiffs submit the obligation to be solicitous towards Indian tribes and Indian people coupled with the absence of any express statutory authority to ban re-petitioning by once-denied tribes or, for that matter, any reliance by DOI upon the only statutes expressly dealing with federal acknowledgment of Indian tribes, forecloses any ability of the DOI to enact such a regulation.  It is not statutory gap-filling; it is law-making, and the regulation exceeds the agency's authority and is not in accordance with the laws passed by Congress and therefore *ultra vires* and violative of the APA.

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1    Under the APA, courts must set aside agency action if there is no Congressional

2    authority to adopt the regulation at issue.  To invalidate a regulation on that basis, a statute

3    need not explicitly prohibit re-petitioning.  *New Mexico v. Department of Interior*, 854 F.3d

4    1207, 1222-23 (10th Cir. 2017) ("In directly speaking to the specific regulatory question or

5    problem, Congress need not explicitly delineate everything an agency cannot do.") (quoting

6    *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818 (10th Cir. 2012) (*en banc*) ("*Chevron* does

7    not require Congress to explicitly delineate everything an agency cannot do before we may

8    conclude that Congress has directly spoken to the issue.  Such a rule would create an

9    ambiguity in most all statutes necessitating deference to nearly all agency determinations.").

10    In summary, Plaintiffs submit that the existence of express statutory authority is

11    necessary to terminate a tribe's quest for federal acknowledgment and that statutory

12    authority must include the authority to prohibit any re-petitioning for formal

13    acknowledgment especially after the standards governing acknowledgment have been

14    formally relaxed.  It cannot be done by regulatory implication.  *See, Santa Clara Pueblo v.*

15    *Martinez*, 436 U.S. 49, 73 (1978).

16    <u>The Defendants' Decision to Prohibit Re-Petitioning Violates the Equal Protection</u>

17    <u>Component of the Fifth Amendment</u>

18    Plaintiffs continue to maintain that the decision to abandon the proposed opportunity

19    for re-petitioning for once-denied tribes violates the equal protection component of the Fifth

20    Amendment (see Plaintiffs' argument in its Memorandum in Opposition pp. 21-23).  With

21    respect to Plaintiffs Equal Protection Claim (Claim V), *Califano v. Webster*, 430 U.S. 313, 321

22    (1977) is easily distinguished.  That case simply held that Congress was within its rights in

23    1972 to make a change in benefits for Social Security recipients.  Doing so was not violative

24    of equal protection given the fact that Congress expressly reserved in the law a right to "alter,

25    amend or repeal any provision of the act" and the Fifth Amendment did not forbid statutory

26    changes to discriminate between the rights of an earlier and later time in order to reduce the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 16
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

1   disparity in economic conditions existing between men and women caused by a long history

2   of discrimination against women.

3          A more relevant and more recent example of a federal regulation invalidated on equal

4   protection grounds is *Sassman v. Brown*, 99 F.Supp.3d 1223, 1236 (E.D. Ca 2015).  There, the

5   court invalidated a refusal to permit male inmates from participating in an early release

6   program for prisoners.   Distinguishing the holding in *Califano*, the court in *Sassman*

7   concluded that the law's classification did not substantially relate to the achievement of the

8   announced governmental objective of helping to promote reunification of inmates with their

9   children after leaving prison because the hearings to determine eligibility for that early

10  release program were individualized and there was therefore no basis to exclude an entire

11  group (all male inmates) from such individualized hearings.  In effect, the rule made no sense.

12  The same is true here.  By denying any opportunity for once-denied tribes to re-petition for

13  federal acknowledgment in the wake of the adoption of the new, relaxed criteria, the

14  Defendants are, in effect, penalizing the victims of the broken and inconsistent and

15  unpredictable process the new regulations were intended to redress.  There is no rational

16  basis for the DOI's action.  As such, it violates the Equal Protection component of the Fifth

17  Amendment and it should be struck down.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS II-V OF PLAINTIFF'S FIRST
AMENDED COMPLAINT - 17
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43L9836/ 15744-001

**CONCLUSION**

For all of the above reasons and those set forth in Plaintiffs' Opposition Memorandum (Dkt. 97), Plaintiffs' Motion for Partial Summary Judgment regarding Claims II-V of its First Amended Complaint should be granted.

DATED:  November 20, 2019.

LANDYE BENNETT BLUMSTEIN LLP

By: *s/      Thane W. Tienson*
Thane W. Tienson, WSBA #13310
*ttienson@lbblawyers.com*
James S. Coon, *Admitted Pro Hac Vice*
*jcoon@tcnf.legal*
Attorneys for Plaintiffs

43L9836/ 15744-001

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)