THE HON. RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| **CHINOOK INDIAN NATION**, an Indian Tribe and as successor-in-interest to The Lower Band of Chinook Indians; **ANTHONY A. JOHNSON**, individually and in his capacity as Chairman of the Chinook Indian Nation; and **CONFEDERATED LOWER CHINOOK TRIBES AND BANDS**, a Washington nonprofit corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>**DAVID BERNHARDT**, in his capacity as Secretary of the U.S. Department of Interior; **U.S. DEPARTMENT OF INTERIOR**; **BUREAU OF INDIAN AFFAIRS, OFFICE OF FEDERAL ACKNOWLEDGMENT**; **UNITED STATES OF AMERICA**; and **TARA KATUK MAC LEAN SWEENEY**, in her capacity as Acting Assistant Secretary – Indian Affairs,<br><br>    Defendants. | Case No. 3:17-05668-RBL<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIMS VI-VIII**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>***(Note on Motion Calendar for: December 27, 2019)*** |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 1
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

**Introduction**

Congress decreed in 1789 that

> [T]he utmost good faith shall always be observed towards Indians; their land and property shall never be taken from them without their consent; and, in their property, rights, and liberty, they shall never be invaded or disturbed,

Northwest Ordinance of 1789, sec. 14, Art. 3.  Defendants and their predecessors negotiated treaties with the Chinook and other tribes for their lands in 1851.[1]  Congress never ratified those treaties, but Defendants took the Chinook lands by force anyway.  Some 60 years later, in 1912, Congress appropriated money, in the mid-nineteenth century dollar amounts specified in the 1851 treaties with the Lower Bank of Chinook and Clatsop, to pay for the taken lands from them at about 51 cents an acre.[2]  Act of August 24, 1912, 37 Stat. 518 at 546.

After World War II, admitting that prior compensation had been inadequate, Congress created the Indian Claims Commission ("ICC"), which finally adjudicated, in 1971, an additional $48,692.02 (64 cents an acre) toward the promise of "utmost good faith."  Defendants hold those finally adjudicated 1971 ICC funds in trust for plaintiffs.  25 USC 1401(b).

Seven years later, in 1978, Congress established an administrative system for formally recognizing Indian tribes.  25 CFR Part 83.[3]  Defendants continued treating Plaintiffs' funds as held in trust for them.  Plaintiff Chinook Indian Nation ("CIN") was denied formal federal recognition under the 1978 Act in 2002.  Defendants' Answer, ¶¶ 14, 15.

---

[1] The 1851 Treaties were signed by the Chinook (the Lower Band of Chinook, Wahkiakum, Kathlamet, Willapa and Clatsop) but never ratified by Congress.  The Chinook refused to sign an 1855 Treaty as it would have required them to relocate to the land of their enemy, the Quinault Indian Nation.

[2] The Chinook got $39,000 for 76,630 acres of land.

[3] Before the 1978 Act, 549 tribes had been recognized by other means. Under the 1978 Act, 17 additional tribes have been recognized. AR000242-44

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 2
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1  Defendants continued holding CIN's funds in trust and sending plaintiffs accountings of their

2  trust funds until 2015, when it first took the position that, because plaintiff CIN was not

3  federally recognized, the adjudicated funds could no longer be held for its benefit.

4      Plaintiffs filed their Sixth, Seventh and Eighth Claims for relief in this action for

5  violation of the Administrative Procedures Act ("APA") and for violation of procedural and

6  substantive due process of law, respectively.   Defendants moved to dismiss, and the Court

7  denied those motions, but did dismiss Claim I.  Plaintiffs recently moved the court for partial

8  summary judgment regarding Claims II-V (Dkt. #101) following the filing of Defendants'

9  Motion for Partial Summary Judgment regarding those same claims (Dkt. #97).   Plaintiffs

10  now move the Court for summary judgment, to grant the remaining relief requested in their

11  complaint – a declaration that the Chinook trust funds are and shall be held by Defendants

12  in trust for Plaintiff CIN.[4]

13      **A.      Summary Judgment and the APA Standard**

14          **1.      The Facts**

15      A federal district court "shall grant summary judgment if the movant shows that there

16  is no genuine dispute as to any material fact and the movant is entitled to judgment as a

17  matter of law." Fed.R.Civ.P. 56(a).  Because judicial review of administrative action is limited

18  to the administrative record, and the administrative agency is the only finder of fact, the only

19  question concerning the facts is whether the agency could reasonably have found the facts it

20  did on the record. *Occidental Engineering Co. v. Immigration & Naturalization Service*, 753

21  F.2d 766, 769-70 (9th Cir. 1985).

22      There is no dispute as to the facts concerning Plaintiffs' trust fund claim.  Plaintiffs'

23  ICC land claim was finally adjudicated in their favor; their trust funds were treated as theirs

24

25

26  [4] Plaintiffs do not ask that the Court award them the trust funds themselves.  Disbursement of funds adjudicated by the ICC requires specific Congressional appropriation. P.L. 93-134, 87 Stat. 466 (1973); *See* 25 CFR Part 87.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 3
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1  from 1971 to at least 2012; they were denied recognition in 2002; and they were told in 2015

2  for the first time that their trust funds were no longer theirs.  For the reasons discussed

3  herein, Plaintiffs are entitled to judgment as a matter of law.

4         **2.**    **The Law**

5        The APA requires a federal district court to "hold unlawful and set aside agency

6  action, findings, and conclusions found to be—(A) arbitrary, capricious, ... or otherwise not

7  in accordance with law [or] (C) in excess of statutory jurisdiction, authority, or limitations,

8  or short of statutory right ." 5 U.S.C. § 706(2)(A),(C).  As discussed below, the agency's

9  decision to stop holding Plaintiffs' trust funds in trust for them violates each of these

10  standards.

11      **B.**    **Not in accordance with law**

12        Defendants are required to hold ICC-adjudicated funds, with interest, in trust for "any

13  Indian tribe, band, group, pueblo, or community. . ."  25 USC 1401(a).  This requirement is

14  not subject to formal tribal recognition under the 1978 Act.  Indeed, section 1401 specifies

15  that the funds are to be held in trust for any "band, group, pueblo or community" in addition

16  to "tribes."  Defendants' explanation of its decision not to hold Plaintiffs' ICC funds in trust

17  for Plaintiffs violates 25 USC 1401.  Defendants contend that

18
19       Acknowledgement of tribal existence by the Department [BIA] is a prerequisite to the protection, services and benefits of the Federal government available to Indian tribes by virtue of their status as tribes.

20
21       Thus, because you are not recognized, the funds held with our office cannot benefit your tribe.

22  Coon Dec, Exhibit A, DN-001590 (Rugen letter, August 25, 2015).  Defendants' obligation to

23  hold Plaintiffs' ICC funds in trust for them is not "protection, services and benefits of the

24  Federal government available to Indian tribes *by virtue of their status as tribes*." (emphasis

25  added).  As above, the trust fund obligation runs to any "band, group, pueblo or community"

26  holding an ICC adjudication.  25 USC 1401.  "Status as [a] tribe[]" is not required.  Defendants'

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 4
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

decision is not in accordance with 25 USC 1401, thus it violates the APA.

**C.     The agency's change of position was arbitrary, capricious and unsupported by any evidence.**

From the creation of the Indian Claims Commission in 1946 through the first decade of the 21st Century, it was clear that a tribe, whether recognized by the federal government or not, was entitled to compensation for the lands taken from it in 19th Century treaty negotiations.  As above, the law was and is that ICC trust funds must be held for any "tribe, band, group, pueblo or community."  Many documents in the record the government has produced show that the agency did not take the position that federal recognition was required until sometime in 2011 or 2012 when an arbitrary and unexplained change occurred.

The statute that created the Indian Claims Commission (ICC) authorized presentation of claims for the taking of Indian land "by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members."   25 USC 70i (repealed).[5]  It did not require federal recognition, though, if recognized, a tribe was to be the exclusive representative of its members.  *Id.*  The ICC found the Chinook to "have the capacity and the right to assert claims for their respective lands" and, in 1970, awarded them compensation in the case denominated "Docket 234."  6 Ind. Cl. Com. 229a.  No other representative of the Chinook has ever received an ICC award for Chinook lands.

**1.   The Agency's Original Policy and Practice**

Defendants proceeded from that 1971 ICC adjudication as if the funds were indeed held in trust for the Chinook through the rest of the twentieth century and for the first decade of the twenty-first.  The administrative denial of federal recognition in 2002 had no effect on

---

[5] The 1973 disbursement statute provides for appropriations to pay land claims awards to "any Indian tribe, band, group, pueblo, or community." 87 Stat. 466 (1973).  As above, 25 USC 1401 reprises that language.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 5
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

the agency's apparent view that the Chinook were entitled to these funds, adjudicated by the ICC as payment for the admitted taking of their ancestral lands.  Coon Declaration, Exhibit B DN-001422 (October 17, 1980 letter from agency to Chinook apologizing for delay in paying adjudicated funds); *Id.,* Exhibit C, DN-001452 (October 11, 1984, agency proposal for handling of funds if tribe is recognized and if not); *Id.,* Exhibit D, DN-001463 (April 21, 1997, agency is "fiduciary for funds held in trust for both federally recognized tribes and non-federally recognized tribes"); *Id.,* Exhibit E, DN-001529 (January 20, 2006 agency memo requesting "Chinook Tribe" "assistance to determine whether the tribe's assets … should remain as invested or be allocated to longer-term investments" and listing "your tribe's account balances" as $247,868.77).

### 2.  The Agency's Policy Changes

For the first time in 2011, the administrative record Defendants have produced begins to include language suggesting that the lack of federal recognition might affect the tribe's right to their funds.  For example, on May 26, 2011, Catherine Rugen, Regional Trust Administrator sent an email saying, "[W]e are in the process of initiating a project to change the statements for all non-federally recognized tribes to file copy only."  *Id.,* Exhibit F, DN-001546.  That may suggest a decision to change the rules about handling and payment of trust funds by stopping the practice of sending trust fund accountings to affected tribes, yet it is not supported by any rationale or documented statutory, regulatory, or policy change. The record Defendant has produced includes no documented description of the "process of initiating a project" to which Ms. Rugen referred.  Still, 10 months later, on March 20, 2012, BIA fiduciary trust officer Gino Orazi, new to the Olympic Peninsula Agency, wrote then "Chinook Nation" Tribal Chairman Ray Gardner to set up a meeting to discuss, with the Chinook "Tribal Council or members of your Tribe" among other matters, "your Tribes' Trust Accounts or any other Trust related issues," suggesting that the Chinook indeed had trust accounts with the agency.  *Id.,* Exhibit G, DN-001551.  However, on May 7, 2012, Mr. Orazi

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1 | sent an internal email that included the following concerning the Chinook Trust Account:

2
3   The Tribe is not recognized for federal purposes. Please discontinue all
4   statements being published and mailed to the Tribe ASAP, please set up a file
    copy only statement. I am letting Cathy know by CC to this message since we
    recently had communication concerning all Tribal accounts which were not
5   publishing a statement.

6 | *Id.,* Exhibit H, DN-001560.   The administrative record does not include any of the

7 | "communication concerning all Tribal accounts" to which Mr. Orazi refers.  There is nothing

8 | to explain the apparently sudden realization that the Chinook, for whom federal recognition

9 | had been denied more than 10 years before, in 2002, should no longer receive statements

10 | concerning the trust account the agency had held in their name for more than forty years.

11 | **3.  The policy change was arbitrary and capricious.**

12 | The idea that the agency would no longer hold the Doc. 234 funds in trust for the

13 | Chinook appeared out of nowhere.  Nothing in the record supports the policy change as a

14 | matter of evidence or explains or justifies it as a matter of administrative reasoning.  The

15 | change exemplifies "arbitrary and capricious" decision-making.  *Organized Vill. of Kake v. U.S.*

16 | *Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) ("Unexplained inconsistency" between

17 | agency actions is a "reason for holding an interpretation to be an arbitrary and capricious

18 | change.") *quoting Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 981

19 | (2005).

20 | If an agency policy change is to comply with the APA, the agency must

21   (1) display[] "awareness that it is changing position," (2) show[] that
22   "the new policy is permissible under the statute," (3) "believe[]" the
     new policy is better, and (4) provide[] "good reasons" for the new
     policy, which, if the "new policy rests upon factual findings that
23   contradict those which underlay its prior policy," must include "a
24   reasoned explanation . . . for disregarding facts and circumstances
     that underlay or)were engendered by the prior policy." Id. at 515-
25   16 (emphasis omitted).

26

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1   *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009), *quoted in Organized Village*

2   *of Kake, supra,* 795 F3d at 966.  Defendant's change of policy concerning the Chinook trust

3   fund fails to meet these four requirements:

4       **a.  Policy Change Awareness.**  While the agency described an intent to "change the

5   statements" for Plaintiffs' trust fund, the agency made no statement that it was changing its

6   policy as to whether the funds continued to belong to the Chinook.  When Ms. Rugen stated

7   for the first time, in her August 25, 2015 letter to CIN Chairman Plaintiff Tony Johnson, that

8   "because you are not recognized, the funds held with our office cannot benefit your tribe,"[6]

9   her letter showed no awareness that the agency was changing its position of more than four

10   decades.

11       **b.  Not Permissible under the Statutes.**  There was no credible showing that the

12   new policy was "permissible under the statutes." The explanation that, because the Chinook

13   had not been recognized, their trust fund could not be held for their benefit was not

14   explained and contradicted more than four decades of policy to the contrary, as well as the

15   statutes on which the ICC award was based.  As above, it flatly violated 25 USC 1401.

16       **c.  No Belief in Better Policy.**  Defendants did not say they believed the new policy

17   was better as a matter of policy.  They claimed only that it was required by statute, though,

18   as above, they made no effort to explain why they had always acted as if the policy were just

19   the opposite.

20       **d.  No Good Reason.**  Defendants did not "provide good reasons" for the new policy.

21   They provided no reason at all beyond a cursory reference to their reading of the statute,

22   which patently contradicted the original statutes that authorized the award and 25 USC

23   1401, which they ignored.  They made no effort to explain why they had interpreted the law

24   differently for over forty years.

25

26

---

[6] Coon Dec, Exhibit I, DN-001589.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 8
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1  Defendants' decision to stop sending trust fund statements to Plaintiffs and, by necessary

2  implication, to stop holding Plaintiffs' trust funds in trust for them, was arbitrary and

3  capricious and in violation of law.

4            **4.  No one else claims or can claim the CIN trust funds.**

5            Nowhere in the administrative record is there any evidence that any claimant other

6  than the Chinook was involved in the ICC "Docket 234" process or has made any credible

7  claim on the CIN trust funds.  According to the record, no other entity, group or individual

8  has received agency accounting or correspondence, or otherwise been treated since the ICC

9  award as the lawful beneficiary of the ICC judgment.  And going forward, Defendants'

10  position prohibiting "repetitioning" would ensure that no other claimant could ever gain

11  access to those funds.  Defendant's repetitioning rule specifies that

12        groups that previously petitioned and were denied Federal acknowledgment
        under these regulations or under previous regulations in part 83 of this title,
13        may not be acknowledged under these regulations. This includes reorganized
        or reconstituted petitioners previously denied, or splinter groups, spin-offs, or
14        component groups of any type that were once part of petitioners previously
        denied.

15

16  25 CFR 83.3(f).  If, as Defendants claim, federal acknowledgment of the tribe is required for

17  funds to be held in trust for that tribe, and if, as the repetitioning regulation provides, no

18  related groups "of any type" can ever be acknowledged, then there is no one who can ever

19  claim the Chinook trust funds.  The effect of the government's new policy is thus to nullify

20  the ICC award and take back the funds promised and awarded under the 1946 legislation to

21  compensate for the taking of treaty lands.

22        **B.        Defendants' action violates due process of law.**

23            The Indian Claims Commission ("ICC") was set up by statute in 1946 to address Indian

24  claims that tribes had received "unconscionable consideration" for the taking of their

25

26

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 9
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

ancestral lands.[7]  Federal recognition of a tribe was not required for an Indian group to pursue its claims before the Commission.  The statute provided that:

> Any claim within the provisions of this chapter may be presented to the <u>Commission by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members</u>; but wherever any tribal organization exists, recognized by the Secretary of the Interior as having authority to represent such tribe, band, or group, such organization shall be accorded the exclusive privilege of representing such Indians, unless fraud, collusion, or laches on the part of such organization be shown to the satisfaction of the Commission.

25 USC 70i (repealed) (emphasis added).  The statute specifically allowed for claims by "any member" of any "identifiable group of Indians as the representative of all its members," though, if there was a tribe recognized by the Secretary, that tribe would be the exclusive representative.  Plainly, a claimant need not have been a federally recognized tribe to be entitled to present a claim.

The Chinook duly presented a claim for compensation for the taking of their ancestral lands, which the Commission considered as "Docket 234."  6 Ind. Cl. Com. 177ff.  The commission entered an Interlocutory Order April 16, 1958 finding that the Chinook and Clatsop Tribes "had Indian title" to ancestral lands, that the United States "assumed definite control" over those lands in 1851, and "that said Indian tribal groups have the capacity and the right to assert claims for their respective lands" describe in the Commission's findings.  6 Ind. Cl. Com. 229a.[8]  A final order affirming the ICC decision was entered by the Court of Claims in 1971.  *Chinook Tribe and Bands of Indians,* 1971 U.S. Ct. Cl. LEXIS 40 * | 196 Ct. Cl. 780.

---

[7] The statute, 60 Stat. 1050, 25 USC 70a *et seq.,* was enacted because of tribal members' contributions to the World War II effort.  The statute was repealed, and the ICC abolished, with remaining claims transferred to the Court of Claims effective September 30, 1978, 90 Stat. 1990 (1976).

[8] The quoted decision is found in the Oklahoma State University online library, http://digital.libraray.okstate.edu/icc/v06/iccv06p229a.pdf at 6 Ind Cl Com 229a, though the page number that appears on the document itself is "6 176a."

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

When the Chinook made and pursued their claims before the ICC in the 1950s to the 1970s, there was no administrative process for the recognition of Indian tribes. Accordingly, federal recognition was not required to assert a claim. Tribes were, or were not, recognized by the BIA, *ad hoc. E.g. Samish Indian Nation v. U.S.,* 419 F3d 1355, 1359 (Fed. Cir. 2005) (Bureau of Indian Affairs' operative list of recognized tribes made by BIA employee without authority.) The precursor to the current administrative system of recognition was first implemented in 1978, seven years after the ICC's final adjudication of the Chinook land claim award in Docket 234. The administrative rule on which Defendants now rely for their assertion that funds cannot be held in trust for Plaintiffs is 25 CFR 83.2, [9] which was promulgated under the authority of the 1978 statute. In any event, Defendants sent Plaintiff trust fund accounting statements for their adjudicated funds at their tribal offices until 2015, when Ms. Rugen's letter first asserted that the law required otherwise.

### 1.     Procedural Due Process (Seventh Claim)

Defendants' 2015 change of policy to deny Plaintiffs the trust funds held for their benefit since they were adjudicated in 1971 violates procedural due process because it purports to deprive Plaintiffs of the benefit of their adjudicated trust funds without any process at all. It points to a later-enacted statute and regulation and declares that Plaintiffs' trust funds can no longer be held for their benefit.

The degree and timing of process that is due in order for the government to take away benefits may depend on many factors. *e.g. Goldberg v. Kelly,* 397 U.S. 254 (1970). As argued below, benefits that have already been subject to final adjudication cannot be taken away by any means whatever. As a matter of procedure, however, there is no authority for the proposition that valuable, adjudicated benefits may be taken away with no process at all.

---

[9] "Federal recognition: a) Is a prerequisite to the protection, services, and benefits of the Federal Government available to those that qualify as Indian tribes and possess a government-to-government relationship with the United States;"

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 11
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon 97201
503.224.4100 • 503.224.4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

1    Defendants' arbitrary decision to reverse more than four decades of practice and a Court of

2    Claims final adjudication based on an internal policy change without any process, violated

3    procedural due process of law.

4                    **2.      Substantive Due Process (Eighth Claim)**

5            Defendants' change of policy to deny Plaintiffs the benefit of the trust funds held for

6    them since they were adjudicated in 1971 violated substantive due process because funds,

7    once adjudicated in favor of a party by a final judgment in a United States court, vest and may

8    not be taken away.  Once the judicial process has adjudicated a final result, neither Congress,

9    nor any administrative agency, can reach back and nullify that result.  The Chinook have had

10   a vested property right in their final judgment for fair compensation for their ancestral lands

11   since that judgment became final in 1971.

12            It is not within the power of a legislature to take away rights which have been
             once vested by a judgment.  Legislation may act on subsequent proceedings,
13           may abate actions pending, but when these actions have passed into judgment
             the power of the legislature to disturb the rights created thereby ceases.

14

15   *McCulloch v. Virginia,* 172 U.S. 102, 123-24 (1898).  Similarly here, the Chinook Tribe's 1971

16   judgment cannot be taken away by later legislative or administrative action.  *See also Chicago*

17   *& Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113 (1948); *Hodges v.*

18   *Snyder,* 261 U.S. 600, 603 (1923)("the private rights of parties which have been vested by

19   the judgment of a court cannot be taken away by subsequent legislation, but must be

20   thereafter enforced by the court regardless of such legislation"); *Stephens v. Cherokee Nation,*

21   174 U.S,. 445, 478 (1899) ("it is undoubtedly true that legislatures cannot set aside the

22   judgments of courts").

23            The Chinook obtained a final, unreviewable judgment from Defendants' ICC and the

24   Court of Claims in 1971, based on a statute that allowed them to represent their people

25   whether or not they were a federally recognized Tribe.  It would be a violation of due process

26   of law for Congress or the Secretary to withhold those adjudicated funds in reliance on

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT COMPLAINT RE: CLAIMS VI-VIII - 12
Case No. 3:17-05668-RBL

**LANDYE BENNETT BLUMSTEIN** LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

**THOMAS, COON, NEWTON & FROST**
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001

legislation or administrative rulemaking done after that final adjudication.

**CONCLUSION**

According to Defendants' position, the United States, by later changing the rules, should be allowed to take back the money it earlier promised to pay Plaintiffs for lands it took from them by force in the nineteenth century.  To understate the matter, that would not be consistent with the Congressional promise that "the utmost good faith shall always be observed towards Indians; their land and property shall never be taken from them without their consent."  Northwest Ordinance of 1789, sec. 14, art 3.  There is no question of material fact, and, based on the administrative record, Plaintiffs are entitled to a declaration that the moneys awarded to them in the ICC Docket 234 process, with interest, are and shall be held in trust for them by Defendants, subject to disbursement according to law.

DATED:  November 26, 2019.

THOMAS COON NEWTON & FROST

By: _s/____James S. Coon_____
James S. Coon, *Admitted Pro Hac Vice*
*jcoon@tcnf.legal*

LANDYE BENNETT BLOOMSTEIN LLP
Thane W. Tienson, WSBA #13310
*ttienson@lbblawyers.com*
Attorneys for Plaintiffs

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3600
Portland, Oregon  97201
503.224-4100 • 503.224-4133 (facsimile)

THOMAS, COON, NEWTON & FROST
820 SW Second Avenue, Ste. 200
Portland, OR 97204
503.228.5222 • 503.273.9175 (facsimile)

43M3312/ 15744-001