HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHINOOK INDIAN NATION, et. al., | CASE NO. 3:17-cv-05668-RBL |
| Plaintiffs, | ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS II-V |
| v. | |
| DAVID BERNHARDT, et al., | DKT. ## 93, 97 |
| Defendants. | |

## INTRODUCTION

THIS MATTER is before the Court on the parties' Cross-Motions for Partial Summary Judgment on Claims II-V. Dkt. ## 93 & 101. Plaintiff Chinook Indian Nation (CIN) is a tribal group and nonprofit corporation comprised of individuals claiming descent from the historic Chinook Tribe of the Columbia River Basin.[1] This case stems from CIN's decades-long battle to gain federal recognition as a Native American tribe from Defendant U.S. Department of Interior

---

[1] The remaining Plaintiffs—Anthony A. Johnson and Confederated Lower Chinook Tribes and Bands—are also affiliated with the historic Chinook Tribe and will be collectively referenced as "CIN."

1   (DOI).[2] CIN began their petition process in 1981, briefly received recognition in 2001, but then

2   saw the decision reversed in 2002. *See* Dkt. # 45 at 7-9. Under then-existing DOI regulations, the

3   2002 denial barred CIN from re-petitioning for recognition. In 2014, a proposed amendment to

4   the DOI regulations would have created an exception to the ban on re-petitioning for groups able

5   to demonstrate that the reasons for their denial are no longer valid. However, DOI ultimately

6   eliminated this exception and continued to bar re-petitioning in the 2015 Final Rule, despite

7   changing other aspects of the recognition requirements. CIN now challenges this decision to

8   maintain the ban on re-petitioning in the 2015 regulation, arguing that it exceeds DOI's statutory

9   authority, is arbitrary and capricious, and violates the Fifth Amendment's Equal Protection

10   Clause.[3]

**BACKGROUND**

12   The Court's prior Order on Defendants' Motion to Dismiss provides a full description of

13   CIN and its attempt to gain federal recognition. *See* Dkt. # 45 at 2, 7-9. Because the claims at issue

14   here do not turn on CIN's past attempt at recognition, the Court will not revisit that background.

15   However, a detailed description of the evolution of DOI's regulations is warranted.

16   **1.     The Tribal Recognition Process and the 1994 Amendments**

17   To be viewed as an independent entity by the United States, a Native American tribe must

18   gain recognition by the Federal Government. "Federal recognition affords important rights and

19   protections to Indian tribes, including limited sovereign immunity, powers of self-government, the

---

21   [2] The remaining Defendants—David Bernhardt; Bureau of Indian Affairs, Office of Federal
     Acknowledgment; United State of America; and Tara Katuk MacLean Sweeney—are all
22   affiliated with DOI and will be referred to collectively as "DOI."

23   [3] CIN's Motion concedes that CIN's claims under the Fifth Amendment's Due Process Clause
     (Claim III) and First Amendment's Petition Clause (Claim V) are currently without merit.
24   Dkt. # 97 at 23. Those claims are accordingly dismissed without prejudice.

1   right to control the lands held in trust for them by the federal government, and the right to apply

2   for a number of federal services." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004).

3   Since 1978, DOI has controlled the tribal recognition process through its "Part 83" regulations,

4   which set procedures for petitioning and establish mandatory criteria that petitioners must meet.[4]

5   Those seven criteria require that:

6       (a) the group has been identified from historical times to the present, on a
        substantially continuous basis, as Indian; (b) "a predominant portion of the
7       petitioning group comprises a distinct community and has existed as a community
        from historical times until the present"; (c) the group "has maintained political
8       influence or other authority over its members as an autonomous entity from
        historical times until the present"; (d) the group has a governing document; (e) the
9       group has lists of members demonstrating their descent from a tribe that existed
        historically; (f) most of the members are not members of any other acknowledged
10      Indian tribe; (g) the group's status as a tribe is not precluded by congressional
        legislation.

11

12  *Id.* at 1274 (summarizing the criteria now contained in 25 C.F.R. § 83.11 (2015)). Within DOI,

13  Bureau of Indian Affairs' Office of Federal Acknowledgement (OFA) is tasked with implementing

14  the Part 83 regulations on a petition-by-petition basis to determine which tribes should receive

15  recognition.

16      The Part 83 regulations have been amended twice. The first set of amendments occurred in

17  1994, and it was this manifestation that first barred tribes from re-petitioning for recognition if

18  they had been previously denied (hereafter referred to as "the re-petition ban"). 25 C.F.R. § 83.3(f)

19  (1994). *See* Procedures for Establishing That an American Indian Group Exists as an Indian Tribe,

20  59 Fed. Reg. 9280 (Feb. 25, 1994). In addition to the ban, the amendments also created an

21  evidentiary standard that required petitioners to prove a "reasonable likelihood of the validity of

22

23  [4] The regulations are promulgated largely by DOI's Bureau of Indian Affairs. For simplicity's
    sake, however, the Court will simply refer to "DOI" when discussing promulgation of the Part 83
24  regulations.

the facts" related to each criterion—an ambiguous metric that fell somewhere below "conclusive proof." 25 C.F.R. § 83.6(d) (1994).

## 2.    The 2014 Proposed Rule

The second set of amendments to the Part 83 regulations was finalized in 2015, but the Proposed Rule—which is integral to CIN's claims—was published in 2014. *See* Federal Acknowledgment of American Indian Tribes, 79 Fed. Reg. 30766 (May 29, 2014). Acknowledging that "[t]he current [recognition] process has been criticized as 'broken,'" the Proposed Rule aimed to "make the process and criteria more transparent, promote consistent implementation, and increase timeliness and efficiency, while maintaining the integrity of the process." *Id*. at 30766. To achieve these goals, it added "objective standards" and altered some of the requirements from the 1994 regulations. *Id*. at 30766. Perhaps most controversially, the Proposed Rule newly defined the "reasonable likelihood" evidentiary standard to mean "there must be more than a mere possibility" but a petitioner need not prove that the facts are "more likely than not" true. *Id*. at 30773 (§ 83.10(a)(1)); *see also* Comments on Proposed Rule by George Roth, AR000521-548 (explaining petitioner-friendly innovations in the 2014 Proposed Rule). Other significant changes included:

- Requiring petitioners to demonstrate their existence as a distinct community and political authority only "from 1934 until the present," 79 Fed. Reg. at 30775 (§ 83.11(b), (c)), rather than "from historical times until the present," § 83.7(b), (c) (1994).

- Allowing automatic satisfaction of criteria (b) (Community) and (c) (Political Authority) with proof that "[t]he petitioner has maintained since 1934 to the present a State reservation" or "[t]he United States has held land for the petitioner or collective ancestors

of the petitioner at any point in time from 1934 to the present." 79 Fed. Reg. at 30775 (§§ 83.11(b)(3) & (c)(3)).

- Newly defining "substantial interruption" to mean "a gap, either as a fluctuation in tribal activity or a gap in evidence, of 20 years or less." *Id*. at 30775 (§ 83.10(b)(5)).

Some of these changes were implemented to ease the burden on petitioners in light of the U.S.'s ugly history of discouraging Indian identity. For example, the 1934 evaluation start date for criteria (b) and (c) "reflect[ed] the United States' enactment of the Indian Reorganization Act (IRA), which reversed the Federal Indian policy of allotment and assimilation that was aimed at destroying tribal governments and their communities." 79 Fed. Reg. at 30767. By moving the date up to 1934, the Proposed Rule spared petitioners the more difficult task of locating evidence from a time when "tribes had little to gain, and much to lose" by documenting their existence for the Federal Government. *Id*. at 30768.

In light of these lower evidentiary burdens, the Proposed Rule also created an exception to the re-petition ban. Under the exception, groups that had previously been denied recognition could re-petition if: (i) they obtained consent from "[a]ny third parties that participated as a party in an administrative reconsideration or Federal Court appeal concerning the petitioner," and (ii) either "[a] change from the previous version of the regulations to the current version of the regulations warrants reconsideration of the final determination" or "[t]he 'reasonable likelihood' standard was misapplied in the final determination." *Id*. at 30773 (§ 83.4(b)(1)). A judge at DOI's Office of Hearings and Appeals (OHA) would serve a gatekeeping function by deciding whether re-petition applications met these initial requirements before OFA would consider re-petitions on the merits. *Id*. (§ 83.4(b)(2)).

1    This possibility of re-petitioning combined with the new, more relaxed evidentiary

2 requirements evoked a variety of responses. Many commenters supported DOI's revisions and

3 even suggested they should go further by eliminating the third-party consent requirement for

4 re-petitioning. *See, e.g.*, AR000610-15; AR000616-43. As one former OFA staffer commented,

5 "Acknowledgement decisions should not be based on political considerations . . . ; [t]hey should

6 be about doing the right thing in light of U.S. history and Indian law." AR000610. In an interview,

7 Assistant Secretary of Indian Affairs Kevin Washburn stated that the "modest exception" to the

8 re-petition ban was warranted "just out of fairness" if the new rule made substantive changes to

9 DOI's regulations. AR0006622. He went on to say that he was "doubtful that many groups would

10 deserve reconsideration under the Proposed Rule." AR0006623.

11    Others, including local governments and previously-recognized tribes, argued vociferously

12 that the chance for a second bite at a now easier-to-swallow apple would cause a flood of

13 re-petitions. *See, e.g.*, AR000600-10; AR000616-16; AR000644-47. They asserted that this would

14 threaten their settled interests in land that could now be turned over to successful re-petitioners.

15 *See, e.g.*, Testimony of Connecticut towns, AR000575-84; Letter from California State

16 Association of Counties, AR0000270-73; Testimony of Quinault Indian Nation, AR000550-58.

17 Governmental entities and politicians from Connecticut were especially vocal in challenging the

18 proposed changes. *See* Letter from Connecticut AG, AR0006892; Letter from Connecticut Towns,

19 AR0009055; AR000575. The Quinault Tribe—the same tribe that originally argued against CIN's

20 recognition and succeeded in having it rescinded in 2002—was also a critic. *See* AR000550.

21 **3.    The 2015 Final Rule**

22    In the Final Rule, DOI reversed course by eliminating the exception to the blanket re-

23 petition ban from the 1994 rule. DOI provided the following explanation for its decision:

24

After reviewing the comments both in support of and in opposition to allowing for any opportunity for re-petitioning, limiting re-petitioning by providing for third-party input, and other suggested approaches for re-petitioning, the Department has determined that allowing re-petitioning is not appropriate. The Final Rule promotes consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner. The Department has petitions pending that have never been reviewed. Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular. The Part 83 process is not currently an avenue for re-petitioning.

80 Fed. Reg. at 37875.

DOI also removed several of the provisions relaxing assessment standards. Specifically, "the Final Rule does not adopt the proposed evaluation start date for criteria (b) (Community) and (c) (Political Authority) of 1934 [and] maintains the current standard of proof as 'reasonable likelihood' without the proposed incorporation of judicial explanations of the phrase." *Id*. at 37863. In addition, DOI removed the provision allowing automatic satisfaction of criteria (b) and (c) through proof of a state reservation or U.S.-held land and did not define "substantial interruption" as "a gap of 20 years or less." *Id*. at 37870, 37872.

Politicians from Connecticut called the rollbacks in the Final Rule a "big victory" for their state. AR0009655. The governor praised the "sustained and coordinated advocacy by our office, Senators Blumenthal and Murphy, our entire Congressional delegation, as well as localities and interested third parties in our state" and "thank[ed] President Obama and Vice President Biden for heeding [the state's] concerns." AR0009655-56.

Despite this, the 2015 Final Rule still alters the 1994 rule's standards in petitioner-friendly ways. Significantly, the Final Rule adds a new "baseline" evidentiary standard that states: "Evidence or methodology that the Department found sufficient to satisfy any particular criterion in a previous decision will be sufficient to satisfy the criterion for a present petitioner." 80 Fed.

Reg. at 37889 (25 C.F.R. § 83.10(a)(4)). DOI added this provision to "promote[] consistency" after recognizing that "the previous rule was criticized as inconsistent and unpredictable." *Highlights of the Final Federal Acknowledgement Rule (25 CFR 83)*, Bureau of Indian Affairs (June 29, 2015), available at: http://www.bia.gov/sites/bia.gov/files/assets/as-ia/pdf/idc1-030769.pdf. And while the Final Rule jettisoned the proposed 1934 evaluation start date for criteria (b) and (c), it still moved the date up to 1900. 80 Fed. Reg. at 37889-90 (§ 83.11(a), (b), (c) (2015)). Other notable changes from the 1994 rule include:

- Allowing petitioners to rely on evidence of self-identification as an Indian tribe, rather than only external identification. *Compare id.* at 37889 (§ 83.11(a)(7) (2015)) *with* § 83.7(a) (1994);

- Allowing automatic satisfaction of criterion (e) (Descent) through evidence of "a tribal roll directed by Congress or prepared by the Secretary on a descendancy basis for purposes of distributing claims money, providing allotments, providing a tribal census, or other purposes, unless significant countervailing evidence establishes that the tribal roll is substantively inaccurate," 80 Fed. Reg. at 37890-91 (§ 83.11(e)(1) (2015));

- Loosening the requirements for criterion (f) (Unique Membership) for tribes with members who are already part of a recognized tribe. *Compare id.* at 37891 (§ 83.11(f) (2015) *with* § 83.7(f) (1994).

**DISCUSSION**

CIN's challenge under the Administrative Procedures Act (Claim II) breaks down into two separate claims. First, CIN argues that DOI lacks statutory authority to promulgate the 2015 re-petition ban. Second, CIN asserts that DOI's decision to maintain the re-petition ban in the 2015 Final Rule was arbitrary and capricious. Finally, CIN also challenges the ban under the

1    Fifth Amendment's Equal Protection Clause as a discriminatory classification. The Court will

2    address each claim in turn.

3    **1.      Administrative Procedure Act – Absence of Statutory Authority**

4          The Ninth Circuit has explained that a claim challenging an administrative rule as "issued

5    without statutory authority should be construed as a claim challenging agency action 'in excess

6    of statutory jurisdiction, authority, or limitations, or short of statutory right' under 5 U.S.C.

7    § 706(2)(C)." *See Clouser v. Espy*, 42 F.3d 1522, 1528 n.5 (9th Cir. 1994); *see also Sierra Club*

8    *v. Trump*, 929 F.3d 670, 712 (9th Cir. 2019) (relying on *Clouser*). The starting point for such an

9    analysis is to interpret the statutes from which the agency purports to derive authority. *San Luis*

10   *& Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1227 (9th Cir. 2017) (citing

11   *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

12         In promulgating the 2015 Part 83 regulations, DOI principally relies on 25 U.S.C. §§ 2, 9

13   and 43 U.S.C. § 1457. 80 Fed. Reg. at 37885. Section 2 states, "The Commissioner of Indian

14   Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such

15   regulations as the President may prescribe, have the management of *all* Indian affairs and of *all*

16   matters arising out of Indian relations." (emphasis added). Section 9 provides rulemaking power

17   to the President, and section 1457 tasks the Secretary of the Interior with supervision over the

18   subject of "Indians." As another source of authority, DOI cites "The Congressional findings that

19   supported the Federally Recognized Indian Tribe List Act of 1994[,] [which] expressly

20   acknowledged that Indian tribes could be recognized 'by the administrative procedures set forth

21   in part 83 of the Code of Federal Regulations.'" 80 Fed. Reg. at 37885 (quoting Public Law 103-

22   454 §§ 103(2), (3), (8) (Nov. 2, 1994)).

23

24

1    CIN argues that the List Act of 1994's explicit acknowledgement of DOI's power to

2    recognize tribes also entails an inverse implication that DOI may not limit which tribes can

3    obtain recognition—in other words, DOI is authorized to *give* but not to *take*. For further

4    support, CIN points to the statement in the Act that only Congress may terminate a tribe's

5    recognized status. *See* Public Law 103-454 §§ 103(4), (5). According to CIN, the re-petition ban

6    is tantamount to terminating recognition for those tribes who have previously been denied but

7    could satisfy the lower standards in the 2015 Part 83 regulations. CIN urges that such a reading

8    of the List Act complies with the principle that "statutes are to be construed liberally in favor of

9    the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe*

10   *of Indians*, 471 U.S. 759, 766 (1985).

11   While CIN's arguments hold some appeal, the Court agrees with DOI that its expansive

12   power over Indian affairs encompasses the re-petition ban. *See Haugrud*, 848 F.3d at 1228 ("The

13   absence of limiting language indicates Congress intended to delegate broad authority to the

14   Secretary . . . ."). Courts have repeatedly emphasized the broad sweep of authority over Indian

15   affairs granted by 25 U.S.C. §§ 2, 9, leaving no ambiguity for the Court to interpret in CIN's

16   favor. *See James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987);

17   *Agua Caliente Tribe of Cupeno Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1218

18   (9th Cir. 2019); *see also Haugrud*, 848 F.3d at 1229 (distinguishing a broad grant of authority

19   from an ambiguous one). If section 2 and 9 empower DOI to regulate the recognition process (as

20   CIN admits they do), it follows that DOI may also place limitations on that process. A contrary

21   conclusion would have no rational endpoint and tie DOI's hands when regulating federal

22   recognition.

23

24

1    Nor can the Court embrace CIN's interpretation of the List Act of 1994. Even if read

2    charitably toward tribes, Congress's finding that "Indian tribes presently may be recognized by .

3    . . the administrative procedures set forth in part 83" simply does not create a new limitation on

4    DOI's power over federal recognition. To the extent the Act does explicitly limit DOI's power to

5    terminate recognition, the Court does not agree with CIN that the re-petition ban is tantamount to

6    terminating tribal recognition. By this logic, if DOI were to substantively heighten the criteria for

7    recognition under Part 83, a tribe that had not yet petitioned but would have succeeded under the

8    old rules could argue that the new rules amount to "termination" of their status. Yet this would

9    be the wrong conclusion, as the power to regulate the recognition process will inevitably involve

10   decisions that limit the ability of some tribes to gain recognition. In short, the Court is unwilling

11   to hold that the re-petition ban exceeds DOI's authority.

12   **2.     Administrative Procedure Act – Arbitrary and Capricious**

13   A final agency action may be set aside if it is "arbitrary, capricious, an abuse of

14   discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "A rule is

15   arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to

16   consider, entirely failed to consider an important aspect of the problem, offered an explanation

17   for its decision that runs counter to the evidence before the agency, or is so implausible that it

18   could not be ascribed to a difference in view or the product of agency expertise.'" *Providence*

19   *Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (quoting *Motor Vehicle Mfrs.*

20   *Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[T]he touchstone

21   of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp.*

22   *& Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting

23   *State Farm*, 463 U.S. at 52). Courts will sustain an agency action if the agency has "examine[d]

24

1 the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational

2 connection between the facts found and the choice made.'" *Id.* (quoting *State Farm*, 463 U.S. at

3 43 (internal quotation omitted)). This standard also applies to how an agency considers and

4 responds to "significant comments" that raise points that could change a proposed rule. *Id.*

5 (quoting *Am. Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (internal quotation

6 omitted).

7 "[C]ourts will 'uphold a decision of less than ideal clarity if the agency's path may

8 reasonably be discerned.'" *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1052 (9th Cir. 2007).

9 (quoting *State Farm*, 463 U.S. at 43). "Moreover, '[w]here the agency's line-drawing does not

10 appear irrational and the [party challenging the agency action] has not shown that the

11 consequences of the line-drawing are in any respect dire . . . [courts] will leave that line-drawing

12 to the agency's discretion.'" *Id.* (quoting *Leather Indust. of Am. v. EPA*, 40 F.3d 392, 409

13 (D.C.Cir.1994)). However, the agency cannot engage in post-hoc rationalizations; "[t]he grounds

14 upon which an administrative order must be judged are those upon which the record discloses

15 that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943). And

16 when an agency changes position, it must provide "good reasons" for the shift. *See F.C.C. v. Fox*

17 *Television Stations, Inc.*, 556 U.S. 502, 515 (2009).[5]

18

---

19 [5] DOI concedes that the decision to include the re-petition ban in the 2015 Final Rule is
reviewable under 5 U.S.C. § 704 as a final agency action. *See* Dkt. # 99 at 6 n.14. However, DOI

20 argues that cases cited by CIN related to an agency's shift in informal policy are inapplicable.
*See Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 681 (9th Cir. 2016) (citing *Fox Television*

21 *Stations*, 556 U.S. at 515). This is true to the extent that the 2015 Part 83 amendments are a
different type of agency action calling for a different analytical approach. But *Fox Television*

22 *Stations* explains that all types of agency action are ultimately subject to the same requirements
in § 706(2)(A) of the APA. 556 U.S. at 515. The only difference is what counts as "arbitrary and

23 capricious" in a given scenario. *Id.* Here, even though DOI did not rescind an established policy
or prior regulation, the shift in position between the Proposed and Final Rules requires "good

24 reasons" to avoid being arbitrary and capricious. *See id.*

1   Under the APA, the court's role on summary judgment is not to engage in independent

2 fact finding, but to "determine whether or not as a matter of law the evidence in the

3 administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v.*

4 *Immigration & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir.1985). When determining if an

5 agency's action was arbitrary and capricious, courts should be "highly deferential" to the

6 agency's decision, *Providence Yakima*, 611 F.3d at 1190, and not "substitute [the court's own]

7 judgment for that of the agency." *J & G Sales*, 473 F.3d at 1051. But despite this forgiving

8 standard, courts still must "engage in a substantial inquiry[,] . . . a thorough, probing, in-depth

9 review" of the agency action. *Native Ecosystems Council v. U.S. Forest Serv., an agency of U.S.*

10 *Dep't of Agric.*, 418 F.3d 953, 960 (9th Cir. 2005) (quoting *Citizens to Preserve Overton Park,*

11 *Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971)). If a court holds an agency action to be arbitrary and

12 capricious, "the proper course [is] to remand to the Agency." *Nat'l Ass'n of Home Builders v.*

13 *Defs. of Wildlife*, 551 U.S. 644, 657 (2007); *see also Fed. Power Comm'n v. Idaho Power Co.*,

14 344 U.S. 17, 20, 73 S. Ct. 85, 87, 97 L. Ed. 15 (1952) (When reviewing an administrative

15 decision, "the function of the reviewing court ends when an error of law is laid bare.").

16   DOI contends that the agency's decision to maintain the re-petition ban in the 2015 Final

17 Rule was supported by three main justifications: "consistency . . . , "fair[ness] . . . , [and]

18 efficiency." 80 Fed. Reg. at 37875 (AR0009813). First, DOI argues that the re-petition ban

19 promotes consistency in the same manner as the doctrine of res judicata: by ensuring that the

20 agency's decisions have finality. Second, DOI insists that "time that would have been spent by

21 agency personnel on re-petitions would be time taken away from first-time petitioners." DOI

22 Reply Br., Dkt. # 99, at 8; *see also* 80 Fed. Reg. at 37875. Third, DOI argues that adding re-

23 petitioners to the numerous tribes that may seek recognition would overburden the agency. *See*

24

1    Dkt. # 99 at 9 (citing AR0006619-20 and AR0000270). DOI also rejects the notion that

2    substantive changes to the agency's criteria or standards require an exception to the re-petition

3    ban. In any case, DOI contends that there are only two substantive change in the Final Rule:

4    (1) allowing tribes to rely on self-identification for criterion (a) and (2) changing the manners in

5    which marriages are considered as evidence for criterion (b). *Id*. at 10. Other changes supposedly

6    only codified the agency's informal procedures.[6] *Id*.

7          CIN disputes that any of the justifications put forth by DOI are logical or supported by

8    the administrative record. First, CIN argues that banning re-petitioning does not promote

9    consistency because it entrenches unfair decisions from the past. This is so because, according to

10   CIN, the Final Rule contains several significant changes that ease petitioners' burdens, including

11   the new provision allowing petitioners to rely on the type or amount of evidence from any past

12   decision granting recognition, § 83.10(a)(4) (2015), and the new evaluation period for criteria (b)

13   and (c) of 1900 to the present, § 83.11(b), (c) (2015). Second, CIN asserts that DOI never

14   actually considered re-petitioners' impact on the wait time for new petitioners or where

15   re-petitioners would be placed in line relative to new groups. Finally, CIN argues that DOI

16   represented that the Proposed Rule's narrow exception to re-petitioning would not impact the

17   efficiency of the agency, which is currently considering just three pending petitions and six

18   potential petitions. *See* U.S. Department of Interior: Indian Affairs, *Office of Federal*

19   *Acknowledgement: Petitions in Process* (Dec. 7, 2019), available at: https://www.bia.gov/as-ia/

20   ofa/petitions-process.

21

22   _____

23   [6] DOI also complains that CIN has tried to "have it both ways" by attacking the third-party
     consent requirements in the Proposed Rule's exception while also arguing that the choice to
     eliminate the exception was arbitrary and capricious. Dkt. # 99 at 6, 8 n.16. But CIN's belief that
24   the proposed exception did not go far enough does not preclude them from arguing that getting
     rid of the exception completely violated the APA.

1   The Court agrees with CIN—DOI's reasons for eliminating the re-petition ban exception

2 from the Final Rule are illogical, conclusory, and unsupported by the administrative record in

3 violation of the APA. First, DOI "entirely failed to consider an important aspect of the problem"

4 when it did not explain why banning re-petitioning is appropriate in light of the Final Rule's

5 amended standards. *See Providence Yakima*, 611 F.3d at 1190. In the Proposed Rule, the

6 re-petition ban exception was created to promote "uniformity based on previous decisions" by

7 allowing re-petitioning "in those limited circumstances where changes to the regulations would

8 likely change the previous final determination." *See* 79 Fed. Reg. at 30767. Bizarrely, the Final

9 Rule cites nearly the same justification for *removing* the exception, stating: "The Final Rule

10 promotes consistency, expressly providing that evidence or methodology that was sufficient to

11 satisfy any particular criterion in a previous positive decision on that criterion will be sufficient

12 to satisfy the criterion for a present petitioner." 80 Fed. Reg. at 37875. Rather than explain why

13 the Final Rule's revised standards obviate the need for re-petitioning, DOI insisted that banning

14 re-petitions would serve the same goal as allowing them.

15   Unfortunately, the opposite is true. As the Proposed Rule recognized, banning re-

16 petitions undermines the goal of applying DOI's standards consistently to all petitioners. DOI

17 argues that allowing re-petitioning is unnecessary because the Final Rule merely codifies

18 existing practices and does not alter the substantive criteria for recognition. Dkt. # 99 at 9-11.

19 But this claim is belied by DOI's own justification for the new "baseline" evidence standard,

20 which acknowledges that "the previous rule was criticized as inconsistent and unpredictable."

21 *Highlights of the Final Federal Acknowledgement Rule (25 CFR 83)*, Bureau of Indian Affairs

22 (June 29, 2015), available at: http://www.bia.gov/sites/bia.gov/files/assets/as-ia/pdf/idc1-

23 030769.pdf. The decision to codify this baseline standard apparently came about because the

24

agency had a practice of *not* holding petitioners to consistent requirements across cases. DOI also tries to gloss over other important changes to the substantive criteria, such as the new 1900-present consideration period for criteria (b) & (c) and the ability to satisfy criterion (e) by demonstrating descendance through a congressional roll. *See* 25 C.F.R. § 83.11(a), (b), (e)(1) (2015). These are significant revisions that could prove dispositive for some re-petitioners. The Final Rule gives no explanation for why such changes no longer warrant an exception to the re-petition ban or are out-weighed by other concerns.[7]

Second, the Final Rule fails to rationally connect the 2015 re-petition ban to the evidence in the record or provide "good reasons" for the decision to eliminate the exception. *See Altera Corp.*, 926 F.3d at 1080; *Fox Television Stations*, 556 U.S. at 515 (2009). The result is arbitrary line-drawing with dire consequences for tribes like CIN. *See J &G Sales*, 473 F.3d at 1052. DOI now insists that the ban promotes "consistency" by implementing res judicata, but this is not the type of "consistency" referenced in the Final Rule's actual justification. *See* 80 Fed. Reg. at 37875. Instead, the use of the word "consistency" in the Final Rule mirrors the provision establishing the "baseline" evidentiary standard, which is antithetical to banning re-petitions. *Id*. at 37863; *see also id.* at 37862 (stating that one aim of the Final Rule is "codifying and improving upon past Departmental implementation of standards, where appropriate, to ensure consistency, transparency, predictability and fairness"). There is no reason why new petitioners should be entitled to this "consistency" while past petitioners are not.

---

[7] Interestingly, a prior draft of the Final Rule justified eliminating the re-petition ban exception by explaining that "the criteria in the Final Rule remain substantively unchanged overall, so the Department does not anticipate the Final Rule would result in different outcomes to past decisions." AR000687. This language was removed from the Final Rule that was ultimately published, suggesting that the agency concluded it was inaccurate.

In fact, the words "res judicata" and "finality" are nowhere to be found in DOI's own justification for the re-petition ban. *Id.* at 37875. The Final Rule references these concepts when describing comments by those opposed to the re-petition ban exception, *id.* at 37874, but it does not incorporate those comments into DOI's own final reasoning. The mere fact that some commenters raised these issues is not enough for the agency to rely on them now. Even if it was, the Court is skeptical that res judicata is applicable in a situation such as this where legal standards changed between the 1994 and 2015 regulations. *See Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp. 2d 192, 199 (D. Conn. 2006) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992)) (explaining that res judicata does not apply when legal standards governing the issues are "significantly different"). Appeals to "finality" when justifying the re-petition ban are more convincingly premised on a desire to protect "settled expectations" and avoid "unfair[ness] to stakeholders . . . who have already litigated against [an] unsuccessful original petition." 80 Fed. Reg. at 37874. The Court does not judge the appropriateness of these goals, but if they actually motivated DOI's decision they agency should have said so directly.

DOI's "fairness to new petitioners" justification is similarly unavailing. There is no evidence in the record demonstrating why the existence of pending petitions became a decisive issue after the Proposed Rule was published. Indeed, DOI defended the re-petition ban exception by stating that it would *not* impact pending petitions and that few re-petition applications would likely be accepted at all. *See* Washburn Interview, AR0006623; *see also* Draft Final Rule, Dkt # 98-3, at 41 (comment stating: "Questionable how many viable petitioners are out there"). Since the Final Rule did away with some of the Proposed Rule's petitioner-friendly changes, the threat to new petitioners seemingly got smaller rather than greater. For those few re-petition

1  applications that were accepted, the Proposed Rule did not state whether they would be

2  addressed right away or sent to the back of the line. *See* Haliwa-Saponi Tribe Comment,

3  AR000614. If DOI was concerned about pending petitions, it would have been simple to give

4  them priority. Furthermore, when re-petitions finally were addressed, OFA would only have to

5  re-consider the aspects of the original decision that were identified as erroneous. This task would

6  surely take less time than deciding a whole new petition. In short, the re-petition ban exception

7  would only be detrimental to existing petitioners if DOI designed it to be.

8      For many of the same reasons, DOI's "efficiency" justification is also unsupported. The

9  Final Rule emphasizes that the "Department, and OFA in particular," would face an increased

10  workload if re-petitioning were allowed. 80 Fed. Reg. at 37875. But the Proposed Rule tasked

11  OHA judges with screening re-petition applications, not OFA. *See* 79 Fed. Reg. at 30767.

12  Furthermore, DOI identifies no evidence in the record showing why general efficiency concerns

13  came to outweigh the Proposed Rule's reasons for allowing re-petitioning. If the Final Rule truly

14  does not relax standards significantly, as DOI claims, then few re-petitions can be expected to

15  make it to OFA at all. Of course, there is the possibility that some re-petition applications would

16  successfully proceed to OFA, which could slow down the process for future petitioners. But if

17  such tribes have valid claims to recognition under the new standards, shutting them out to further

18  some vague notion of administrative efficiency seems the definition of arbitrary. Merely

19  referencing "efficiency," without more, is insufficient to sustain a regulation as draconian as the

20  2015 re-petition ban. The decision to maintain the re-petition ban in the 2015 Final Rule was

21  thus arbitrary and capricious and must be remanded to DOI for further evaluation consistent with

22  this Order.

23

24

3.      **Equal Protection Clause**

CIN also challenges the re-petition ban under the Fifth Amendment's Equal Protection Clause. The Ninth Circuit has held that categorizations based on tribal recognition status demonstrate a preference that is "political rather than racial in nature," making the "highly deferential" rational basis review appropriate. *Kahawaiolaa*, 386 F.3d at 1279 (quoting *Morton v. Mancari*, 417 U.S. 535, 554 (1974)). Under the rational basis test, a regulation must be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). "In defending a statute on rational-basis review, the government 'has no obligation to produce evidence to sustain the rationality of a statutory classification'; rather, '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Id.* at 1279-80 (citing *Heller*, 509 U.S. at 320).

CIN argues that the 2015 re-petition ban "effectively favors some tribal groups—those groups whose petitions for acknowledgement have not yet been determined—for no valid reason." Dkt. # 97 at 22. CIN compares this situation to *U. S. Department of Agriculture v. Moreno*, where the Court struck down a statute limiting government benefits to households with related members because the law arbitrarily targeted "hippies," a politically unpopular group. 413 U.S. 528, 534 (1973); *see also Diaz v. Brewer*, 656 F.3d 1008, 1014-15 (9th Cir. 2011) (law limiting benefits to married couples discriminated against same-sex couples, who legally could not marry in Arizona, for no legitimate purpose).

DOI responds that, first, the 1994 Part 83 regulations also contained the re-petition ban, meaning that the 2015 Final Rule did not treat previously-denied tribes any differently than before. Second, DOI points to the consistency, efficiency, and fairness justifications for the Final

1   Rule. Finally, DOI relies on the principle that "the Fifth Amendment does not forbid . . .

2   statutory changes to have a beginning and thus to discriminate between the rights of an earlier

3   and later time." *Califano v. Webster*, 430 U.S. 313, 321 (1977) (internal quotation omitted); *see*

4   *also Cont'l Coal, Inc. v. Cunningham*, 553 F. Supp. 2d 1273, 1282 (D. Kan. 2008) (applying

5   *Califano*'s reasoning to a zoning ordinance requiring only properties with non-preexisting uses to

6   obtain a conditional use permit).

7          The Court is persuaded that the principle in *Califano* precludes striking down the 2015

8   re-petition ban under the Equal Protection Clause. In essence, CIN claims that it is being

9   discriminated against because of the *time* it chose to petition for federal recognition. However,

10   for equal protection purposes, the government has a legitimate interest in limiting the temporal

11   scope of new laws, including the 2015 Part 83 regulations. CIN's equal protection claim is thus

12   untenable as a matter of law.

13          CIN also has not met its burden of demonstrating that there is no conceivable legitimate

14   basis for the re-petition ban. Unlike CIN's arbitrary and capricious claim, it is not incumbent on

15   the government to justify its regulation under rational basis review. CIN must affirmatively

16   demonstrate that efficiency, fairness, and finality are *not* legitimate purposes for the re-petition

17   ban. It fails to do this. Instead, CIN draws comparisons to cases striking down laws

18   discriminating against unpopular groups, such as hippies and same-sex couples, when

19   distributing benefits. *See Moreno*, 413 U.S. at 534; *Brewer*, 656 F.3d at 1014-15. The

20   temporally-based classification at issue here is a far cry from such blatant discrimination.

21   Consequently, CIN's equal protection claim fails.

22

23

24

1

**CONCLUSION**

2          For the above reasons, CIN's Motion is GRANTED and DOI's Motion is DENIED with

3  respect to the claim that the 2015 re-petition ban is arbitrary and capricious in violation of the

4  APA. The Final Rule is remanded to DOI to further consider its justification for the re-petition

5  ban or otherwise alter the regulation consistent with this Order. CIN's Motion is otherwise

6  DENIED and DOI's Motion is GRANTED with respect to Claims III-V.

7          IT IS SO ORDERED.

8

9          Dated this 10th day of January, 2020.

10

11          _____

12          Ronald B. Leighton
           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24