1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CHINOOK INDIAN NATION, et al.,

CASE NO. C17-5668 MJP

11

Plaintiffs,

ORDER ON DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

12

v.

13

RYAN K. ZINKE, et al.,

14

Defendants.

15

16        This matter comes before the Court on Defendants' Motion for Partial Summary

17   Judgment. (Dkt. No. 128.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 129),

18   Defendants' Reply and Motion to Strike (Dkt. No. 132), and the relevant portions of the record,

19   the Court GRANTS in part and DENIES in part Defendants' Motion for Partial Summary

20   Judgment and DENIES Defendants' Motion to Strike.

21                                    **BACKGROUND**

22        Plaintiffs are the Chinook Indian Nation, the Confederated Lower Chinook Tribes and

23   Bands, and Anthony A. Johnson, individually and as chairman of the Chinook Indian Nation.

24

1  Through their due process claims (Claims VII and VIII), Plaintiffs allege that Defendants have

2  "forfeit[ed] the monies previously appropriated by Congress and upheld by the Courts for the

3  Chinook and/or its members" which has "deprived the Chinook of a protected property interest

4  to which the Fifth Amendment's Due Process protection applies." (Am. Compl. ¶¶ 198, 201

5  (Dkt. No. 24).) The money to which Plaintiffs refer is a $48,692.05 judgment awarded by the

6  Indian Claims Commission ("ICC") in 1970 to "the Chinook Tribe and Band of Indians" "for

7  and on behalf of the Lower Band of Chinook and Clatsop Indians." (The Chinook Indian Tribe

8  and Band of Indians v. United States, 24 Ind. Cl. Comm. 56, Final Award, Docket No. 234 (Nov.

9  4, 1970) (Dkt. No. 66-2) ("Docket 234").) The Court refers to this as the Docket 234 Judgment

10  and to the petitioner as the Docket 234 Petitioner. To vindicate their due process rights, Plaintiffs

11  seek a "declaration that the Defendants must maintain the entire value of their tribal trust account

12  in trust for the benefit of the Chinook as of the date of the filing of this Complaint, together with

13  interest accrued during the pending litigation." (Id. at 77.)

14       Defendants seek summary judgment on Plaintiffs' due process claims. The Court

15  previously denied Plaintiffs' motion for partial summary judgment on these same claims, finding

16  that there was no evidence that Plaintiff Chinook Indian Nation "in particular has a legitimate

17  property interest to the funds" at issue. (Dkt. No. 113 at 17.) But the Court's order did not

18  dispose of Plaintiffs' constitutional claims (see Dkt. No. 121 at 2), and so Defendants have now

19  moved for partial summary judgment. Defendants' Motion raises three areas of factual

20  disagreement: (1) whether Plaintiffs are the successors in interest to the Docket 234 Petitioner;

21  (2) whether Plaintiffs have a property interest in the Docket 234 Judgment; and (3) whether

22  Plaintiffs have been deprived of their rights to the Docket 234 Judgment.

23

24

As to the first and second issues, Plaintiffs rely primarily on a new declaration of the Chairman of the Chinook Indian Nation, Plaintiff Anthony A. Johnson. He declares that Plaintiffs "Chinook Indian Nation and the Confederated Lower Chinook Tribes and Bands are the successors-in-interest to the petitioners in the Indian Claims Commission ("ICC") claim Docket No. 234." (Declaration of Anthony A. Johnson ¶ 2 (Dkt. No. 130).) According to Johnson, "Plaintiffs in the present case are the direct organizational descendants of the Docket 234 petitioners, and Plaintiff's community and Council are direct blood descendants of the tribal individuals who brought the case before the ICC and who are identified within the administrative record." (Id. ¶ 5.) Johnson's father "serv[ed] on the Chinook Tribal Council the same year that the ICC final judgment was made (1970)" and Johnson was enrolled in the Tribe three months after the judgment. (Id. ¶ 6.) Johnson states that the Docket 234 Judgment has "been an ever-present part of [his] tribal life" and that he "remember[s] community members and Tribal Council frequently producing and referring to the original documents and binders from the litigation to discuss the case and other important aspects of our history." Id. Johnson avers that "[a]s a Chinook person, the truthfulness of this lived experience is as self-evident as that the sky is blue, that our ancestral lands have been taken, or that this is the English language in which I am writing to you." (Id. ¶ 9.)

Johnson further supports these statements with insight into the various Plaintiff entities. According to Johnson, "[t]he descendants of the five aboriginal tribes that make up the current Chinook Indian Nation ('CIN') first joined together as the Chinook Indian Tribe ('the Tribe') under the community's first constitution in 1925" and he was elected chairman of the Chinook Indian Nation under the Tribe's amended constitution of 1951. (Johnson Decl. ¶ 2.) He explains that "[t]he Chinook Nation ('Nation') was an entity created within our community to pursue the

1    Tribe's rights in front of the ICC" and that the "Tribe changed its formal name to the Chinook

2    Indian Nation ('CIN') in the early 2000s." (Id. ¶ 3.) He also explains that the Chinook Indian

3    Nation's Tribal Counsel created Plaintiff Confederated Lower Chinook Tribes and Bands, a

4    Washington non-profit entity, to succeed an earlier non-profit the Tribal Counsel created called

5    the Chinook Indian Tribe, Inc. (Id. ¶ 4.) According to Johnson the Department of Interior treated

6    these entities, including the Chinook Indian Nation as the representatives of the Chinook interest

7    in the Docket 234 Judgment for over 40 years until it ceased sending trust statements. (Id. ¶¶ 5,

8    7.)

9           On the third issue, Plaintiffs claim that Defendants have a national policy to deny non-

10   federally-recognized-tribes access to ICC judgments and that this policy, coupled with the

11   Department of Interior's decision to cease sending trust account statements to Plaintiffs, amounts

12   to a deprivation of their right to the Docket 234 Judgment. In support of this contention,

13   Plaintiffs rely on testimony from former Department of Interior Regional Trust Administrator

14   Catherine Rugen. She testified that "[a] non-recognized tribe is not considered a beneficiary;

15   therefore, in my experience, since they are not a beneficiary, they cannot receive statements nor

16   funds." (Coon Decl., Exhibit A, Rugen Dep. at 22.) Rugen also testified that:

17          Sir, my training and my experience is that a non-federally recognized tribe is not a
            beneficiary. I do not know the specific document that says you may not distribute a
18          statement or funds, period; however, the Office of Special Trustee would never distribute
            funds without the approval of the Bureau of Indian Affairs, would approve only to a
19          federally recognized tribe.

20   (Rugen Dep. at 21:24-22:5.) Plaintiffs also cite testimony from Gino Orazi, a former Department

21   of Interior Fiduciary Trust Offer. (Coon Decl., Exhibit B, Orazi Dep. at 37:19-24.) But Orazi

22   only testified that it was the national policy not to send trust accounting statements to non-

23

24

1    recognized tribes. (Id.) Orazi did not testify as to whether there was a national policy not to

2    approve a distribution of funds to a non-recognized tribe.

3              In support of their Motion, Defendants cite to Plaintiffs' answer to the following Request

4    for Admission which they claim shows that Plaintiffs have admitted there has been no

5    deprivation of any property interests in the Docket 234 Judgment:

6              REQUEST FOR ADMISSION NO. 8:

7              There has been no action taken by any of the defendants, or anyone acting on their behalf,
             during the six years prior to the date this lawsuit was filed to the present day that resulted
8            in any deprivation of any right, title or interest that was held by any legal beneficiary of
             the Lower Band of Chinook and Clatsop Indians trust fund prior to the taking of the
9            action.

10            ANSWER: Admit that no such action resulted in any such deprivation because
             Defendants have no power to take any such action, and since they have no such
11            legitimate power, Plaintiffs admit that nothing Defendants have done has had the legal
             effect of depriving them or anyone else of any rights in the trust fund.

12    (Dkt. No. 128-1 at 4:19-5:1.)

13                                              **ANALYSIS**

14    **A.      Motion to Strike**

15            Defendants move to strike five portions of Johnson's declaration. (Dkt. No. 132 at 2-4.)

16    First, Defendants move to strike Johnson's statement that Plaintiffs are the successors in interest

17    to the Docket 234 Petitioner. (Johnson Decl. ¶ 2 lines:1-3.) Defendants argue that this is a legal

18    conclusion, that Johnson lacks foundation to make the statement, and that it is contrary to the law

19    of the case. (Dkt. No. 132 at 2.) The Court disagrees. While Johnson speaks to a legal issue, his

20    statement is factual in nature. And Johnson's declaration shows an adequate foundation—from

21    Johnson's personal knowledge and position as Chairman of Chinook Indian Nation. Lastly, the

22    Court does not agree with Defendants that this issue has already been resolved as a matter of law.

23    The Court's Order on Plaintiffs' Motion for Partial Summary Judgment on these claims made no

24

1  such finding, and merely noted that there had been no agency determination on this issue. (See

2  Dkt. No. 113 at 17.) The Court denies the motion as to this statement.

3       Second, Defendants move to strike for lack of foundation and as hearsay Johnson's

4  statement that "The Chinook Nation ('Nation') was an entity created within our community to

5  pursue the Tribe's rights in front of the ICC." (Johnson Decl. ¶ 3 lines 1-2.) The Court finds that

6  Johnson makes this statement based on his personal knowledge and as Chairman of Chinook

7  Indian Nation. This is an adequate foundation to support the statement, and the Court denies the

8  motion to strike this statement.

9       Third, Defendants move to strike for lack of foundation and as a legal conclusion

10  Johnson's statement that "While this resulted in a change to the organization's name and UBI

11  number, its existence as the descendent organization of the 1953 Chinook Indian Tribe, Inc.

12  remains." (Johnson Decl. ¶ 4 lines 23-25.) The Court does not agree with Defendants. The Court

13  finds that this statement is factual in nature and is not merely a legal conclusion. Johnson speaks

14  to the creation of the new legal entity and its relation to a preexisting one. These are factual

15  matters to which Johnson reasonably has knowledge from both his personal experience and

16  position as Chairman of the Chinook Indian Nation. The Court denies the motion to strike this

17  statement.

18       Fourth, Defendants move to strike for lack of foundation and as a legal conclusion

19  Johnson's statement that "Plaintiffs in the present case are the direct organizational descendants

20  of the Docket 234 petitioners. . . ." (Johnson Decl. ¶ 5 lines 3-4.) The Court finds that although

21  this statement touches on legal issues, it is factual in nature. It speaks to the relationship between

22  Plaintiffs in this matter and the Docket 234 Petitioner, which are properly considered. The Court

23  also finds that Johnson reasonably makes this statement from his personal knowledge and

24

1  knowledge as Chairman of the Chinook Indian Nation. The Court denies the motion to strike this

2  statement.

3        Fifth, Defendants move to strike for lack of foundation and as a legal conclusion

4  Johnson's statement in ¶ 6 lines 4-6: "I remember community members and Tribal Council

5  frequently producing and referring to the original documents and binders from the litigation to

6  discuss the case and other important aspects of our history." (See Dkt. No. 132 at 3.) The Court

7  finds that Johnson makes this factual statement from his personal knowledge, which is proper.

8  The Court denies the motion to strike this statement.

9        The Court therefore DENIES Defendants' Motion to Strike.

10  **B.   Summary Judgment Standard**

11        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

12  file, and any affidavits show that there is no genuine issue as to any material fact and that the

13  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

14  an issue of fact exists, the Court must view all evidence in the light most favorable to the

15  nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

16  Lobby, Inc., 477 U.S. 242, 248-50 (1986); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996).

17  A genuine issue of material fact exists where there is sufficient evidence for a reasonable

18  factfinder to find for the nonmoving party. Anderson, 477 U.S. at 248. The moving party bears

19  the initial burden of showing that there is no evidence which supports an element essential to the

20  nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has

21  met this burden, the nonmoving party then must show that there is a genuine issue for trial.

22  Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

23

24

ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

1    issue of material fact, "the moving party is entitled to judgment as a matter of law." <u>Celotex</u>, 477

2    U.S. at 323-24.

3    **C.**      **Plaintiffs' Status as Successors-in-Interest to the Docket 234 Petitioner**

4                Plaintiffs have raised a genuine dispute of material fact as to whether they are the

5    successors in interest to the Docket 234 Petitioner. Johnson's declaration provides evidence that

6    Plaintiffs are the successors in interest of the Docket 234 Petitioner. He explains that Plaintiffs

7    Chinook Indian Nation and the Confederated Lower Chinook Tribes and Bands are

8    organizationally related to the Docket 234 Petitioner. He also explains that members of the

9    Chinook Indian Nation are direct blood descendants of the persons who brought the Docket 234

10   Petition. Defendants have provided no contrary evidence, or evidence as to any other entity that

11   could be the successor in interest to the Docket 234 Petitioner or beneficiaries to the Docket 234

12   Judgment. Construing these statements in the light most favorable to Plaintiffs, they raise a

13   genuine issue of material fact on this issue, precluding summary judgment as to this issue.

14               A genuine issue of material fact also remains as to whether Plaintiffs have a property

15   interest in the Docket 234 Judgment. In ruling on the Docket 234 Petition, the ICC recognized

16   that even though the Petitioner was formed in 1951 as the Chinook Nation, it "ha[d] the capacity

17   to prosecute this action for and on behalf of the Clatsop and Chinook (proper) Indians." (<u>The</u>

18   <u>Chinook Indian Tribe and Band of Indians v. United States</u>, 24 Ind. Cl. Comm. 56, Opinion of

19   the Commission, Docket No. 234 (Apr. 16, 1958) ("ICC Decision") at 211-212, 228 (Dkt. No.

20   63-3 at 4-5, 22).) The ICC also found that the Clatsop and Chinook had "title to the lands" that

21   had been taken and for which a determination on compensation was to be made. (<u>Id.</u> at 229 (Dkt.

22   No. 63-3 at 23).) Ultimately the ICC awarded the Petitioner a judgment in its favor. (<u>See</u> Docket

23   234 Judgment.) That the judgment was "for and behalf of the Lower Band of Chinook and

24

1    Clatsop Indians" does not necessarily mean the Petitioner itself had no interest in the judgment.

2    (See id.) As is clear from the ICC's opinion, the Petitioner itself was composed of individuals of

3    Chinook and Clatsop ancestry who would seemingly be beneficiaries to the judgment. (ICC

4    Decision at 213 (Dkt. No. 63-3 at 6).) And construed in Plaintiffs' favor, the Department of

5    Interior's course of conduct since entry of the Docket 234 Judgment suggests that it, too,

6    believed the Docket 234 Petitioner had a property interest in it.[1] The Court concludes that if

7    Plaintiffs are the successors in interest to the Docket 234 Petitioner, then a genuine issue of fact

8    also remains as to whether they are entitled to the Docket 234 Judgment as beneficiaries.

9         Defendants argue that because the Department of Interior has made no agency

10   determination that Plaintiffs are the beneficiaries to the Docket 234 Judgment, Plaintiffs cannot

11   have a property interest in it. (Dkt. No. 132 at 8-9.) The absence of an agency determination is

12   not dispositive of Plaintiffs' interest in the Docket 234 Judgment. As the Court has already

13   noted, the Department of Interior was long ago supposed to have determined who the

14   beneficiaries of the Docket 234 Judgment are and to create a plan of distribution. (Dkt. No. 113

15   at 15-16.) The Department of Interior's woeful inaction is not a basis on which to conclude that

16   Plaintiffs hold no interest in the Docket 234 Judgment as a matter of law.

17   **D.    Deprivation of Rights**

18        Defendants seek summary judgment on the theory that Plaintiffs cannot show a

19   deprivation of any right or interest in the Docket 234 Judgment. Construing the facts in the light

20   most favorable to Plaintiffs, the Court finds a genuine issue of material fact in dispute on this

21   issue.

22

23   _____

24   [1] The Court does not suggest that this fact alone would justify finding a dispute of fact that Plaintiffs are
     beneficiaries. See Dkt. No. 113 at 16.

1    "To succeed on a substantive or procedural due process claim, the plaintiffs must first

2    establish that they were deprived of an interest protected by the Due Process Clause." Johnson v.

3    Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1029 (9th Cir. 2010) (citing Shanks v.

4    Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008) and Kildare v. Saenz, 325 F.3d 1078, 1085 (9th

5    Cir. 2003)). To have a property interest in a benefit, a plaintiff must have a "legitimate claim of

6    entitlement to it," not just a "unilateral expectation of it." Bd. of Regents of State Colleges v.

7    Roth, 408 U.S. 564, 577 (1972). "A legitimate claim of entitlement 'is determined largely by the

8    language of the statute and the extent to which the entitlement is couched in mandatory terms.'"

9    Rancho Santiago, 623 F.3d at 1030 (quoting Wedges/Ledges of Cal., Inc. v. Phoenix, 24 F.3d 56,

10   62 (9th Cir. 1994)).

11       Plaintiffs point to new evidence that the Department of Interior's national policy denies

12   non-recognized tribes such as the Chinook Indian Nation access to any ICC judgment funds. As

13   the former Regional Trust Administrator for the Department of Interior, Rugen testified that "[a]

14   non-recognized tribe is not considered a beneficiary; therefore, in my experience, since they are

15   not a beneficiary, they cannot receive statements nor funds." (Rugen Dep. at 22 (emphasis

16   added).) She also testified that "the Office of Special Trustee would never distribute funds

17   without the approval of the Bureau of Indian Affairs, [and it] would approve only to a federally

18   recognized tribe. (Rugen Dep. at 21-22.) While Rugen was not testifying on behalf of the

19   Department of Interior, her testimony is persuasive given her prior position with the Department.

20   It also gives further context to the letter she sent terminating the Chinook Indian Nation's ability

21   to receive trust statements on the grounds that "because you are not recognized, the funds held

22   with our office cannot benefit your tribe." (Dkt. No. 60 at DN 001589 (emphasis added).) Taken

23   together and construed in Plaintiffs' favor, Rugen's testimony and letter evidence an act of

24

1   deprivation of Plaintiffs' right to the Docket 234 Judgment.[2] The Court finds this sufficient

2   evidence to show a dispute of fact as to a deprivation of the right to the Docket 234 Judgment.

3          Defendants argue that Plaintiffs have admitted that there has been no deprivation of right

4   to the Docket 234 Judgment. The Court is unconvinced. Defendants' Eighth Request for

5   Admission asked Plaintiffs to admit "[t]here has been no action taken by any of the defendants,

6   or anyone acting on their behalf, during the six years prior to the date this lawsuit was filed to the

7   present day that resulted in any deprivation of any right, title or interest that was held by any

8   legal beneficiary of the Lower Band of Chinook and Clatsop Indians trust fund prior to the taking

9   of the action." (Dkt. No. 128-1 at 4-5.) Plaintiffs' "admission" is couched in many layers of

10  denial. Plaintiffs write: "Admit that no such action resulted in any such deprivation because

11  Defendants have no power to take any such action, and since they have no such legitimate

12  power, Plaintiffs admit that nothing Defendants have done has had the legal effect of depriving

13  them or anyone else of any rights in the trust fund." (Id.) As the Court interprets this statement,

14  Plaintiffs did not admit that there had been no act to deprive them of the right to the Docket 234

15  Judgment. Rather, the response simply states that any such act would be legally void. Construing

16  this response in Plaintiffs' favor, the Court finds that it leaves open the question of whether the

17  national policy about which Rugen testified and her letter constitute a deprivation of rights to the

18  Docket 234 Judgment. The Court thus cannot properly conclude on the basis of this convoluted

19  response that there has been no deprivation of rights to the Docket 234 Judgment.[3]

20

21

22  _____

[2] The Court notes that Plaintiffs' entitlement remains a dispute of fact, as explained above.

23  [3] Defendants argue that Plaintiffs have failed to support their substantive due process claim because they have not shown egregious conduct. (Dkt. No. 132 at 4 n.1.) But the Court finds a dispute of fact exists on whether Defendants' conduct was egregious.

24

1  **E.      The Primary Jurisdiction Doctrine**

2          As alternative relief, Defendants asks the Court to invoke the primary jurisdiction

3  doctrine and refer the issue to the Department of Interior to make an initial determination. The

4  Court agrees.

5          "Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an

6  otherwise cognizable claim implicates technical and policy questions that should be addressed in

7  the first instance by the agency with regulatory authority over the relevant industry rather than by

8  the judicial branch.'" Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 760 (9th Cir. 2015)

9  (quoting Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008)). The primary

10  jurisdiction doctrine is "based on the principle that in cases raising issues of fact not within the

11  conventional experience of judges or cases requiring the exercise of administrative discretion,

12  agencies created by Congress for regulating the subject matter should not be passed over, and

13  requires judicial abstention in cases where protection of the integrity of a regulatory scheme

14  dictates preliminary resort to the agency which administers the scheme." Local Union No. 189,

15  Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co., 381

16  U.S. 676, 685 (1965) (citation and quotation omitted). The doctrine applies when "protection of

17  the integrity of a regulatory scheme dictates preliminary resort to the agency which administers

18  the scheme." United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353 (1963). "Thus, it is the

19  extent to which Congress, in enacting a regulatory scheme, intends an administrative body to

20  have the first word on issues arising in judicial proceedings that determines the scope of the

21  primary jurisdiction doctrine." United States v. General Dynamics Corp., 828 F.2d 1356, 1362

22  (9th Cir. 1987).

23

24

1    "There are four factors uniformly present in cases where the doctrine properly is invoked:

2    (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

3    administrative body having regulatory authority (3) pursuant to a statute that subjects an industry

4    or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in

5    administration." General Dynamics, 828 F.2d at 1362. "[C]ourts must also consider whether

6    invoking primary jurisdiction would needlessly delay the resolution of claims." Astiana, 783

7    F.3d at 760 (citing Reid v. Johnson & Johnson, 780 F.3d 952, 967–68 (9th Cir. 2015); United

8    States v. Philip Morris USA Inc., 686 F.3d 832, 838 (D.C. Cir. 2012) ("The primary jurisdiction

9    doctrine is rooted in part in judicial efficiency."). "Under our precedent, 'efficiency' is the

10   'deciding factor' in whether to invoke primary jurisdiction." Id. (quoting Rhoades v. Avon

11   Prods., Inc., 504 F.3d 1151, 1165 (9th Cir. 2007)).

12        The Court finds that the Department of Interior should first address the question of

13   Plaintiffs' status as successor in interest to the Docket 234 Petitioner and as a beneficiary to the

14   Docket 234 Judgment. This determination is bound up in the relief Plaintiffs seek through

15   Claims VII and VIII, and it falls squarely within the administrative duties Congress assigned to

16   the Department of Interior to make on a national, uniform basis. See 25 U.S.C. § 1402(a). The

17   Department of Interior has created administrative regulations setting out the process make these

18   determinations, which requires some degree of its expertise in these matters. See 25 C.F.R. Part

19   87. The Court thus finds that the primary jurisdiction considerations are satisfied here. See

20   General Dynamics, 828 F.2d at 1362.

21        The Court remains acutely aware of the fact that the Department of Interior should have

22   long ago identified the beneficiaries and come up with a plan of distribution for the Docket 234

23   Judgment. (See Dkt. No. 113 at 15-16.) And the Court is aware that concerns of efficiency

24

1    impact the determination of whether or not to invoke the primary jurisdiction doctrine. See

2    Astiana, 783 F.3d at 760. But notwithstanding these concerns, the Court finds the Department of

3    Interior should make the preliminary determination on the issues raised by Plaintiffs' Claims VII

4    and VIII. The Court also trusts that the Department of Interior will promptly resolve these issues

5    notwithstanding the record of delay. The Court therefore GRANTS the Motion for Partial

6    Summary Judgment on this alternative relief and STAYS this matter pending the Department of

7    Interior's determination of Plaintiffs' status as a successor in interest to the Docket 234 Petitioner

8    and beneficiary to the Docket 234 Judgment. The Parties shall provide quarterly a joint update to

9    the Court as to the status of the proceedings. The Court shall retain jurisdiction over this matter

10   and either party may move to lift the stay. See Reiter v. Cooper, 507 U.S. 258, 268–69 (1993).

11                                              **CONCLUSION**

12          Plaintiffs have raised sufficient disputes of material fact precluding summary judgment

13   on their procedural and substantive due process claims. But the issues raised in these claims fall

14   squarely within the primary jurisdiction doctrine and they should be addressed first by the

15   Department of Interior. The Court therefore GRANTS Defendants' Motion on this alternative

16   basis and STAYS the case pending the Department's determination of Plaintiffs' status as

17   successors in interest to the Docket 234 Petitioner and as beneficiaries to the Docket 234

18   Judgment. The Court otherwise DENIES the Motion. Throughout the pendency of the stay, the

19   Parties shall provide quarterly joint status reports to update the Court as to the agency

20   proceedings.

21   \\

22   \\

23   \\

24

The clerk is ordered to provide copies of this order to all counsel.

Dated January 21, 2021.

Marsha J. Pechman
United States District Judge