```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHINOOK INDIAN NATION, et al., | CASE NO. C17-5668 MJP |
| Plaintiffs, | ORDER ON MOTION FOR ATTORNEYS' FEES |
| v. | |
| DEB HAALAND, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees. (Dkt. No. 170.) Having reviewed the Motion, the Response (Dkt. No. 177), and all supporting materials, the Court GRANTS in part the Motion.

**BACKGROUND**

Plaintiff Chinook Indian Nation, an Indian Tribe, brought this action as the successor-in-interest to the Lower Band of Chinook Indians, along with its Chairman, Anthony Johnson, and the Confederated Lower Chinook Tribes and Bands, a Washington non-profit corporation. They filed suit against the Secretary of the Interior, the Department of Interior, the Bureau of Indian

Affairs, the Assistant Secretary of Indian Affairs, and the United States. They pursued claims under the United States Constitution, the Administrative Procedures Act, and the Declaratory Judgment Act, seeking: (1) federal recognition (Claim 1); (2) an order finding DOI's ban on re-petitioning for recognition to be arbitrary and capricious in violation of the APA and that it violated Due Process, Equal Protection, and the First Amendment (Claims 2-5); and (3) an order finding that DOI's refusal to give the Nation access to funds held in trust for the Chinook Indians violated the APA and Due Process (Claims 6-8). (See Amended Complaint ¶¶ 151-202 (Dkt. No. 24).) Plaintiffs achieved varying success on their claims, and Defendants concede that Plaintiffs are the prevailing parties. (Def. Opp. at 5.) To orient Plaintiffs' pending request for an award of attorneys' fees, the Court reviews the outcome of the claims presented.

The Court agreed with Defendants that Plaintiffs' claim for federal recognition was not justiciable and dismissed it. (Order on Motion to Dismiss (Dkt. No. 45).) But the Court otherwise denied Defendants' Motion to Dismiss. (Id.) Along the way, the Court denied the Siletz Tribe of Oregon's Motion to Intervene, which was a success for Plaintiffs. (Dkt. No. 76.) As to DOI's re-petitioning ban, the Court held at summary judgment that it violated the APA as an arbitrary and capricious agency action, and the Court "remanded to DOI for further evaluation consistent with" the Court's Order. (Summary Judgment Order re: Claims I-V (Dkt. No. 112).) But the Court granted summary judgment in Defendants' favor as to the constitutional claims levied against the re-petition ban. (Id.) As to the request for regaining access to a trust fund held for the Chinook Indians, Plaintiffs successfully convinced the Court that DOI's decision to stop sending the Nation the account statements was arbitrary and capricious in violation of the APA. (Summary Judgment Order re: Claims VI-VIII (Dkt. No. 113).) The Court held that "[t]he decision to stop sending account statements to CIN because of its non-recognized status is

1  remanded to DOI for further consideration and clarification consistent with this Order." (Id. at

2  17.) But the Court granted summary judgment in Defendants' favor on the constitutional claims

3  related to the trust account.

4    Plaintiffs have also obtained some success through the remand process. As to the re-

5  petitioning ban, DOI has now proposed for comment a revised rule that allows for re-petitioning

6  provided that there is a rule change or new evidence that merits reconsideration. See

7  https://www.federalregister.gov/documents/2024/07/12/2024-15070/federal-acknowledgment-of-

8  american-indian-tribes (last visited Jan. 23, 2025). This could benefit Plaintiffs. As to the funds

9  held in trust, Defendants have now implemented and executed on a plan to pay Plaintiffs all of

10 these assets. At the completion of the remand proceedings, the Parties agreed to dismiss the

11 claims claim related to the trust fund as moot, and they agreed to a directed entry of judgment on

12 all claims. (Dkt. No. 157 &158.) And both parties then filed notices of appeal. (Dkt. Nos. 159 &

13 162.)

14   Plaintiffs now seek $247,187.78 in attorneys' fees under the Equal Access to Justice Act.

15 Specifically, they seek fees incurred by Thane Tienson and his law clerk, and for James Coon,

16 co-counsel to Tienson. Sadly, Tienson died on January 21, 2021. (See Declaration of James S.

17 Coon (Dkt. No. 173).) And while Tienson authored a declaration in support of a fee request, he

18 died before it was filed. Coon has filed Tienson's declaration, but admits that he "edited [it] for

19 clarity and brevity . . . but ha[s] not changed [it] in substance." (Id.) As to hourly rates, Tienson

20 sought approval of a $510/hour rate, and a $145 per hour for law clerk time. (Declaration of

21 Thane Tienson (Dkt. No. 172).) Coon seeks only the EAJA rate applicable to his time which

22 ranged from $196.79 to $244.62 per hour over the course of this litigation. (Mot. at Ex. B.)

remanded to DOI for further consideration and clarification consistent with this Order." (Id. at 17.) But the Court granted summary judgment in Defendants' favor on the constitutional claims related to the trust account.

Plaintiffs have also obtained some success through the remand process. As to the re-petitioning ban, DOI has now proposed for comment a revised rule that allows for re-petitioning provided that there is a rule change or new evidence that merits reconsideration. See https://www.federalregister.gov/documents/2024/07/12/2024-15070/federal-acknowledgment-of-american-indian-tribes (last visited Jan. 23, 2025). This could benefit Plaintiffs. As to the funds held in trust, Defendants have now implemented and executed on a plan to pay Plaintiffs all of these assets. At the completion of the remand proceedings, the Parties agreed to dismiss the claims claim related to the trust fund as moot, and they agreed to a directed entry of judgment on all claims. (Dkt. No. 157 &158.) And both parties then filed notices of appeal. (Dkt. Nos. 159 & 162.)

Plaintiffs now seek $247,187.78 in attorneys' fees under the Equal Access to Justice Act. Specifically, they seek fees incurred by Thane Tienson and his law clerk, and for James Coon, co-counsel to Tienson. Sadly, Tienson died on January 21, 2021. (See Declaration of James S. Coon (Dkt. No. 173).) And while Tienson authored a declaration in support of a fee request, he died before it was filed. Coon has filed Tienson's declaration, but admits that he "edited [it] for clarity and brevity . . . but ha[s] not changed [it] in substance." (Id.) As to hourly rates, Tienson sought approval of a $510/hour rate, and a $145 per hour for law clerk time. (Declaration of Thane Tienson (Dkt. No. 172).) Coon seeks only the EAJA rate applicable to his time which ranged from $196.79 to $244.62 per hour over the course of this litigation. (Mot. at Ex. B.)

# ANALYSIS

## A. Propriety of Fees

Although Defendants concede that Plaintiffs are the prevailing party, they argue that fees should not be awarded under the EAJA because their opposition was substantially justified. The Court disagrees.

The EAJA allows an award of attorneys' fees only if the court finds that the government was not "substantially justified," or if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The government bears the burden of demonstrating substantial justification." Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir. 1990). "Substantial justification" in this context means "justification to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). For the government's position to be substantially justified, it "must have a 'reasonable basis both in law and fact.'" Meier v. Colvin, 727 F.3d 867, 870 (9th Cir. 2013) (quoting Pierce, 487 U.S. at 565). "In making a determination of substantial justification, the court must consider the reasonableness of both 'the underlying government action at issue' and the position asserted by the government in 'defending the validity of the action in court.'" Bay Area Peace, 914 F.2d at 1230. "Further, when we decide whether the government's litigation position is substantially justified, "the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line items." Al-Harbi v. I.N.S., 284 F.3d 1080, 1084–85 (9th Cir. 2002) (quoting United States v. Rubin, 97 F.3d 373, 375 (9th Cir. 1996)).

Given Plaintiffs' underlying success on two of the three sets of claims, the Court analyzes whether the Government's position on the two claims was substantially justified or not, noting, of course, that the Government's position was justified as to the first claim.

First, with regard to the re-petitioning ban, DOI's position was not substantially justified. As the Court found, the ban was arbitrary and capricious under the APA. Specifically, the Court found "DOI's reasons for eliminating the re-petition ban exception from the Final Rule are illogical, conclusory, and unsupported by the administrative record in violation of the APA." (Order on Summary Judgment at 15 (Dkt. No. 112).) The Court explained in detail that the justifications DOI put forward were "bizarre[]," lacked supporting evidence, and contradicted DOI's stated goals. (Id. at 15-18.) The position taken at the agency level and in litigation were not reasonable in law or fact and were not substantially justified. This justifies an award of fees.

Second, DOI's position as to the Nation's access to the trust account was not substantially justified. At summary judgment, the Court noted that DOI's decision to stop sending the Nation the account statements was arbitrary and capricious in violation of the APA. (Summary Judgment Order re: Claims VI-VIII (Dkt. No. 113).) In a later order, the Court noted that DOI had engaged in "woeful inaction" in failing to timely determine the beneficiaries of the trust account. (Order on Defendants' Motion for Partial Summary Judgment at 9 (Dkt. No. 133).) The Court ultimately ruled that DOI should determine whether the Nation was the beneficiary, rather than the Court. But in so doing, the Court noted its "acute[] aware[ness] of the fact that the Department of Interior should have long ago identified the beneficiaries and come up with a plan of distribution for the Docket 234." (Id. at 13.) In other words, while DOI was correct that it should first make the determination of whether the Nation was a beneficiary, its complete inaction was not justified or reasonable. The underlying agency inaction and litigation position were not sound or reasonable. And while the DOI is correct that the claims were ultimately dismissed as moot, that occurred only after DOI found the Nation was the beneficiary to the trust account and provided it the funds.

1    The Court finds that Defendants' position was not substantially justified and that fees are
2    permissible under the EAJA notwithstanding Defendants' justified position as to the federal
3    recognition claim. Additionally, the Court notes that Plaintiffs are eligible for EAJA fees because
4    both the Nation and its chairman, Anthony Johnson, a plaintiff, has had a net worth less than the
5    $2,000,000—the limit on net worth to allow recovery of fees. (See Declaration of Anthony A.
6    Johnson ¶ 2 (Dkt. No. 171)); 28 U.S.C. § 2412(d)(2)(B).

7    **B.    Amount of Fees to be Awarded**

8    While the Court agrees that Plaintiffs should obtain a fee award, the Court finds that
9    counsel has not submitted sufficient information necessary justify a departure from the statutory
10   EAJA hourly rate. The Court also finds that all but one time entry should qualify for an award.

11   Under the EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless
12   the court determines that an increase in the cost of living or a special factor, such as the limited
13   availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.
14   § 2412(d)(2)(A). This rate has been adjusted annual to reflect increased costs of living. See
15   https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited Jan. 23, 2025). To
16   exceed the statutory rate, the plaintiff must satisfy three factors:

> First, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate.

19   Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991) (citation omitted).

20   Unfortunately for Plaintiffs, their primary counsel—Thane Tienson—did not provide an
21   admissible declaration to provide evidentiary support needed to satisfy these three factors. The
22   attorney who took over the litigation, James Coon, filed Tienson's declaration after his death, but
23   admits he "edited [the declaration] for clarity and brevity . . . but [did] not change[ it] in
24   substance." (Declaration of James S. Coon at 2 (Dkt. No. 173).) Because Coon admits he altered

1  Tienson's declaration, it is not admissible. And there is no other information in the record
2  speaking to the relevant factors.

3        Even if the Court were to accept Tienson's declaration, it does not set forth sufficient
4  evidence to depart from the statutory rate. Tienson adequately states that he has distinctive
5  knowledge and specialized skills in administrative law, including tribal recognition claims, and
6  that this was necessary to the litigation. (See Declaration of Thane Tienson ¶ 4 (Dkt. No 172).)
7  That satisfies the first two prongs, as those skills were needed in this case that largely turned on
8  issues surrounding agency law and tribal recognition. But Tienson's declaration makes no
9  representation that attorneys with those skills were not available at the statutory rate. That absent
10 fact is fatal to the request even if the declaration was admissible.

11       For these reasons, the Court finds that the adjusted statutory rate, which varied between
12 $196.79 in 2017 and is now at $244.62, shall apply. The Court also note that Coon asks for this
13 same rate.

14       As to the hours expended, Defendants ask the Court to trim the hours spent drafting the
15 complaint, the hours spent on a motion to oppose intervention, and on one entry for an unrelated
16 matter. The Court agrees with only the latter request. The Court reviews all three arguments.

17       First, Defendants take issue with the 45.5 hours taken to draft the complaints filed in this
18 matter. While the time spent was significant, the detail was useful and reasonable in the context
19 of this complex agency case involving lengthy historical facts and a robust administrative record.
20 The Court finds these hours were reasonably spent.

21       Second, Defendants argue that the 28.75 hours Plaintiffs spent fighting an intervenor was
22 not reasonable, particularly since Defendants took no position on intervention. But the Court sees
23 no reasoned basis why this was not reasonable time spent, as the intervention could have
24

ORDER ON MOTION FOR ATTORNEYS' FEES - 7

adversely affected the Nation's position and Plaintiffs succeeded in their opposition. The fact Defendants took no position is also irrelevant. Plaintiffs still chose to fight intervention, and they were entitled to do so regardless of Defendants' position. The Court rejects Defendants' request to trim the time spent on intervention.

Third, the Court agrees with Defendants that it should exclude the .5 hour billed to an unrelated matter. The Court will not award fees for this time spent.

Applying the statutory rate to the hours expended by the three time-keepers, the Court AWARDS: (1) $85,026.97 for Tienson, (2) $5,075.00 for his law clerk (which Tienson sought at a rate of $145/hour), and (3) $27,703.28 for Coon. The Court AWARDS a total of $117,805.25 in attorneys' fees.

Lastly, the Court rejects Defendants' argument that this recovery should be limited by the partial success achieved. Here, the lack of success on certain claims, including getting formal recognition, does not reflect a lack of overall success. Plaintiffs achieved substantial success and the Court finds no basis to reduce the award further.

## CONCLUSION

The Court GRANTS the Motion for attorneys' fees and AWARDS $117,805.25 to Plaintiffs for their success in litigating this matter.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 24, 2025.

Marsha J. Pechman
United States Senior District Judge